## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BREEANNE BUCKLEY PENI, individually and on behalf of all others similarly situated, | CLASS ACTION COMPLAINT |
| Plaintiff, | Civil Case No. |
| v. | **JURY TRIAL DEMANDED** |
| DAILY HARVEST, INC., | |
| Defendant. | |

Plaintiff, by and through the undersigned attorneys, as and for her class action complaint, alleges as follows.

## I.      INTRODUCTION

1.      Plaintiff brings this action against defendant Daily Harvest, Inc. ("Defendant") for personal injuries arising out of an outbreak of gastrointestinal illness related to a certain food product that was prepared, marketed, sold and distributed by defendant known as "French Lentil + Leek Crumbles."

## II.     JURISDICTION

2.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action involving more than 100 putative class members, some of whom are citizens of states diverse from defendant, and the amount in controversy exceeds $5,000,000, exclusive of costs and interest.

3.      This Court has personal jurisdiction over defendant because it maintains its principal place of business in this district, regularly and systematically transacts business in this district, and the wrongful conduct complained of in this complaint occurred in this district.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because plaintiff and defendant reside in this district, a substantial part of the events or omissions giving rise to the complaint occurred in this district, and defendant is subject to personal jurisdiction in this district.

## III.   PARTIES

5.      Plaintiff Breeanne Buckley Peni is an individual residing in Dutchess County, State of New York.

6.      Defendant Daily Harvest, Inc. ("Daily Harvest") is corporation organized and existing under the laws of the State of Delaware with a principal place of business in this District, and registered with the New York State Department State as having a principal executive office located at 37 West 20th Street, Suite 1101, New York, NY 100111.

## IV.   FACTUAL BACKGROUND

### A. Defendant Daily Harvest

7.      Defendant Daily Harvest is one of the largest direct-to-customer food brands in the United States.

8.      The company, which markets and sells its products online through weekly and monthly subscription-based meals, reported revenue of $250 million in 2020.[1]

9.      Daily Harvest markets its food as being organic, clean, healthy, easy to prepare, and ready in minutes, while staying earth friendly.[2]

10.     Defendant advertises that it provides a "Chef-crafted meal delivery that starts with

---

[1] Chloe Sorvino, *How A Former Marketing Executive Built A $1.1 Billion Brand Around Frozen Fruits And Vegetables,* FORBES (Jun 15, 2022) available at: https://www.forbes.com/sites/chloesorvino/2022/06/15/how-a-former-marketing-executive-built-a-11-billion-brand-around-frozen-fruits-and-vegetables/?sh=e800962e6dd7.
[2] Daily Harvest, *What We Eat and How its Grown Matters*, https://www.daily-harvest.com/about (last accessed June 27, 2022).

good, clean food! Built on fruits + vegetables. Farm-froze to lock in nutrients and flavor."[3]

11.     The company's website advertises its products and services to consumers as "A Better Food System," "From Seed to Plate" and that "We Got You."[4]

12.     Defendant states that its food products are grown in organic soil that is bio-diverse, resulting in healthier soil, more nutrient-dense foods, and less carbon in the atmosphere.[5]

13.     Daily Harvest markets its products as being chef-crafted food built on sustainably sourced fruits and vegetables that are grown using organic agriculture and chemical free practices, and made without sources of dairy, gluten, gums, fillers, or any type of artificial product. [6]

14.     The company states that it works with farmers directly to ensure the most sustainable and healthy products for their customers and to help transition farmed land from conventional to organic with increased biodiversity.[7]

15.     Defendant represents on its website that "[w]e freeze our ingredients at peak ripeness, typically within 24 hours of harvest, to lock in flavor and nutrients, reduce food waste, and eradicate the need for additives or harmful preservative."[8]

**B. Daily Harvest French Lentil + Leek Crumbles**

16.     At the end of April 2022, defendant Daily Harvest introduced a new plant-based protein line of foods intended to be a substitute for ground meat, of which one of the new products

---

[3] Google search result for "Daily Harvest," https://www.google.com/search?q=daily+harvest&rlz=1C1GCEA_enUS972US972&oq=daily+harvest&aqs=chrome.0.69i59j46i131i199i433i465i512j69i59l2j0i3j0i131i433j0i131i433i512j0i433i512j0i3j0i433i512.2640j1j15&sourceid=chrome&ie=UTF-8 (last accessed June 27, 2022).

