UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BREEANNE BUCKLEY PENI, individually and
on behalf of all others similarly situated,

                     Plaintiff,

           vs.

DAILY HARVEST, INC.,

                   Defendant.

Case No.: 1:22-cv-05443

---

## DEFENDANT DAILY HARVEST, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS

FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Telephone: (212) 248-3140

*Attorneys for Defendant Daily Harvest, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT .................................................................................................................... 5

      A.     The Federal Arbitration Act requires that courts compel parties to arbitrate issues that are subject to an arbitration agreement and to stay any proceedings pending the motion to compel arbitration............................................ 5

      B.     Under the FAA and Daily Harvest's Terms of Use, the Court must grant Daily Harvest's motion to compel arbitration. ....................................................... 8

            1.     Ms. Peni's claims are subject to arbitration. ............................................. 8

            2.     Ms. Peni accepted the Terms of Use and is bound by its valid and enforceable arbitration provision. ............................................................. 10

CONCLUSION................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alderson v. DeVere USA, Inc.*,
  No. 18-cv-5081 (JFK), 2018 WL 3756451 (S.D.N.Y. July 24, 2018) ...................................9

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013) ...........................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ...............................................................................................5, 6, 7, 9

*AT&T Techs., Inc. v. Comm'ns Workers of Am.*,
  475 U.S. 643 (1986) ...........................................................................................................6, 9

*Bar-Ayal v. Time Warner Cable Inc.*,
  No. 03-cv-9905(KMW), 2006 WL 299032 (S.D.N.Y. Oct. 16, 2006)...................................9

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019)...................................................................................................7

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*,
  923 F.2d 245 (2d Cir. 1991)...................................................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)................................................................................................................5

*DIRECTV, Inc. v. Imburgia*,
  136 S. Ct. 463 (2015)..............................................................................................................9

*Emilio v. Sprint Spectrum L.P.*,
  508 F. App'x 3 (2d Cir. 2013) .............................................................................................10

*Feld v. Postmates, Inc.*,
  442 F. Supp. 3d 825 (S.D.N.Y. 2020)..................................................................................11

*Fteja v. Facebook, Inc.*,
  841 F.Supp.2d 829 (S.D.N.Y. 2012)....................................................................................11

*Hanson v. TMX Finance, LLC*,
  No. 2:18-CV-00616-RFBCWH, 2019 WL 1261100 (D. Nev. Mar. 19, 2019)......................12

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
  139 S. Ct. 524 (2019)............................................................................................................10

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)..............................................................................10, 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985).............................................................................................6, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................................6, 9

*Page v. Alliant Credit Union*,
  No. 1:19-cv-5965, 2020 WL 2526488 (N.D. Ill. May 18, 2020)...........................12

*Perry v. Thomas*,
  482 U.S. 483 (1987).................................................................................................5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967).................................................................................................6

*Shetiwy v. Midland Credit Mgmt.*,
  959 F. Supp. 2d 469 (S.D.N.Y. July 12, 2013) .......................................................8

*Singer v. Jeffries & Co., Inc.*,
  78 N.Y.2d 76 (1991) ................................................................................................6

*Smith Barney Shearson Inc. v. Sacharow*,
  91 N.Y.2d 39, 666 N.Y.S.2d 990 (1997) .................................................................6

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984).....................................................................................................6

*Stark v. Molod Spitz DeSantis & Stark, PC*,
  9 N.Y.3d 59, 845 N.Y.S.2d 217(2007) ...................................................................7

*Starke v. Gilt Groupe, Inc.*,
  No. 13 Civ. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...............11

*State of N.Y. v. Oneida Indian Nation of N.Y.*,
  90 F.3d 58 (2d Cir. 1996).........................................................................................7

*State v. Philip Morris Inc.*,
  8 N.Y.3d 574, 838 N.Y.S.2d 460 (2007) .................................................................7

*The Orange Chicken L.L.C. v. Nambe Mills, Inc.*,
  2000 WL 1858556 (S.D.N.Y. 2000).........................................................................6

*United States v. Bankers Ins. Co.*,
  245 F.3d 315 (4th Cir. 2001) ...................................................................................8

