UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BREEANNE BUCKLEY PENI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAILY HARVEST, INC.,<br><br>Defendant. | Case No.: 1:22-cv-05443 |

**DECLARATION OF RICKY SILVER IN SUPPORT OF DEFENDANT DAILY HARVEST, INC.'S MOTION TO COMPEL ARBITRATION**

1. I, Ricky Silver, am over the age of eighteen and am competent to testify to, and have personal knowledge of, the matters set forth in this Declaration.

2. I hold the position of Chief Supply Chain Officer with defendant Daily Harvest, Inc. ("Daily Harvest"). In my position, I have access to information regarding the process that Daily Harvest customers follow to create accounts with Daily Harvest and to place product orders, the disclosures that Daily Harvest makes to customers when they create accounts and place orders, the agreements that customers must accept when placing orders, the changes Daily Harvest has made to those agreements from time to time, and the means by which Daily Harvest has communicated those changes to ongoing customers. To verify the facts in this declaration pertaining specifically to Plaintiff Breeanne Buckley Peni, I have reviewed information from Daily Harvest's systems of record.

3. Daily Harvest is a subscription-based, prepared food delivery service. Daily Harvest provides a variety of ready-to-eat vegan smoothies, oat and chia bowls, flatbreads, harvest bowls, soups, and snacks. Daily Harvest offers plans based on the number of chef-crafted food

options a customer wants (*i.e.*, 9, 14, or 24) and how often the customer wants them delivered (weekly or monthly). Daily Harvest also offers customers the ability to make one-time purchases of its products without a subscription.

4. Customers can engage with Daily Harvest and customize their subscriptions online either by using Daily Harvest's website or the Daily Harvest mobile application. There are minor differences in the appearance—but not the content—of certain disclosures as between the two methods. Because Daily Harvest does not know whether Ms. Peni used Daily Harvest's website or the mobile application for each step in her account creation and various order processes, I will discuss in this declaration how the various disclosures appear in both formats.

5. Daily Harvest's records reflect that Ms. Peni signed up to receive Daily Harvest emails on May 8, 2022, and placed her first Daily Harvest order on May 22, 2022. She could not have created her account, nor could she have placed an order, unless and until she had accepted Daily Harvest's contractual documents, including the requirement to arbitrate disputes.

6. First, Ms. Peni could not have created an account unless and until she entered her email address and ZIP code and then clicked a button labeled "Let's Go" (if she completed this process on Daily Harvest's website) or "View Plans and Pricing" (if she completed this process on Daily Harvest's mobile application). Each of these buttons appeared directly above a conspicuous disclosure stating, "[b]y clicking above, you agree to our Terms of Use and Terms of Sale, and consent to our Privacy Policy." The phrases "Terms of Use," "Terms of Sale," and "Privacy Policy" were underlined hyperlinks to those documents. The only difference between the current appearance of this page and the appearance at the time Ms. Peni created her Daily Harvest account is that the Terms of Use and Terms of Sale previously shared a single link.







(website version) (mobile application version)

7. As I will discuss further below, the terms to which Ms. Peni agreed include a requirement that any disputes between Daily Harvest and a customer must be resolved in binding arbitration and not in court.

8. Before Ms. Peni could have placed an order in her account, she had to accept this agreement a second time, by means of an affirmative check-box. The check-box, which was unchecked by default, appeared to her next to the statement "I've read and accept the terms & conditions," with those words underlined again to reflect that they also were a hyperlink to the referenced document. The disclosure appeared in the form shown directly below, and would have looked the same regardless of whether Ms. Peni placed an order using the website or the app:



9. Neither Daily Harvest's website nor its app would have allowed Ms. Peni to click the "Place Order" button or to place an order unless she placed a checkmark in the check-box expressing her assent to the contract.

10. Daily Harvest's records reflect that Ms. Peni's May 22, 2022 Order included products containing the French Lentil + Leek Crumbles at issue in her case. The terms and conditions to which Ms. Peni assented as they existed when she created her account and placed her first order are attached to my Declaration as **Exhibit A**. The version of those terms in effect had last been revised on April 1, 2022.

11. Prominently at the top of the Terms of Use, Daily Harvest stated in all-capital letters that with few exceptions, any disputes between Ms. Peni and the company would have to be resolved in individual, binding arbitration rather than in court:

> **PLEASE READ THESE TERMS CAREFULLY. These Terms include information about future changes to these Terms, automatic renewals, limitations of liability, a class action waiver and resolution of disputes by arbitration instead of in court.** PLEASE NOTE THAT YOUR USE OF AND ACCESS TO OUR SERVICES ARE SUBJECT TO THE FOLLOWING TERMS; IF YOU DO NOT AGREE TO ALL OF THE FOLLOWING, YOU MAY NOT USE OR ACCESS THE SERVICES IN ANY MANNER.
>
> **ARBITRATION NOTICE AND CLASS ACTION WAIVER:** NOTE THAT SECTION 18 OF THE TERMS OF USE CONTAINS A MANDATORY ARBITRATION PROVISION, AND EXCEPT FOR CERTAIN TYPES OF DISPUTES DESCRIBED IN THAT SECTION, YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.

12. Section 18 of the Terms of Use—the arbitration provision—states that except for small claims actions and certain intellectual property disputes, any "dispute" between Defendant and customers must "be finally settled by binding arbitration." The arbitration provision covers

"any dispute arising out of or relating to the subject matter of the [Terms of Use]," and the Terms of Use governs all "use of [Daily Harvest's] website(s), applications, products, or services."

13. Section 18 also provides that arbitrations must be conducted individually, not on a class basis, and the Terms of Use inform users in all-capital letters that:

- "YOU AND DAILY HARVEST WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR JURY"; and
- "ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER."

14. The Terms of Use give customers a limited-time opportunity to opt out of the arbitration requirement. Section 18.7 states: "You have the right to opt out of the provisions of this Section by sending written notice of your decision to opt out to the following address: Daily Harvest, Inc. Attention: Legal; 99 Hudson Street, Floor 11; New York, NY 10013 postmarked within thirty (30) days of first accepting these Terms. You must include (i) your name and residence address, (ii) the email address and/or telephone number associated with your Account, and (iii) a clear statement that you want to opt out of these Terms' arbitration agreement."

15. Ms. Peni became subject to the Terms of Use no later than May 22, 2022, when she placed her first order. Had she wished to opt out of the arbitration requirement, she would have had to do so no later than June 21, 2022. Daily Harvest has no record that Ms. Peni opted out the arbitration requirement using the prescribed method for doing so by that date or at any time.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 27, 2022 at New York, New York.

Ricky Silver