[4] *Id.*

[5] Daily Harvest, *What We Eat and How its Grown Matters*, https://www.daily-harvest.com/about (last accessed June 27, 2022).

[6] *Id.*

[7] *Id.*

[8] *Id.*

was "French Lentil + Leek Crumbles."[9]

17.     On or about June 19, 2022, defendant Daily Harvest stated on its website that the company had received reports of French Lentil + Leek Crumbles causing gastrointestinal issues.[10]

18.     The French Lentil + Leek Crumbles is a frozen product packaged in a 12oz white pouch with the words "Daily Harvest" at the top, a large "CRUMBLES" immediately below the top and the words "French Lentil + Leek" in bold, as shown below:



Figure 1

19.     Daily Harvest told customers "to dispose of the product and not eat it."[11]

---

[9] Dani Blum, *Daily Harvest Recalls Lentil and Leek Crumbles After Consumers Fall Ill*, THE NEW YORK TIMES (June 24, 2022) available at: https://www.nytimes.com/2022/06/24/well/eat/daily-harvest-recalls-meat-substitute.html.
[10] Daily Harvest, https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory# (last accessed June 27, 2022).
[11] *Id.*

20.     On June 23, 2022, defendant Daily Harvest announced that it was recalling its French Lentil + Leek Crumbles due to consumer reports of gastrointestinal illness.

21.     According to defendant, all lot codes of the French Lentil + Leek Crumbles are affected by the recall.

22.     Defendant updated its website to include the following statement:

*Published June 23, 2022 at 6:10PM ET*

Daily Harvest has voluntarily recalled all French Lentil + Leek Crumbles due to consumer reports of gastrointestinal illness and potential liver function issues.

From April 28 to June 17, 2022, approximately 28,000 units of the recalled product were distributed to consumers in the continental United States through online sales and direct delivery, as well as through retail sales at the Daily Harvest store in Chicago, IL and a "pop-up" store in Los Angeles, CA. Samples were also provided to a small number of consumers. Daily Harvest directly notified by email those consumers who were shipped the affected product, and other consumers for whom the company had contact information, and consumers were issued a credit for the recalled product.

Consumers who may still have the recalled product in their freezers should immediately dispose of it.

French Lentil + Leek Crumbles is a frozen product packaged in a 12oz white pouch with the words "Daily Harvest" at the top, a large "CRUMBLES" immediately below the top and the words "French Lentil + Leek" in bold, as shown below. All lot codes of the French Lentil + Leek Crumbles are affected.  No other Daily Harvest products are affected or part of this recall.

To date, the company has received approximately 470 reports of illness or adverse reactions. Consumer safety is our highest priority, and we have taken immediate steps to stop production and distribution of the product and conduct a root cause investigation, which is ongoing.

This recall is being made in cooperation with the U.S. Food and Drug Administration.  Consumers who have questions or would like to report adverse reactions should contact Daily Harvest by email at crumbles-recall@daily-harvest.com or by visiting https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory# or by calling 1-888-302-0305 9am – 9pm Eastern Time, 7 days a week.[12]

---

[12] Daily Harvest, https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory#.

C.  **Plaintiff's Injury**

23.     At all relevant times, plaintiff Breeanne Buckley Peni purchased and consumed French Lentil + Leek Crumbles that were prepared, marketed, sold and distributed by defendant Daily Harvest.

24.     Plaintiff first subscribed to defendant Daily Harvest's meal delivery products in or about May 2022.

25.     In May 2022, plaintiff made an online purchase of defendant's French Lentil + Leek Crumbles.

26.     Said food product was delivered to plaintiff on or about May 24, 2022.

27.     Plaintiff last consumed the French Lentil + Leek Crumbles on or about June 10, 2022.

28.      After consuming defendant's "French Lentil + Leek Crumbles" plaintiff became violently ill with gastrointestinal illness and was hospitalized.