**STATUTES, RULES & REGULATIONS**

9 U.S.C. § 1, *et seq.* (Federal Arbitration Act) ........................................................5, 6, 10

9 U.S.C. § 2.................................................................................................................5, 9

9 U.S.C. § 3.....................................................................................................................8

9 U.S.C. § 4..................................................................................................................7, 8

C.P.L.R. 7503(a) ............................................................................................................7

**INTRODUCTION**

Plaintiff Breeane Buckly Peni's claims against Daily Harvest, Inc. ("Daily Harvest"), like those of the plaintiff in the related matter of *Ready v. Daily Harvest, Inc.*, No. 1:22-cv-5385-VSB (S.D.N.Y.), must be resolved individually, in binding arbitration, and not in a court class action, because Ms. Peni agreed to this by contract when she purchased Daily Harvest products.  Ms. Peni's contract with Daily Harvest committed her to arbitrate "any dispute arising out of or relating to" her use of Daily Harvest's website, applications, products, or services.  Ms. Peni's claims in this case are subject to that agreement.  Consistent with well-established federal policy, federal courts in New York favor the resolution of claims through arbitration and routinely compel arbitration, where, as here, the parties' relationship is governed by a valid and enforceable arbitration agreement.  Daily Harvest requests, as it has done in *Ready*, that the Court compel this case to arbitration and dismiss or stay the case while arbitration proceeds.[1]

**STATEMENT OF FACTS**

Daily Harvest is a subscription-based, prepared-food delivery service.  It offers plans based on the number of chef-crafted food options a customer wants (*i.e.*, 9, 14, or 24) and how often the customer wants them delivered (weekly or monthly).  Customers can customize their subscriptions based on their needs and manage their accounts from Daily Harvest's website or mobile applications.  Daily Harvest also offers customers the ability to make one-time purchases of its products without a subscription.  *See* Declaration of Ricky Silver ("Silver Decl.") ¶¶ 3-4.

---

[1] The Court's docket (at No. 7) reflects that Ms. Peni attempted to serve Daily Harvest with her Complaint by delivering it to the New York Secretary of State at 3:30 AM on June 30, 2022.  Daily Harvest did not receive notice of this suit through the Secretary of State and Ms. Peni's counsel did not contact Daily Harvest or its counsel about this case until July 27, 2022.  This motion promptly followed.

According to the Complaint, Ms. Peni "made an online purchase" of Daily Harvest's French Lentil + Leek Crumbles—one of Daily Harvest's products available to its customers. *See* Complaint ¶ 25. Daily Harvest's records reflect this, too: Ms. Peni signed up to receive Daily Harvest emails on May 8, 2022, and she placed her first order on May 22, 2022, which order included the French Lentil + Leek Crumbles. *See* Silver Decl. ¶¶ 5, 10. Ms. Peni could not have created an account or purchased any meals without first accepting Daily Harvest's Terms of Use, Terms of Sale, and Privacy Policy. *See id.* ¶¶ 5-6, 8-9. To register her acceptance of these agreements, Ms. Peni entered her email address and zip code and then clicked a button labeled "Let's Go" (if she completed this process on Daily Harvest's Website) or "View Plans and Pricing" (if she completed this process on Daily Harvest's mobile application), which button appeared directly above a conspicuous disclosure stating, "[b]y clicking above, you agree to our Terms of Use and Terms of Sale, and consent to our Privacy Policy." *Id.* ¶ 6. The phrases "Terms of Use," "Terms of Sale," and "Privacy Policy" were underlined hyperlinks to those documents. *See id.* These disclosures appeared in substantially the same form as shown here (*id.*):



(website version)                    (mobile application version)

The agreement to arbitrate disputes appeared in Daily Harvest's Terms of Use, one of the documents referenced above, and Ms. Peni had to affirmatively accept the agreement to arbitrate a <u>second</u> time, by means of an affirmative check-box, before she could place an order.  *See* Silver Decl. ¶ 8.  The check-box, which was unchecked by default, appears next to the statement "I've read and accept the <u>terms & conditions</u>," with the words "<u>terms & conditions</u>" underlined to reflect that they also were a hyperlink to the referenced document.  *Id.*  The Daily Harvest website and mobile application would not have allowed Ms. Peni to click the "Place Order" button or to place an order unless she placed a checkmark in the check-box expressing her assent to the contract, including its arbitration requirement.  *See id.* ¶ 9.  The disclosure and check-box appeared similarly on Daily Harvest's website and mobile application, as depicted on the next page (*id.* ¶ 8):