29.     Plaintiff's initial symptoms included fever, nausea, extreme abdominal pain, chills and joint pain.

30.     On or about June 12, 2022, plaintiff was hospitalized.

31.     As a result of her illness from consuming defendant's French Lentil + Leek Crumbles, plaintiff suffered gastrointestinal injury that required surgery to remove her gallbladder.

32.     Plaintiff remained hospitalized until being discharged on or about June 17, 2022.

33.     As a direct and proximate result of the foregoing, plaintiff suffered general and special, incidental, and consequential damages which shall be fully proven at the time of trial, including, but not limited to both past and future damages for: bodily injury, pain and suffering, loss of enjoyment of life, risk of future injury, medical and medical related expenses, travel and

lodging related expenses, lost wages, emotional distress and other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## V.    CLASS ALLEGATIONS

34.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

35.    Plaintiff brings this action on behalf of herself and under Fed. R. Civ. P. 23 (a), (b)(1), (b)(2) and (b)(3) as representative of a class of persons who are asserting claims for personal injuries against defendant Daily Harvest, Inc., caused by the recall of contaminated French Lentil + Leek Crumbles.

36.    Plaintiff proposes a Nationwide Class and, in the alternative, a New York Subclass defined as follows

> **Nationwide Class**
>
> All persons in the United States who suffered gastrointestinal illness as a result of consuming Daily Harvest French Lentil + Leek Crumbles distributed during April to June 2022; and
>
> **New York Subclass**
>
> All persons in New York State who suffered gastrointestinal illness as a result of consuming Daily Harvest French Lentil + Leek Crumbles distributed during April to June 2022.

37.    Excluded from the Classes are defendant Daily Harvest, Inc., its officers, directors, employees, subsidiaries, affiliates, successors or assigns and the judicial officers assigned to this case and their immediate family members.

38.    Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

39.     The exact number of members of the class, as identified above, is not known to plaintiff, but upon information and belief, exceeds 500 persons and is sufficiently numerous such that joinder of individual members herein is impracticable.

40.     Upon information and belief, the putative class members are readily identifiable through records in the possession of defendant that identify their online subscription based customers who purchased and were delivered the subject food products.

41.     Certification of plaintiff's claims for class-wide treatment is appropriate because plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42.     The members of the putative class are mutually and commonly aggrieved and the relief sought is common to the entire class and, if granted, would commonly benefit the entire class.

43.     There are numerous questions of law and fact common to plaintiff and the class, including:

        a.   Whether defendant sold Daily Harvest French Lentil + Leek Crumbles products that were unreasonably dangerous, defective, adulterated, and not safe or fit for human use and consumption;

        b.   Whether defendant failed to adequately warn plaintiff and the class of dangers that accompanied the use and consumption of Daily Harvest French Lentil + Leek Crumbles products;

        c.   When defendant knew or should have known of an outbreak of gastrointestinal illness caused by Daily Harvest French Lentil + Leek Crumbles and whether defendant failed to timely notify plaintiff and the class of said danger;

d.  Whether defendant failed to exercise reasonable care in the preparation, marketing, sale and distribution of Daily Harvest French Lentil + Leek Crumbles products;

e.  Whether defendant failed to adequately monitor the safety and sanitary conditions of its food products, facilities and services;

f.  Whether defendant failed to apply reasonable policies and procedures so as to ensure the safety and sanitary conditions of the Daily Harvest French Lentil + Leek Crumbles products sold to the public, including plaintiff;

g.  Whether defendant failed to provide proper warnings and safeguards to persons who purchased and consumed Daily Harvest French Lentil + Leek Crumbles products;

h.  Whether defendant failed to prevent the adulteration of food and transmission of foodborne gastrointestinal illness to persons who purchased its Daily Harvest French Lentil + Leek Crumbles products;

i.  Whether defendant failed to properly train its agents, servants and employees how to prevent the contamination and transmission of foodborne gastrointestinal illness; and

j.  Whether defendant violated applicable laws, rules, and regulations including, but not limited to, sections 199-a and 200 of the NYS Agriculture and Markets Law and section 331 of the Federal Food, Drug and Cosmetics Act, 21 U.S.C., § 301 et seq.