☐ I've read and accept the <u>terms &</u>
<u>conditions</u>*

**PLACE ORDER**

You will receive weekly deliveries billed to
your designated payment method unless
you skip an order or cancel before cutoff
(Sunday at 6PM ET). Pricing is based on meal
selections, quantity and any applicable
discounts or fees, and is subject to change.

The Terms of Use to which Ms. Peni agreed by placing her May 22, 2022 order began by advising her to read the document carefully.  *See* Silver Decl. Ex. A.  Next, at the top of the Terms of Use, Daily Harvest prominently stated in all-capital letters that with few exceptions, any disputes between Ms. Peni and the company would have to be resolved in binding arbitration rather than in court:

> **PLEASE READ THESE TERMS CAREFULLY. These Terms include information about future changes to these Terms, automatic renewals, limitations of liability, a class action waiver and resolution of disputes by arbitration instead of in court.**  PLEASE NOTE THAT

3

> YOUR USE OF AND ACCESS TO OUR SERVICES ARE SUBJECT TO THE FOLLOWING TERMS; IF YOU DO NOT AGREE TO ALL OF THE FOLLOWING, YOU MAY NOT USE OR ACCESS THE SERVICES IN ANY MANNER.
>
> **ARBITRATION NOTICE AND CLASS ACTION WAIVER:** NOTE THAT SECTION 18 OF THE TERMS OF USE CONTAINS A MANDATORY ARBITRATION PROVISION, AND EXCEPT FOR CERTAIN TYPES OF DISPUTES DESCRIBED IN THAT SECTION, YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.

*Id.* ¶ 11 & Ex. A (emphasis and capitalization in original).  Ms. Peni purports to represent a class in this matter, which her agreement does not allow.

The referenced arbitration provisions of the Terms of Use state that except for small claims actions and certain intellectual property disputes, neither of which are at issue here, any "dispute" between Defendant and customers must "be finally settled by binding arbitration."  Silver Decl. ¶ 12 & Ex. A § 18.1.  The arbitration provision covers "any dispute arising out of or relating to the subject matter of the [Terms of Use]."  *Id.*  The Terms of Use governs all "use of [Daily Harvest's] website(s), applications, products, or services."  *Id.*

Arbitrations also must be conducted individually, not on a class basis, and the terms inform users that "YOU AND DAILY HARVEST WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR JURY."  *Id.* ¶ 13 & Ex. A § 18.4 (capitalization in original).  The terms further provide: "ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS."  *Id.* ¶ 13 & Ex. A § 18.5 (capitalization in original).

The Terms of Use give customers a 30-day opportunity to opt out of the arbitration requirement, which they may exercise by sending written notice to a specified address within 30

days after having accepted the agreement.  *See* Silver Decl. ¶ 14 & Ex. A § 18.7.  Ms. Peni became

subject to the Terms of Use no later than May 22, 2022, when she placed her first order.  *See id.*

¶ 15.  Had she wished to opt out of the arbitration requirement, she would have had to do so no

later than June 21, 2022.  *See id.*  Daily Harvest has no record that Ms. Peni opted out the arbitration

requirement using the prescribed method for doing so by that date or at any time.  *See id.*  She

claims that she became ill after consuming the Lentil + Leek Crumbles product, and she has

asserted claims against Daily Harvest arising from that illness.  *See* Complaint ¶¶ 1, 27-33.

## <u>ARGUMENT</u>[2]

### A.   The Federal Arbitration Act requires that courts compel parties to arbitrate issues that are subject to an arbitration agreement and to stay any proceedings pending the motion to compel arbitration.

The Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA" or "Act") provides that a

"written provision in any . . . contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1744

(2011).  Congress has expressed a firm public policy favoring arbitration under which courts must

"rigorously enforce" arbitration agreements.  *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213,

221 (1985).  Congress enacted the FAA "in response to widespread judicial hostility to arbitration

agreements." *Concepcion,* 131 S. Ct. at 1745; *see also Perry v. Thomas,* 482 U.S. 483, 489 (1987)

(describing the FAA as "a congressional declaration of a liberal federal policy favoring arbitration

---

[2] Other than the specific facts regarding Ms. Peni's purchases from Daily Harvest, this motion is substantively identical to the motion that Daily Harvest filed in *Ready*.

agreements"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution").

In enacting the FAA, Congress created national substantive law governing all questions of the validity and enforceability of arbitration agreements within its scope. *The Orange Chicken L.L.C. v. Nambe Mills, Inc.,* 2000 WL 1858556 (S.D.N.Y. 2000). As the United States Supreme Court has held, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)*; see also AT&T Techs., Inc. v. Comm'ns Workers of Am.,* 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

The FAA is binding on federal and state courts alike. *See Southland Corp. v. Keating*, 465 U.S. 1, 7-8 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967); *Singer v. Jeffries & Co., Inc.*, 78 N.Y.2d 76, 81 (1991). "[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Concepcion,* 131 S. Ct. at 1745 (internal citation omitted). Daily Harvest's Terms of Use explicitly provide that all disputes are to be governed by the "Federal Arbitration Act, applicable federal law, and the laws of New York." Silver Decl., Ex. A § 19.

The public policy of the State of New York similarly favors enforcement of agreements to arbitrate. The New York Court of Appeals has described this public policy favoring arbitration as "long and strong." *Smith Barney Shearson Inc. v. Sacharow,* 91 N.Y.2d 39, 49, 666 N.Y.S.2d 990,

995 (1997); *see also State v. Philip Morris Inc.,* 8 N.Y.3d 574, 838 N.Y.S.2d 460 (2007); *Stark v. Molod Spitz DeSantis & Stark, PC,* 9 N.Y.3d 59, 845 N.Y.S.2d 217(2007).  New York statutory law provides, in pertinent part, that "[a] party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration.  Where there is no substantial question whether a valid agreement was made . . . the court shall direct the parties to arbitrate." C.P.L.R. 7503(a).

To enforce a private arbitration agreement, a party in pending litigation may file a motion to compel arbitration under the FAA.  *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").  When analyzing a motion to compel pursuant to the FAA, federal policy requires courts to construe arbitration clauses "as broadly as possible."  *See David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 252–53 (2d Cir. 1991) (directing trial court to order parties to arbitrate because arbitration provisions were "broad enough to cover the asserted disputes").  Thus, courts in this Circuit will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (internal quotation marks omitted), *quoting State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996) (affirming lower court's order compelling arbitration of employee's claims where the arbitration clause at issue covered "all employment-related disputes.").  It is of no moment that Ms. Peni purports to represent a class; she agreed to resolve disputes in arbitration *on an individual basis.  See Conception*, 131 S. Ct. at 1745-53 (holding the FAA preempted a California rule that

conditioned the enforceability of arbitration agreements on the availability of class arbitration procedures); *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311 (2013) (enforcing a contractual waiver of class arbitration); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 474-75 (S.D.N.Y. July 12, 2013) (same).

Ms. Peni's claims in the Complaint reflect a "dispute" between herself and Daily Harvest. The claims thus inarguably are covered under Daily Harvest's Terms of Use.

**B.      Under the FAA and Daily Harvest's Terms of Use, the Court must grant Daily Harvest's motion to compel arbitration.**

*1.      Ms. Peni's claims are subject to arbitration.*

Pursuant to these authorities, the Court should enforce the arbitration requirement to which Ms. Peni agreed when she accepted the Terms of Use.  The FAA, which applies here, requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.  "If the issues in the case are within the contemplation of the arbitration agreement," which is undeniable in this case, "the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 3 I 9 (4th Cir. 2001).  A party aggrieved by a refusal to arbitrate under a written agreement may petition the Court for an order compelling arbitration.  *See* 9 U.S.C. § 4.