44.  Common questions of fact and law predominate over any questions affecting only individual members of the class, including but not limited to the alleged acts and omissions and

9

breach of defendant's legal duties set forth herein.

45.     Plaintiff's claims herein are typical of the claims of the class, in that the claims of all members of the class, including plaintiff, depend on a showing of the acts and omissions of defendant giving rise to the right of plaintiff to the relief sought.

46.     Plaintiff will fairly and adequately protect the interests of the respective class members in that plaintiff has such a plain, direct, and adequate interest in the outcome of the controversy to assure the adequacy of the presentation of the issues involved herein.  Plaintiff has no interest which is adverse to any interest of the class members.

47.     Plaintiff has retained competent counsel with substantial experience litigating class claims in both state and federal court, including the successful class certification of claims for personal injury arising out of water and foodborne outbreaks of gastrointestinal illness.[13]

48.     Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so.   Neither plaintiff nor her counsel have interests adverse to the class.

---

[13] Dreyer Boyajian LLP has certified as a class numerous personal injury water and foodborne outbreak claims. *See Dunn et al. v. Washington County Fair, Inc., et al*, NYS Sup. Ct. Saratoga County, 99-3235 (appointed lead class counsel in the settlement of a class action involving the E. coli O157:H7 outbreak at the New York State Washington County Fair in August 2000, which at the time was considered to be the largest waterborne E. coli outbreak in the nation's history); *Arroyo et al. v. State*, Ct. NYS Court of Claims, No.111361 (appointed co-class counsel in the certification and settlement of a class action on behalf of 2,500 persons infected by Cryptosporidium outbreak the Sencea Lake State Park Spraypark, which was the largest reported outbreak of Cryptosporidium in New York State and second largest reported outbreak in U.S. recreational water history); *Baker et al v. SF HWP Management LLC et al*, NYS Sup. Ct. Washington County, No. 50564 (class certification and settlement of norovirus outbreak at the Six Flags Great Escape Indoor Lodge and Waterpark, Lake George, New York, one of the largest norovirus outbreaks in New York State history); *Bellotti v. Smiley Brothers Inc.*, Sup. Ct. Ulster County, Index No. 14-522 (class certification and settlement on behalf of hundreds of persons injured in the 2014 norovirus outbreak at the Mohonk Mountain House in New Paltz, NY).

49.     Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

50.     Class treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of evidence, testimony and effort. Class treatment will further avoid the risk of inconsistent rulings and judgments on common issues of fact and law that individual actions would endanger.

51.     Absent class certification, individual litigation of the claims would be unreasonably expensive in light of the probable recoverable damages, burdensome upon the court, and would waste resources otherwise available to compensate the class.

52.     Absent class certification, the claims of any infant class members may be untimely.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Strict Liability)

53.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

54.     Defendant received monetary benefit from the sale of its food products.

55.     Defendant had a duty to provide the aforesaid food products in such condition that they would be reasonably safe for consumption and to warn plaintiff of any dangers which could accompany such use.

56.     At all relevant times, the food prepared, marketed, sold and distributed by defendant was unreasonably dangerous, defective, and not safe and fit for its intended use and purpose by plaintiff.

57.     Defendant failed to warn plaintiff of dangers which could accompany the consumption of food that it prepared, marketed, sold and distributed.

58.     Upon information and belief, defendant had actual and/or constructive knowledge of the nature and the condition of the safety of the food products, facilities and services that it provided and/or should have had such knowledge in the exercise of reasonable care.

59.     Defendant is strictly liable to plaintiff for placing said food products into the stream of commerce for consumption by members of the public, including plaintiff.

60.     As a direct and proximate result of the foregoing, plaintiff suffered personal injuries and seeks general, special, incidental, and consequential damages in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION
### (Breach of Express and Implied Warranties)

61.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

62.     At all relevant times that defendant prepared, marketed, sold and distributed its food products, said defendant expressly and implicitly represented and warranted that such food products were reasonably safe, wholesome, merchantable, and fit for the intended and ordinary use by consumers, including plaintiff.