In deciding whether a matter should be submitted to arbitration, federal courts must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether the specific dispute falls within the substantive scope of that agreement.  *See Mitsubishi Motors Corp.*, 473 U.S. at 626-28.  An arbitration agreement must meet only two conditions for the FAA to apply, and both conditions indisputably are met here: the agreement must (1) be in writing; and (2) evidence "a

transaction involving commerce." *See* 9 U.S.C. § 2. The Terms of Use are in writing and Ms.
Peni agreed to them in connection with what her Complaint acknowledges was her online purchase
of Daily Harvest's French Lentil + Leek Crumbles product. *See* Complaint at ¶ 25.

A court may only declare an arbitration agreement unenforceable "upon such grounds as
exist at law or equity for the revocation of any contract." *Conception*, 131 S. Ct. at 1744. No such
grounds exist in this case. In *Concepcion*, the Supreme Court held that the FAA preempts any
state law that diminishes arbitration agreements. Later, in *DIRECTV, Inc. v. Imburgia*, 136 S. Ct.
463, 471 (2015), the Supreme Court once again reversed a court's refusal to enforce an arbitration
agreement. An "order to arbitrate the particular grievance should not be denied unless it may be
said with positive assurance that the arbitration clause is not susceptible of an interpretation that
covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650.

Further, "questions of arbitrability must be addressed with a healthy regard for the federal
policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24. Parties to an arbitration agreement
may agree that questions of arbitrability (*i.e.*, whether a particular dispute is within the scope of an
arbitration agreement) are reserved for the arbitrator, rather than the court. *See Bar-Ayal v. Time
Warner Cable Inc.*, No. 03-cv-9905(KMW), 2006 WL 299032 at *14 (S.D.N.Y. Oct. 16, 2006)
(where the parties agreed to arbitrate arbitrability, the question of whether the action falls within
the scope of the arbitration provision is "an issue for the arbitrator to decide"). Parties also may
delegate questions of arbitrability to an arbitrator by expressly incorporating rules into their
arbitration agreement that "empower an arbitrator to decide issues of arbitrability," such as the
rules of JAMS. *See, e.g., Alderson v. DeVere USA, Inc.*, No. 18-cv-5081 (JFK), 2018 WL
3756451, at *2 (S.D.N.Y. July 24, 2018) (parties' inclusion of AAA and JAMS rules in their
arbitration agreement, which rules required arbitrators to rule on arbitrability issues, served as

unmistakable evidence of parties' intent to delegate arbitrability issues to arbitrator).  Where the court has found that the parties agreed to delegate questions of arbitrability to an arbitrator, the court must compel arbitration and not rule on the merits of arguments that particular claims fall outside the scope of an arbitration agreement.  *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019) (vacating lower court's decision on merits of arbitrability question that parties delegated to arbitrator).

Here, the agreement unambiguously sets forth that the arbitration will be administered by JAMS "in accordance with the JAMS Streamlined Arbitration Rules and Procedures [] then in effect," and that the Terms of Use would be governed by and will be construed under the Federal Arbitration Act.  Silver Decl., Ex. A, §§ 18.1 and 19.  The Second Circuit has determined that the incorporation of the JAMS Comprehensive and Streamlined Arbitration Rules and Procedures constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013).  Accordingly, even if Ms. Peni could articulate any basis to argue that her claims fall outside the arbitration requirement, any such dispute must be resolved by the arbitrator.

### 2.    *Ms. Peni accepted the Terms of Use and is bound by its valid and enforceable arbitration provision.*

No question of contract <u>formation</u> exists in this case.  Ms. Peni agreed to arbitrate by means of a "clickwrap" process that required her affirmatively to click a box affirming her acceptance of Daily Harvest's terms.  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017) (enforcing arbitration agreement, even without an affirmative check-box, where "the user must click a button marked 'Register,' underneath which the screen states 'By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY,' with hyperlinks to" those documents).  Courts in this Circuit routinely enforce agreements to arbitrate where plaintiffs have electronically

acknowledged being bound to terms, as Ms. Peni did. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) (collecting cases). Ms. Peni's placing of a check-mark in the box reading "I've read and accept the <u>terms & conditions</u>," which terms were available through hyperlink for Ms. Peni to access, constituted sufficient notice to Ms. Peni and necessitates compelling arbitration regardless of whether Ms. Peni used the hyperlink to review the terms of the agreement. *Id.* at 839 ("[C]licking [a] hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else.").