63.     Defendants' representations and warranties were directed at purchasers and consumers of its food products, including plaintiff, who were intended beneficiaries of same.

64.     The representation and warranties of defendant with respect to the food consumed by plaintiff were breached in that said food sold to plaintiff was not safe or fit for human use, and was not of merchantable quality, and in fact was otherwise dangerous and unsafe, all in violation of defendant's express statements and implied warranties of merchantability.

65.     As a direct and proximate result of the foregoing, plaintiff suffered personal injuries and seeks general and special, incidental, and consequential damages in an amount to be determined at the time of trial.

## THIRD CAUSE OF ACTION
### (Negligence)

66.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein

67.     Defendant owed a duty to the plaintiff to use reasonable care in connection with the preparation, marketing, sale and distribution of its food products.

68.     Defendant had a duty to ensure that the food prepared, marketed, sold and distributed to plaintiff was safe for its intended use, and in a sanitary condition.

69.     Defendant owed a duty to comply with all applicable state and federal laws and regulations governing the preparation, marketing, sale and distribution of its food products, including but not limited to New York State Agriculture and Markets Law §§ 199-a, 200, and the Federal Food, Drug and Cosmetics Act, 21 U.S.C., § 301 et seq., which prohibit the sale of food that is unsafe for consumption by the public.

70.     Defendant breached its duties owed to plaintiff.

71.     The food prepared, marketed, sold and distributed by defendant that was consumed by plaintiff was unsafe, adulterated and unfit for human consumption.

72.     Defendant, committed the following acts and omissions of negligence:

    a.   Defendant failed to exercise reasonable care in the preparation, marketing, sale and distribution of its food products;

    b.   Defendant failed to adequately monitor the safety and sanitary conditions of its food products, facilities and services;

    c.   Defendant failed to apply reasonable policies and procedures so as to ensure the safety and sanitary conditions of the food it sold to the public, including plaintiff;

d.   Defendant failed to provide proper warnings and safeguards to persons who purchased and consumed it food products, including plaintiff;

e.   Defendant failed to prevent the adulteration of food and transmission of foodborne gastrointestinal illness to persons who purchased its food products, including plaintiff;

f.   Defendant failed to properly train its agents, servants and employees how to prevent the contamination and transmission of foodborne gastrointestinal illness; and

g.   Defendant violated applicable laws, rules, and regulations including, but not limited to, sections 199-a and 200 of the NYS Agriculture and Markets Law and section 331 of the Federal Food, Drug and Cosmetics Act, 21 U.S.C., § 301 et seq.

73.   Defendant's breach of its duty in violation of the aforementioned statutory laws and regulations constitutes negligence *per se*.

74.   As a direct and proximate result of defendant's negligence and negligence per se, plaintiff was injured, and said injury was foreseeable.

75.   As a direct and proximate result of the foregoing, plaintiff suffered personal injuries and seeks general and special, incidental, and consequential damages in an amount to be determined at the time of trial.

## VII.   DEMAND FOR TRIAL BY JURY

Plaintiff demands a jury trial on all issues so triable.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendant as follows:

A.   Certifying this action as a class action;

B.   Appointing the named plaintiff as class representative;

C.   Appointing the undersigned counsel as class counsel;

D.   Awarding compensatory and special damages, together with pre and post judgment interest, in an amount to be determined at trial;

E.   Granting declaratory relief adjudicating the parties' legal rights and obligations;

F.   Granting such other and further equitable relief as justice requires;

G.   For the costs, disbursement, and reasonable attorneys' fees of this action; and

H.   For such other and further relief as this Court deems just and proper.

Dated: June 27, 2022

Respectfully,

/s/ James R. Peluso

_____
James R. Peluso (Bar Roll # JP2875)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY 12210
Telephone: (518) 463-7784
jpeluso@dblawny.com

/s/ Joseph E. O'Connor

_____
Joseph E. O'Connor (Bar Roll # JO5185)
O'Connor & Partners, PLLC
255 Wall Street, Kingston, NY 12401
Telephone: (845) 303-8777
joconnor@onplaw.com

Counsel for Plaintiff and the Proposed Class