The account opening process for Daily Harvest, with an affirmative check-box acknowledgement, is similar to the process upheld by numerous New York federal courts. *See*, *e.g.*, *Meyer*, 868 F.3d at 75-80; *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825 (S.D.N.Y. 2020); *Fteja*, 841 F. Sup. 2d 289. In *Feld v. Postmates*, Judge Castel found:

> Postmates' website and App sign-up screens put users on notice that by signing up for its service, they were agreeing to Postmates' [Terms of Service] and Privacy Policy. Here, as in *Meyer*, the "physical proximity of the notice to the register button and the placement of the language in the registration flow make clear to the user that the linked terms pertain to the action the user is about to take." 868 F.3d at 80. By signing up for Postmates' service, Feld manifested assent to the [Terms of Service], even if she did not click on the hyperlink to read the contract. Courts in this District have reached the same conclusion on similar facts. *See, e.g.*, *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (manifesting assent where user clicked "Shop Now" on site that informed users that doing so would subject them to the site's "Terms of Membership"); *Fteja*, 841 F. Supp. 2d at 838-41 (by signing up for social networking site, user assented to Facebook's forum selection clause in hyperlinked "Terms of Use" where Facebook "informed [the user] of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences."),

*Feld*, 442 F. Supp. 3d at 832-33.

In this case, Ms. Peni assented to arbitrate on two occasions.  First, when signing up for a Daily Harvest account, she assented by clicking on a button that included substantially the following disclaimer: "[b]y clicking above, you agree to our Terms of Use and Terms of Sale, and consent to our Privacy Policy."  Then, after selecting products and before pressing the button "Place Order," Ms. Peni was required to affirmatively check a box that stated, "I've accepted and read the Terms & Conditions."

The contract gave Ms. Peni a 30-day window after her May 22, 2022, order to opt out of the arbitration requirement, which opportunity Ms. Peni did not exercise.  *See* Silver Decl. ¶ 15. That window closed for Ms. Peni no later than June 21, 2022. *See id.*  Even had Ms. Peni filed her lawsuit within that window, which she did not, filing the lawsuit would not have constituted a valid opt-out from the arbitration requirement because Ms. Peni did not follow the method the contract specified for opting out.  *See, e.g., Page v. Alliant Credit Union*, No. 1:19-cv-5965, 2020 WL 2526488, at *3 (N.D. Ill. May 18, 2020) (compelling arbitration because the act of filing a lawsuit did not constitute a valid opt-out; "the membership agreement specifically gave the methods by which a member could opt out"); *Hanson v. TMX Finance, LLC*, No. 2:18-CV-00616-RFBCWH, 2019 WL 1261100, at *3 (D. Nev. Mar. 19, 2019) (compelling arbitration because filing a lawsuit did not satisfy "the plain terms of the opt-out provision of the agreement [which] required Plaintiff to send a writing containing certain information to Defendant at a certain address").  The same is true here.

Accordingly, Ms. Peni should be bound by the terms of her agreement to arbitrate and the Court should order arbitration of Ms. Peni's claims.

## **CONCLUSION**

For each of the foregoing reasons, Defendant Daily Harvest respectfully requests that the Court compel arbitration of the parties' dispute and dismiss or stay Ms. Peni's claims in favor of arbitration.

Dated:  July 27, 2022
       New York, New York

Respectfully Submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By:   */s/ Jeffrey S. Jacobson*

Jeffrey S. Jacobson
Justin M. Ginter
1177 Avenue of the Americas, 41st Floor
New York, New York  10036
(212) 248-3140
jeffrey.jacobson@faegredrinker.com
justin.ginter@faegredrinker.com

-- and --

Sarah L. Brew*, admitted pro hac vice*
2200 Wells Fargo Center
90 South Seventh Street
(612) 766-7000
sarah.brew@faegredrinker.com

*Attorneys for Defendant Daily Harvest, Inc.*