UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BREEANNE BUCKLEY PENI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DAILY HARVEST, INC. and SECOND BITE FOODS, INC. d/b/a "STONE GATE FOODS", and JOHN DOE ENTITIES 1-5,<br><br>Defendants. | Civil Case No. 1:22-cv-05443-DLC |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DAILY HARVEST INC.'S MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**

DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY 12210
Telephone: (518) 463-7784

O'CONNOR & PARTNERS, PLLC
255 Wall Street
Kingston, NY 12401
Telephone: (845) 303-8777

*Counsel for Plaintiff and the Proposed Class*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ..................................................1

ARGUMENT ...............................................................................................................2

EVEN ASSUMING PLAINTIFF ENTERED INTO THE ARBITRATION
AGREEMENT, IT DOES NOT CLEARLY AND UNMISTAKABLY COVER
PERSONAL INJURY CLAIMS OR DELEGATE THE ISSUE OF
ARBITRABILITY AND BOTH THE ARBITRATION AGREEMENT AND
DELEGATION PROVISION ARE PERMEATED BY UNCONSCIONABILTY
AND CANNOT BE ENFORCED .................................................................................2

I.   QUESTIONS OF FACT EXIST WHETHER PLAINTIFF ENTERED INTO A VALID
     ARBITRATION AGREEMNT ....................................................................................3

II.  THE ARBITRATION AGREEMENT DOES NOT CLEARLY AND UNMISTAKABLY
     COVER PERSONAL INJURY CLAIMS OR DELEGATE THE ISSUE OF
     ARBITRABILITY .......................................................................................................4

     A.  Daily Harvest's Arbitration Agreement and Delegation of Arbitrability Does Not Cover
         Personal Injury Claims..........................................................................................4

     B.  The Delegation of Arbitrability by Incorporation of the JAMS Rules is Not Enforceable
         Because Plaintiff is an Unsophisticated Party .....................................................10

     C.  The Delegation of Arbitrability is Ambiguous Because Class Action Claims Can Be
         Litigated in a Court of Law...................................................................................12

III. THE ARBITRATION AGREEMENT AND DELEGATION OF ARBITRABILITY
     CANNOT BE ENFORCED BECAUSE THEY ARE PERMEATED BY
     UNCONSCIONABILTY, OVERREACHING AND VIOLATE PUBLIC POLICY .........12

     A.  The Daily Harvest Terms of Use and Arbitration Agreement is Procedurally
         Unconscionable Because It is a Contract of Adhesion.................................................14

     B.  Multiple Terms of the Arbitration Agreement and Delegation of Arbitrability are
         Unconscionable, Constitute Overreaching, and Violate Public Policy ........................15

         1.  The Agreement is Unconscionable and Against Public Policy for Lack of Adequate
             Consideration and Mutuality to Arbitrate Personal Injury Claims..........................15

         2.  The Limitation on Personal Injury Liability and Damages is Illegal Under New York
             Law as Unconscionable and Against Public Policy ...............................................16

i

3.   The Punitive Damages Waiver and Release is Unconscionable ............................17

4.   The Batch Arbitration Provision is Unconscionable ................................................18

5.   The Arbitration Agreement Imposes Unreasonable and Unfair Costs to Arbitrate Personal Injury Claims in Excess of $75,000 ........................................................20

C.   The Arbitration Provisions Are Permeated by Unconscionability and Cannot Be Severed ......................................................................................................................21

IV. ANY MOTION TO STAY SHOULD BE LIMITED TO DAILY HARVEST ..................22

CONCLUSION .........................................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000)......................15, 19

*Armor All/STP Products Co. v. TSI Products, Inc.*, 337 F. Supp. 3d 156 (D. Conn 2018).............9

*Aviall, Inc. v. Ryder System, Inc.*, 913 F. Supp. 826 (S.D.N.Y. 1996)..........................................14

*Bowmer v. Bowmer*, 50 N.Y.2d 288 (1980) ...................................................................................9

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002) .........................................17

*Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16 (E.D.N.Y. 2017).............................................18

*Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100, 2004 U.S. Dist. LEXIS 9092
   (S.D.N.Y. May 19, 2004) ............................................................................................................

*Coffey v. Kellogg Brown & Root*, CIVA 1:08-cv-2911,
   2009 WL 2515649 (N.D. Ga Aug. 13, 2009).............................................................................7

*Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16 (2d Cir. 1995) ....................................5

*David v. #£1 Mktg. Serv., Inc.*, 113 A.D.3d 810 (2d Dep't 2014).................................................14

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308 (2d Cir. 2021).......................................7

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) .......................................................12

*Emilio v. Sprint Spectrum L.P.*, 508 Fed. Appx. 3 (2d Cir. 2013)................................................10

*ERC 16W Ltd. Partnership v. Xanadu Mezz Holdings LLC*, 95 A.D.3d 498 (1st Dep't 2012) ......7

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)................................................6, 11

*Gelbman v. Valleycrest Prod., Ltd.*, 189 Misc. 2d 403, 732 NYS2d 528 ....................................14

*Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019)..................................................16, 22

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ................................................5

*Haft v. Haier US Appliance Sols.*, Inc., 578 F. Supp. 3d 436 (S.D.N.Y. 2022) ...........................13

*Harbison v. Louisiana-Pac. Corp.*, 602 Fed. Appx. 884 (3d Cir. 2015).................................13, 14

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ........................................................11

*Jacobson v. Sassower*, 66 N.Y.2d 991 (1985)...............................................................................7

*MacClelland v. Cello Partnership*, 2022 WL 2390997 (N.D. Cal. July 1, 2022)................Passim

*Matter of Teleserve Sys., Inc. (MCI Telecom. Corp.*, 230 A.D.2d 585 (4th Dep't 1997) .......13, 21

*McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir. 1980) ........................................5, 7

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825 (2d Cir. 1988)..........5, 8

*Meyer v. Uber Technologies*, 686 F.3d 66 (2017)...........................................................................5

*Miner v. Walden*, 101 Misc. 2d 814 (Sup. Ct. 1979)................................................................7, 15

*NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010 (2d Cir. 2014) ..............................6

*Nicosia v. Amazon, Inc.*, 834 F.3d 202 (2d Cir. 2016) ..................................................................4

*Prudential Lines, Inc. v. Exxon Corp.*, 704 F2d 59 (2d Cir. 1983) ................................................6

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010)....................................................................6

*Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133 (1989)...........................................15, 16

*Sammarco v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, 1 A.D.3d 341 (2d Dep't 2003) .....................7

*Sarfati v. M. A. Hittner & Sons, Inc.*, 35 A.D.2d 1004 (2d Dep't 1970)......................................17

*Scotti v. Tough Mudder Inc.*, 63 Misc. 3d 843 (Sup. Ct. Kings County 2019) ..............................5

*Sierra Rutile Ltd. v. Katz*, 937 F.2d 743 (2d Cir. 1991) ..............................................................23

*Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir 2002).........................................4

*Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir 2019) ..............................................................4

*State v. Avco Fin. Serv. of New York Inc.*, 50 N.Y.2d 383 (1980) ................................................13

*State v. Wolowitz*, 96 A.D.2d 47 (2d Dep't 1983) ...................................................................13, 17

*Vargas v. Delivery Outsourcing, LLC*, 15-CV-03408-JST, 2016 WL 946112 (N.D. Cal Mar. 14, 2016)...............................................................................................................................................12

*Waldron v. Goddess*, 61 N.Y.2d 181 (1984) ...................................................................9

**Statutes**

9 U.S.C.A. § 2 ...................................................................................................12

N.Y.U.C.C. § 2–719 ..........................................................................................17

N.Y.G.B.L. §§ 349, 350 .....................................................................................18

**Rules**

F.R.C.P. 23 ........................................................................................................20

## INTRODUCTION

Plaintiff Breanne Buckley Peni, through the undersigned counsel, submits this memorandum of law in opposition to defendant Daily Harvest Inc.'s motion (Doc. 11) to compel arbitration and stay all proceedings.

Plaintiff paid $9.79 for her order of French Lentil & Leek Crumbles. She suffered food poisoning requiring hospitalization and removal of her gall bladder. Daily Harvest acknowledges that an outbreak of food poisoning was caused by its product and specifically a tara flour ingredient. (Doc. 21 Am. Comp. ¶ 34).  Now, Daily Harvest argues that plaintiff's personal injury claim must be arbitrated pursuant to the company's Terms of Use, which contain a narrow arbitration clause that is expressly intended to cover intellectual property and commercial contract disputes.  The Terms or Use and arbitration provision make no mention of personal injury or wrongful death claims, and, among other things, limit defendant's liability and damages to the greater of $250 or the price that plaintiff paid for her food in the prior 30 days. It is clear that plaintiff's personal injury claim was never contemplated by the agreement and that no reasonable consumer would ever assent to such terms which grossly unreasonably favor defendant.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff commenced this action on June 27, 2022. (Doc. 1). Defendant Daily Harvest, Inc. moved to compel arbitration on July 27, 2022. (Doc. 11). On August 3, 2022, the Court approved the briefing schedule on said motion. (Doc. 18).  Plaintiff amended her complaint to add a new defendant, Second Bite Foods, Inc. d/b/a "Stone Gate Foods," on August 17, 2022. (Doc. 21). Plaintiff's complaint alleges causes of action for personal injury under strict liability, breach of warranty and negligence. (Doc. 21 Am. Compl. ¶¶ 65-87). The Court is respectfully referred to the Amended Complaint and Declaration of Breeanne Buckley Peni dated September 3, 2022 for a

full recitation of the facts.  All exhibits referred to herein are attached to the Declaration of James R. Peluso, Esq. dated September 5, 2022.

## ARGUMENT

**EVEN ASSUMING PLAINTIFF ENTERED INTO THE ARBITRATION AGREEMENT, IT DOES NOT CLEARLY AND UNMISTAKABLY COVER PERSONAL INJURY CLAIMS OR DELEGATE THE ISSUE OF ARBITRABILITY AND BOTH THE ARBITRATION AGREEMENT AND DELEGATION PROVISION ARE PERMEATED BY UNCONSCIONABILTY AND CANNOT BE ENFORCED**

Initially, questions of fact exist as to whether plaintiff entered into a binding agreement. Daily Harvest relies on the affidavit of Ricky Silver (Doc. 13) which fails to produce the original webpage containing the layout and context of the hyperlinks to the alleged "Term of Use," "Terms of Sale," and "Privacy Policy" which defendant alleges plaintiff entered into. Id. ¶ 6. To the extent defendant alleges that plaintiff accepted the "agreement a second time" by means of an affirmative "check box" on the website when she placed an order (id. ¶ 8), given the lack of documentation concerning the original webpage, and questions whether a reasonable consumer would have assumed that they had previously read same terms, defendant's motion should be denied.

Notwithstanding, Daily Harvest's arbitration agreement and delegation of arbitrability does not clearly and unmistakably cover personal injury or wrongful death claims. Rather, the arbitration agreement acknowledges that it is limited scope, stating that "you will be required to arbitrate *certain disputes and claims*" (Doc. 13-1 Terms of Use ¶ 18) related to the "*subject matter of these Terms.*" Id. ¶ 18.1 (emphasis added). A plain reading of the Terms of Use and Arbitration Agreement demonstrates that the intent of the agreement is to arbitrate disputes related to commercial and intellectual property rights. For example, the arbitration agreement only delegates arbitrability to a specific type of dispute and arbitrator: "one commercial arbitrator with substantial experience in resolving intellectual property and commercial contract disputes." Id. A reasonable

consumer purchasing food over the internet from Daily Harvest would not understand the Terms of Use and Arbitration Agreement to require arbitration of claims for personal injury or wrongful death as a result of food poisoning.

The arbitration agreement and delegation of arbitrability are also unenforceable against plaintiff who is an unsophisticated consumer, and are contrary to New York State law, unconscionable, overreaching, and against public policy. For example, the Terms of Use and Arbitration Agreement require that the arbitrator abrogate plaintiff's rights under New York law and insulate the company from liability for personal injury or wrongful death damages by: (1) excluding "indirect, special, incidental, consequential, exemplary or punitive damages" (i.e., hospital charges, medical bills, lost wages, loss of earning capacity, pecuniary loss, risk of future injury and medical complications, loss of household productivity, loss of parental support and guidance, etc.) and (2) by capping any recoverable damages to the greater of $250.00 or the amount of plaintiff's food purchases within the prior 30 days. (Doc. 13-1 Terms of Use ¶ 16, Limitation of Liability; Release).

## I.    QUESTIONS OF FACT EXIST WHETHER PLAINTIFF ENTERED INTO A VALID ARBITRATION AGREEMNT

Defendant alleges that when plaintiff initially signed up for her Daily Harvest online food subscription plan, that she entered into certain "Term of Use," "Terms of Sale," and "Privacy Policy." (Doc. 13 Decl. Rick Silver ¶ 6). However, defendant fails to submit the layout of the webpage as it existed when plaintiff enrolled.  Defendant also fails to submit the "Terms of Sale" or "Privacy Policy." Apparently, the "Terms of Use" and "Terms of Sale" also somehow shared a common hyperlink. Moreover, the desktop and mobile phone screenshots provided of defendant's current website, if accurately sized, contain very small print with hyperlinks below the button a consumer would click to subscribe. Id. Defendant further alleges that plaintiff

3

"had to accept this agreement a second time" when she placed an order by means of an affirmative "check box" on the website. Id. ¶ 8. The screenshot of this check-box states that "I've read and accept the <u>terms & conditions</u>*." Id. According to Mr. Silver, clicking the "<u>terms & conditions</u>*" takes you to the "referenced document." Id. Mr. Silver does not identify the "referenced document." As discussed in Point II below, the "Terms of Use" relate to commercial and intellectual property matters and do not cover personal injury or wrongful death claims. In contrast, defendant's "Terms of Sale" dated May 6, 2022 are identified as "Standard Terms and Conditions of Sale" and appear to be relevant to persons purchasing food products.[1] These "Terms of Sale" do not contain an arbitration provision. Mr. Silver also does not explain the significance, if any, of the asterisk in the hyperlink to the "<u>terms & conditions</u>*". For example, does it refer a subscriber to other language located someplace else on the webpage.

Given the lack of documentation concerning the original agreement and webpage layout, and questions whether a reasonable consumer would have assumed that they had previously read the terms when later presented with a check-box of the "<u>terms & conditions</u>*" hyperlink, defendant's motion should be denied. *See generally Nicosia v. Amazon, Inc.*, 834 F.3d 202, 223 (2d Cir. 2016) (noting that in "clickwrap" and "browsewrap" agreements "whether there was notice of the existence of additional contract terms presented on a webpage depends heavily on whether the design and content of the webpage rendered the existence of the terms reasonable conspicuous"); *see also Starke v. SquareTrade, Inc.*, 913 F.3d 279, 283 (2d Cir 2019) (denying motion to compel arbitration and distinguishing prior cases considering reasonableness of website notices); *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 27 (2d Cir 2002) (upholding

---

[1] *See* Daily Harvest website "Terms of Sale" <u>https://www.daily-harvest.com/offers/terms-of-sale#standard-terms-and-conditions-of-sale</u>.

denial of motion to compel arbitration after discovery was conducted on whether defendant's website provided reasonable notice of contract terms); *Scotti v. Tough Mudder Inc.*, 63 Misc. 3d 843 (Sup. Ct. Kings County 2019) (denying motion to compel arbitration of personal injury claims where online agreement was ambiguous, not sufficiently conspicuous, and defendant failed to sufficiently show how its webpage appeared during the relevant time period); *Cf. Meyer v. Uber Technologies*, 686 F.3d 66 (2017) (concluding "the design of the screen and language used render the notice provided as reasonable").

## II. THE ARBITRATION AGREEMENT DOES NOT CLEARLY AND UNMISTAKABLY COVER PERSONAL INJURY CLAIMS OR DELEGATE THE ISSUE OF ARBITRABILITY

### A. Daily Harvest's Arbitration Agreement and Delegation of Arbitrability Does Not Cover Personal Injury Claims

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980) (internal quotations omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration") (internal citations and quotations omitted). Accordingly, to determine whether a claim is covered by an arbitration provision, a court must decide "whether the arbitration agreement is broad or narrow." *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 20 (2d Cir. 1995) (internal quotations and alternations omitted). "'Broad' clauses purport to refer all disputes to arbitration; 'narrow' clauses limit arbitration to specific types of disputes." *Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100, 2004 U.S. Dist. LEXIS 9092 (S.D.N.Y. May 19, 2004) (quoting *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988)). "Specific words or phrases alone may not be determinative although words of

limitation would indicate a narrower clause. The tone of the clause as a whole must be considered." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F2d 59, 64 (2d Cir 1983].

Likewise, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). There is no presumption of arbitrability (*see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010)) and unless the party seeking arbitration "point[s] to a clear and unmistakable expression of the parties' intent to submit arbitrability disputes to arbitration," the court must decide the issue of arbitrability. *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014); *see also MacClelland v. Cello Partnership*, Case No. 21-cv-08592, 2022 WL 2390997 at *4 (N.D. Cal. July 1, 2022) (rejecting defendant's argument that court could not decide issue of arbitrability where alleged unenforceable provisions were located outside the arbitration clause where such provisions were functionally intertwined with the arbitration clause and affected the scope of the arbitration).

Here, the arbitration clause expressly states that it is limited to "*certain disputes and claims with Daily Harvest . . . .*" (Terms of Use ¶ 18) related to the "*subject matter of these Terms.*" (Id. ¶ 18.1) (emphasis added).  The arbitration agreement's venue and choice of law provision also acknowledges that arbitration is limited and that "in any circumstances where the foregoing arbitration agreement permits either you or Daily Harvest to litigate any dispute arising out of or relating to the subject matter of these Terms in court, then the foregoing arbitration agreement will not apply …" (Id. at ¶ 18.1).

Accordingly, "[w]hen dealing with a narrower arbitration clause, a court's inquiry is not so circumscribed, and it will be proper to consider whether the conduct in issue is on its face within

the purview of the clause." *McAllister Bros.*, 621 F.2d at 522 (internal quotations omitted).  The

same rule applies to the delegation of arbitrability clause:

> Where, by contrast, the arbitration agreement is narrower, vague, or
> contains exclusionary language suggesting that the parties
> consented to arbitrate only a limited subset of disputes,
> incorporation of rules that empower an arbitrator to decide issues of
> arbitrability, standing alone, does not suffice to establish the
> requisite clear and unmistakable inference of intent to arbitrate
> arbitrability.

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 319 (2d Cir 2021). Similarly, "[i]t is a

longstanding principle of New York law that a construction of a contract that would give one party

an unfair and unreasonable advantage over the other, or that would place one party at the mercy of

the other, should, if at all possible, be avoided." *ERC 16W Ltd. Partnership v. Xanadu Mezz

Holdings LLC*, 95 A.D.3d 498, 503 (1st Dep't 2012).  "In cases of doubt or ambiguity, a contract

must be construed most strongly against the party who prepared it, and favorably to a party who

had no voice in the selection of its language." *Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (1985).

Here, a plain reading of Daily Harvest's Terms of Use and Arbitration Agreement

evidences no provision related to personal injury or wrongful death claims. *See e.g., Sammarco v.

Pepsi-Cola Bottling Co. of N.Y., Inc.*, 1 A.D.3d 341 (2d Dep't 2003) (holding arbitration agreement

between distributor and supplier which covered "commercial aspects of the parties' relationship"

did not cover personal injury claims).  As held in *Sammarco*, there is no reasonable relationship

between plaintiff's personal injury claims and the subject matter of the arbitration agreement. *See*

1 A.D.3d at 342. "Indeed, such claims could not concern the interpretation of the Agreement's

provisions since the Agreement contains no provision relating to personal injury." *Id.*; *see also

Miner v. Walden*, 101 Misc. 2d 814, 819 (Sup. Ct. 1979) ("No mention of medical malpractice is

contained in the instant arbitration agreement."); *cf. Coffey v. Kellogg Brown & Root*, CIVA 1:08-

cv-2911, 2009 WL 2515649, at *13 (N.D. Ga Aug. 13, 2009) (enforcing arbitration of employee personal injury claim against employer where employment arbitration agreement expressly included claims for "[a]ny personal injury or death" arising out of employee' oversees recovery of disabled vehicles, including tanks, personnel carriers, jeeps, cars and trucks in Iraq).

Moreover, the Daily Harvest arbitration agreement only delegates arbitrability to a specific type of disputes and arbitrator, to wit: "one commercial arbitrator with substantial experience in resolving intellectual property and commercial contract disputes." (Doc. 13-1 Terms of Use ¶ 18.1). This delegation clause evidences the intent to limit arbitration to specific, non-personal injury related disputes. As held by the Second Circuit in M*cDonnell*, "we find it significant that the parties agreed to refer their disputes to a tax counsel rather than to an arbitrator of more general expertise. The specific and limited intent indicated by that choice is evident throughout the rest of the clause." 858 F.2d at 832.

The Daily Harvest arbitration agreement and delegation of arbitrability also specify the "JAMS Streamline Arbitration Rules and Procedures" which do not make any reference to personal injury claims and are not intended to cover claims alleging damages in excess of $250,000.00. (Decl. Peluso, Ex. A JAMS Streamlined Rules, ¶ Rule 1).[2] The agreement further states that either party may seek "injunctive relief or other equitable relief at any time, from any court of competent jurisdiction, to prevent the actual or threatened infringement, misappropriation or violation of a party's copyright, trademark, trade secrets, patents, or other intellectual property rights." (Doc. 13-1 Terms of Use ¶ 18.3). This provision evidences the subject matter of the arbitration agreement to be limited to commercial and intellectual property right disputes.

---

[2] The JAMS Comprehensive Arbitration Rule and Produces apply to claims in excess of $250,000. *See* https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-1.

The foremost substantive provision of the Terms of Use, entitled "Community Guidelines" (Id. ¶ 3), discusses the Daily Harvest community which "like any community, functions best when its people follow a few simple rules. By accessing and/or using the Services, you hereby agree to comply with these community rules…." (Doc. 13-1, Terms of Use ¶ 3). The rules then talk about a prohibition of using the Services to promote "commercial activities" or the electronic uploading, posting, or emailing of "User Content" that violates specific community rules. (Id.). The other principal terms in the agreement concern "4.5 Mobile Application"; "5. Terms of Product Sale and Use"; "6. License to Access and Use Our Services and Content'" "6.1 Repeat Infringer Policy; Copyright Complaints"; "7. Trademarks" and other terms governing user and third-party content. (Id. at ¶¶ 8-12). In short, the agreement covers conduct directed at commercial and intellectual property related matters.

Plainly, Daily Harvest's arbitration agreement does not establish a clear, explicit, and unequivocal agreement when it comes to the resolution of personal injury or wrongful death claims. *See Bowmer v. Bowmer*, 50 NY2d 288, 293-294 (1980) ("[A]s with [arbitration] provisions in the commercial context generally, the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration."). Rather, defendant's motion to compel arbitration improperly relies on "implication [and] subtlety" in its attempt to bind plaintiff's claims to arbitration. *Waldron v. Goddess,* 61 N.Y.2d 181, 183–84 (1984) (holding that the agreement to arbitrate "must be clear, explicit and unequivocal and must not depend upon implication or subtlety.").

Alternatively, should the court find that the arbitration agreement is broad, plaintiff submits that is does not cover personal injury claims. *See e.g., Armor All/STP Products Co. v. TSI Products,*

*Inc.*, 337 F. Supp. 3d 156, 164 (D. Conn 2018) (holding unfair competition, false advertising, false patent marking, trademark, copyright and unjust enrichment claims fell outside the scope of "broad" arbitration agreement).  Notably, Daily Harvest's terms limit its liability to the greater of $250.00 or the amount of plaintiff's food purchases within the prior 30 days. (Doc. 13-1 Terms of Use ¶ 16 "Limitation of Liability; Release"). The agreement also excludes any "indirect, special, incidental, consequential, exemplary or punitive damages." Id.  As a result, by its own terms, the agreement excludes any claim for personal injuries or wrongful death. Otherwise, as discussed in Point III below, the agreement violates New York law, is unconscionable and against public policy.

## B. The Delegation of Arbitrability by Incorporation of The JAMS Rules is Not Enforceable Because Plaintiff is an Unsophisticated Party

Daily Harvest's delegation of arbitrability by reference to the JAMS rules should not be enforced against plaintiff who is an unsophisticated consumer. *See MacClelland*, 2022 WL 2390997, at *3-5 (holding cell phone company's incorporation by reference of delegation of arbitrability is not enforceable against an unsophisticated consumer). Defendant's reliance on *Emilio v. Sprint Spectrum L.P.*, 508 Fed. Appx. 3, 5 (2d Cir 2013) is distinguishable. In *Emilio*, the issue of whether plaintiff was an unsophisticated party was not raised. To the contrary, the plaintiff sought to compel arbitration and enforcement of the delegation provision. *Id*. at. 2.

As held in *MacClelland*:

> Where at least one party is unsophisticated, courts in this district and elsewhere have routinely found that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability.
> . . . .
> The AAA Rules are not quoted or appended to the Agreement. Common customers of Verizon, including Plaintiffs, should not be expected to understand that the incorporation by reference of the AAA rules—without spelling out the actual provision—would mean that the validity and enforceability of the arbitration provision would

be resolved by an arbitrator rather than a court, a result contrary to
common expectation.

2022 WL 2390997, at * 3 (citations omitted). [3]

As recognized by the Supreme Court, the question of "'who (primarily) should decide arbitrability question'—is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 945 (1995) (holding plaintiff shareholders "did not clearly agree to submit question of arbitrability to arbitration" as to whether plaintiffs were personally liable for debts of corporation) (internal citations omitted).

For the same reason here, a reasonable consumer would not have understood that it was agreeing to allow a commercial and intellectual property rights arbitrator decide the scope of its own power to decide any legal claims, rights, liability, and damages for personal injury. As cautioned by the Supreme Court, "[t]he right of access to courts is of such importance that courts will retain authority over the question of arbitrability of the particular dispute unless 'the parties clearly and unmistakably provide[d]' that the question should go to arbitrators." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

---

[3] The undersigned are unaware of any Second Circuit case where the issue of an unsophisticated party was raised in defense to enforcement of a delegation of arbitrability clause. Rather, the majority of reported cases concern sophisticated commercial parties.

### C. The Delegation of Arbitrability is Ambiguous Because Class Action Claims Can Be Litigated in a Court of Law

Daily Harvest's delegation of arbitrability is ambiguous because the arbitration agreement permits litigation in a court of law if the arbitration agreement's class action waiver is deemed invalid or unenforceable. (Doc. 13-1 Terms of Use ¶ 18.5); *see e.g., Vargas v. Delivery Outsourcing, LLC*, 15-CV-03408-JST, 2016 WL 946112, at *7 (N.D. Cal Mar. 14, 2016) (holding delegation provision was "made ambiguous by the language of the arbitration provision that permits modification of the [agreement] should a 'court of law or equity' hold any provision of the Agreement unenforceable"). These contradictory provisions render the delegation of arbitrability ambiguous. "This is so because "[a]s a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the court might also find provisions in the contract unenforceable, there is not clear and unmistakable delegation of authority to the arbitrator." *Id*. (citations omitted). This ambiguity is compounded here where the Daily Harvest delegation provision is not even contained within the arbitration agreement but rather incorporates by reference the JAMS rules.

### III. THE ARBITRATION AGREEMENT AND DELEGATION OF ARBITRABILITY CANNOT BE ENFORCED BECAUSE THEY ARE PERMEATED BY UNCONSCIONABILTY, OVERREACHING AND VIOLATE PUBLIC POLICY

"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Under New York law, defenses to contract enforcement include fraud, unconscionability, duress, overreaching conduct and

violation of public policy. *See Matter of Teleserve Sys., Inc. (MCI Telecom. Corp.)*, 230 A.D.2d 585, 592 (4th Dep't 1997).

With respect to unconscionability, New York courts generally require a showing of procedural and substantive unconscionability. The New York Court of Appeals has noted that unconscionability is "a flexible doctrine with roots in equity." *State v. Avco Fin. Serv. of New York Inc.*, 50 N.Y.2d 383, 389 (1980) (upholding action by Attorney General seeking to enjoin as unconscionable a creditor's use of security clause in a consumer loan agreement form). Procedural unconscionability refers to unfairness and lack of meaningful choice in the formation of the contract and considers a number of factors, including: (1) size and commercial setting of the transaction; (2) relative sophistication of the parties; (3) disparity in bargaining power; (4) whether there existed a lack meaningful choice; (5) fine print, hidden terms, or unduly complex contract terms; and (6) the particular setting of the contract processes. *See generally*, *Haft v. Haier US Appliance Sols.*, Inc., 578 F. Supp. 3d 436, 452 (S.D.N.Y. 2022) (internal quotations and citations omitted). "Substantive unconscionability requires an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id*. (internal quotations and citations omitted). "Examples of unreasonably favorable contractual provisions are virtually limitless but include inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty." *State v. Wolowitz*, 96 A.D.2d 47, 66-68 (2d Dep't 1983). "The two elements operate together on a sliding scale, so that the more substantively imbalanced the contract is the less procedural imbalance is required and vice versa." *Id*.  "In other words, 'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required.'" *Haft*, 578 F. Supp.3d at 452 (quoting *Harbison v. Louisiana-Pac. Corp.*, 602 Fed Appx

884, 886 (3d Cir. 2015).

**A. The Daily Harvest Terms of Use and Arbitration Agreement is Procedurally Unconscionable Because It is a Contract of Adhesion**

"Contracts of adhesion ... are generally considered to satisfy the procedural unconscionability requirement." *Harbison v. Louisiana-Pac. Corp.*, 602 Fed. Appx. 884, 886 (3d Cir. 2015); *see also MacClelland*, 2022 WL 2390997, at \*5 ("The arbitration agreement is minimally procedurally unconscionable if it is a contract of adhesion."). Under New York law, "[a] contract of adhesion contains terms that are unfair and nonnegotiable and arises from a disparity of bargaining power or oppressive tactics." *David v. #£1 Mktg. Serv., Inc.*, 113 A.D.3d 810, 812 (2d Dep't 2014). "Unfairness can be construed if the terms of the contract are not within the reasonable expectations of the party, or because its terms are unduly oppressive, unconscionable, or contrary to public policy." *Gelbman v. Valleycrest Prod., Ltd.*, 189 Misc. 2d 403, 407, 732 NYS2d 528, 532-33 (Sup. Ct. New York County 2001) (*citing Aviall, Inc. v. Ryder System, Inc.*, 913 F. Supp. 826, 831 (S.D.N.Y. 1996). Adhesion contracts are often standardized contracts, drafted by a party with superior bargaining power, and presented on a take or leave it basis.  Here, defendant Daily Harvest drafted the agreement and admits that every subscriber must agree to its Terms of Use in order to sign up for an account and/or to place a food order. *See* Doc. 13-1 Decl. Ricky Silver ¶¶ 6-9 ("Neither Daily Harvest's website nor its app would have allowed Ms. Peni to click the "Place Order" button or to place an order unless she placed a checkmark int the check-box expressing her assent to the contract."). The Terms of Use further state **"[i]f you do not agree to these Terms, you may not access or use the Services or order, receive, or use Products made available through the Services or otherwise from us**." (Doc. 13-1 at EFC p. 2) (emphasis in original). As such, the agreement is one of adhesion.

**B. Multiple Terms of the Arbitration Agreement and Delegation of Arbitrability are Unconscionable, Constitute Overreaching, and Violate Public Policy**

The New York Court of Appeals has held that "[t]here is no general test for measuring the reasonableness of a transaction but we have recently provided this guidance: '[a]n unconscionable contract [is] one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms."'" *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 138 (1989). Moreover, defendant "may not impose a system of arbitration on an [a plaintiff] that seeks to maximize the advantages and minimize the disadvantages of arbitration for itself at the [plaintiff's] expense." *Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 120 (2000).

1. The Agreement Lacks Adequate Consideration and Mutuality to Arbitrate Personal Injury Claims

After plaintiff paid for her order, there was no claim that Daily Harvest could assert against her. She had fully performed the bargained-for agreement. Yet, defendant now asserts that the $9.79 she paid for the French Lentil & Leek Crumbles (Decl. Breeanne Buckley Peni ¶ 5) provides sufficient consideration to compel arbitration of her personal injury claim and limit her legal rights and recoverable damages pursuant to the company's Terms of Use. Courts in New York have refused to enforce such agreements as "unconscionable and unilateral." *Miner v. Walden*, 101 Misc. 2d 814, 819 (Sup. Ct. 1979) (denying motion to compel arbitration of medical malpractice claim where arbitration provision resulted in a contract more favorable and for the sole benefit of defendant). Here, as in *Miner*, there is no mention of personal injury claims in the arbitration agreement and once plaintiff paid for her food (which was automatically charged to her credit card), Daily Harvest had no claim against her. *Id.* The decision in *Miner* was cited by the New

York Court of Appeals in *Sablosky* which characterized the holding as "expressly finding clause unconscionable and against public policy." 73 N.Y.2d at 138.

2. <u>The Limitation on Personal Injury Liability and Damages is Illegal Under New York Law as Unconscionable and Against Public Policy</u>

Defendant's Arbitration Agreement and delegation of arbitrability are improperly designed to avoid application of substantive New York law. *See Gingras v. Think Finance, Inc*. 922 F.3d 112 (2d Cir. 2019) (First, we conclude that the arbitration agreements are unenforceable because they are designed to avoid federal and state consumer protection laws."). Here, Daily Harvest's "arbitration mechanism in these agreements purports to offer neutral dispute resolution but appears to disallow claims brought under federal and state law." *Id*. at 127. Specifically, the Arbitration Agreement "limits the manner in which you can seek relief from Daily Harvest" (Doc. 13-1 Terms of Use ¶ 18) and requires that the arbitrator abrogate plaintiff's rights under New York law and insulate the company from liability for personal injury or wrongful death damages by: (1) excluding "indirect, special, incidental, consequential, exemplary or punitive damages" (i.e., hospital charges, medical bills, lost wages, loss of earning capacity, pecuniary loss, risk of future injury and medical complications, loss of household productivity, loss of parental support and guidance, etc.); (2) by capping any recoverable damages to the greater of $250.00 or the amount of plaintiff's food purchases within the prior 30 days. (Id. ¶ 16, Limitation of Liability; Release) and (3) disclaiming express or implied warranties, including implied warranties of merchantability or fitness for a particular purpose. (Id. ¶ 15). These terms are grossly unreasonable favorable to Daily Harvest and effectively foreclose any personal injury claim or damages for food poisoning.[4]

---

[4] Although this limitation provision is "located outside the arbitration clause, it is intertwined with and enforced via arbitration." *MacClelland*, 2022 WL 2390997, at *8.

16

New York courts have refused to enforce as unconscionable and against public policy agreements that unreasonably favor a defendant by imposing "unfair limitations on consequential damages and improper disclaimers of warranty" (*State v. Wolowitz*, 96 A.D.2d 47, 66-68 (2d Dep't 1983), and such limitations and disclaimers are illegal to avoid liability or damages in personal injury claims. *See Sarfati v. M. A. Hittner & Sons, Inc.*, 35 A.D.2d 1004, 1005 (2d Dep't 1970), *aff'd*, 30 NY2d 613, 615 (1972) (holding automobile manufacturer's disclaimer of warranties, including implied warranties of merchantability and fitness for particular purpose, was unconscionable and against public policy in personal injury action); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 384 (S.D.N.Y. 2002) (holding arbitration agreement was unconscionable where "[b]y signing the [agreement], the Bally employees lost their right to pursue certain damages remedies against Bally, agreed to a cap on certain damage awards and accepted a shorter limitations period for bringing claims"); *see also* N.Y.U.C.C. § 2–719 ("Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.")

### 3.   The Punitive Damages Waiver and Release is Unconscionable

Daily Harvest's limitation of liability and release is also unconscionable because it prohibits punitive damages. (Doc. 13-1 Terms of Use ¶ 16). For the same reasons discussed above, any waiver or release of plaintiff's damages for personal injury, including punitive damages, is not enforceable. While the present complaint does not allege punitive damages, plaintiff has not been afforded discovery to determine whether defendants' conduct warrants such relief. For example, it is unknown when Daily Harvest first knew or should have known that its food products were causing serious bodily illness. Defendant acknowledges receiving 470 complaints of illness through June 23, 2022 which is the date that it issued a public recall of the French Lentil + Leek

17

Crumbles. (Doc. 21 Am. Compl. ¶ 32). Upon information and belief, hundreds of persons reported illness to defendant prior to said date and it was only after the FDA became involved that a recall was issued.  If Daily Harvest intentionally, recklessly, or with deliberate disregard of the rights of plaintiff and others failed to disclose the outbreak in a timely manner, resulting in customers suffering personal injury, then punitive damages may be warranted. Accordingly, to enforce the arbitration agreement and delegation of arbitrability to the arbitrator on the issue of punitive damages in a person injury action would deny a substantive legal remedy in court under New York law. Similarly, the agreement is unconscionable because it prohibits any statutory remedy that allows for punitive damages or attorney's fees, such as claims under New York General Business Law §§ 349, 350.[5] *See e.g., MacClelland*, 2022 WL 2390997, at *8 (holding arbitration agreement was substantive unconscionability because it limited the types of remedies available under statute, thus violating the "'principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees'"). As such, defendant's agreement is unconscionable and against public policy.

### 4.   The Batch Arbitration Provision is Unconscionable

Daily Harvest's arbitration agreement contains the following unconscionable "batch arbitration" provision:

> Batch Arbitrations. To increase efficiency of resolution, in the event 100 or more similar arbitration demands against Daily Harvest, presented by or with the assistance of the same law firm or organization, are submitted to an arbitration provider selected in accordance with the rules described above within a 30-day period, the arbitration provider shall (i) group the arbitration demands into batches of no more than 100 demands per batch (plus, to the extent there are less than 100 arbitration demands left over after the batch described above, a final batch consisting of the remaining demands);

---

[5] *See Bueno v LR Credit 18, LLC*, 269 F. Supp. 3d 16, 23 (E.D.N.Y. 2017) (analyzing New York law and holding that punitive damages are recoverable under N.Y.G.B.L. § 349).

> and (ii) provide for resolution of each batch as a single arbitration with one set of filing and administrative fees and one arbitrator assigned per batch. You agree to cooperate in good faith with Daily Harvest and the arbitration provider to implement such a batch approach to resolution and fees.

(Doc. 13-1 ¶ 18.6). This "batch arbitration" provision unreasonably favors defendant by forcing plaintiff into a system of arbitration that "maximize[s] the advantages and minimizes the disadvantages of arbitration for itself at the [plaintiff's] expense. *Armendariz*, 24 Cal. 4th at 120.

First, the batch arbitration lacks mutuality, is unduly oppressive, and is unfairly one-sided. On the one hand, Daily Harvest's arbitration provision purports to waive plaintiff's ability to arbitrate or litigate claims on a class basis, yet in the same breath unreasonably favors defendant with a "batch arbitration" mechanism that effectively eliminates the individual arbitration of claims where numerous plaintiffs share the same counsel.

Second, the batch arbitration provision forces an unfair choice on plaintiffs who are represented by the same counsel. Such plaintiffs will either have to choose to give up their choice of counsel or be forced into the "batch" mechanism. In contrast, defendant is free to have the same laws firm represent Daily Harvest in every case, whether an individual or batch claim.  Defendant is effectively injecting a conflict of interest into the attorney-client relationship.

Third, should the arbitrator deny class arbitration in favor of batch arbitration, and proceed with 100 hundred plaintiffs per batch rather than a few class representatives, the resolution of the batch claims will be delayed, increase in cost, and waste resources otherwise available to compensate the class. For example, defendant may demand that each plaintiff produce discovery, medical records, submit to an independent medical examination, submit to deposition, etc. Such a mechanism will unquestionably delay the resolution of the batch claim in arbitration because all 100 of the batch plaintiffs must wait until every plaintiff's case is ready for adjudication before the

single arbitrator. In contrast, class claims can be efficiently litigated without the need for duplicative discovery, testimony, and effort.

In *MacClelland*, the court refused to enforce a similar "mass arbitration" provision as substantively unconscionable because it lacked mutuality, resulted in the forfeiture of legal rights that contravened public policy, had a chilling effect on nonparties who had yet to file claims, and lacked a timely, efficient and cost-effective mechanism to resolve the claims. 2022 WL 2390997, at *8. Moreover, here, the JAMS Streamline Rules are not designed for "batch arbitrations," let alone resolution of personal injury or wrongful death claims. Defendant essentially proposes that each arbitrator create ad hoc rules and adjudicate the parties' rights as the batch arbitrations proceed in stark contrast to the rights, procedures and safeguards afforded by FRCP Rule 23 and decades of court precedent.

Lastly, Daily Harvest seeks batch arbitration to avoid the cost of paying the filing fees associated with hundreds or thousands of individual claims in this case and potentially others. Defendant, however, should not be permitted to pervert the arbitration process to its sole advantage, especially through a contract of adhesion that lacks mutuality and fairness.

5.  <u>The Arbitration Agreement Imposes Unreasonable and Unfair Costs to Arbitrate
    Personal Injury Claims in Excess of $75,000</u>

Daily Harvest's Arbitration Agreement also imposes unreasonable and unfair costs to file personal injury claims in excess of $75,000. While defendant's arbitration provision requires that it pay "all arbitration fees for claims less than seventy-five thousand ($75,000) dollars," it unfairly burdens plaintiff with the cost of arbitration because her claim exceeds said amount. It is a bedrock principle of our jurisprudence that personal injury plaintiffs have access to the courts to vindicate their rights. Most personal injury claims are filed by attorneys who work on a contingency fee basis because clients cannot afford the expense of litigation. The cost to file suit is also relatively

modest whether in state or federal court. In contrast, under defendant's Arbitration Agreement, plaintiff must pay and deposit in advance the costs and fees of the arbitration. (Decl. Peluso, Ex. A, JAMS Rule 26). Upon information and belief, under the JAMS rules, the filing fees alone can be $3,000, and then plaintiff must pay the arbitrator's professional fees (generally $400 to $1,200 per hour)[6] as well as a 13% case management fee.[7] These costs unilaterally imposed by defendant have a chilling effect and may effectively foreclose the rights of victims of serious personal injury to retain competent counsel and have their claims adjudicated against Daily Harvest.  At the very least, such fees and costs will reduce the plaintiff's recovery and may very well eclipse any award. Moreover, with respect to any "batch arbitration," while there may be a single filing fee, the plaintiffs would still be required to pay the fees of the arbitrator. Accordingly, the fee structure provisions of defendant's arbitration agreement render the agreement unconscionable. *See e.g., Matter of Teleserve Sys., Inc. (MCI Telecom. Corp.)*, 230 A.D.2d 585 (4th Dep't 1997) (holding arbitration fee was unreasonable, unjust, and unconscionable on its face, and could not be enforced).

Lastly, the fee provisions of the Arbitration Agreement evidences that the intent of the agreement is to apply to commercial claims.

### C. The Arbitration Provisions Are Permeated by Unconscionability and Cannot Be Severed

It is anticipated that defendant may seek to sever the unconscionable provisions of its Terms of Use and Arbitration Agreement. The agreement, however, does not contain a severability

---

[6] See Davidson & Rushton, "Overview: JAMS," JAMS (October 13, 2020) ("JAMS arbitrators set their own hourly or daily rate. Fees range from US$400–US$1,200 per hour depending on the arbitrator selected.") available at: https://globalarbitrationreview.com/review/the-arbitration-review-of-the-americas/2021/article/ overview-jams.

[7] *See* JAMS website at https://www.jamsadr.com/arbitration-fees.

clause to save the arbitration provisions. Rather, the severability clause states that if the class action waiver clause is deemed unenforceable, then the arbitration agreement will be null and void. (Doc. 13-1 Terms of Use ¶ 18.8 Severability).  Defendant's motion, however, does not seek to dismiss plaintiff's class action claims, and therefore the enforceability of said waiver provision is not currently at issue—including whether the waiver provision lacks mutual assent and is ambiguous because it directly conflicts with the batch arbitration provision. Notably, the purported class action waiver states that "[c]laims of more than one customer or user cannot be arbitrated or litigated jointly or consolidated with those of any other customer or user" (Doc. 13-1 ¶ 18.5, Waiver of Class Action or Consolidated Action). This of course directly conflicts with the batch arbitration provision requiring the consolidation of claims into a single arbitration.

Notwithstanding, Daily Harvest's arbitration provisions are permeated by unconscionability and cannot be severed. An arbitration agreement is permeated by unconscionability when it contains multiple unconscionable provisions that cannot be enforced. *See e.g., Gingras v. Think Fin., Inc.*, 922 F3d 112, 128 (2d Cir 2019) ("We find no basis therefore to sever any particular provision of the arbitration agreement because, given the pervasive, unconscionable effects of the arbitration agreement interwoven within it, nothing meaningful would be left to enforce."); *see also MacClelland v. Cello Partnership*, Case No. 21-cv-08592, 2022 WL 2390997, at *8 (N.D. Cal. July 1, 2022) ("existence of the severability clauses does not change the fact that where an agreement is permeated by unconscionability, a court will not sever the unlawful provisions.").

## IV.   ANY MOTION TO STAY SHOULD BE LIMITED TO DAILY HARVEST

Subsequent to the filing of defendant Daily Harvest's motion to compel arbitration and stay this action, plaintiff amended her complaint to add defendant Second Bite Foods, Inc. d/b/a

"Stone Gate Foods." (Doc. 21). Defendant has not renewed or supplemented its motion to seek a stay of any proceedings against Stone Gate Foods. As no arbitration agreement exists between plaintiff and Stone Gate Foods, defendant's Daily Harvest's motion should be limited to Daily Harvest. *See generally, Sierra Rutile Ltd. v. Katz*, 937 F2d 743, 750 (2d Cir. 1991). Alternatively, plaintiff should be given an opportunity to brief said issue.

## <u>CONCLUSION</u>

Wherefore, the Court should deny defendant Daily Harvest's motion to compel arbitration and stay all proceedings in its entirety.

Dated: September 5, 2022

Respectfully,

*/s/ James R. Peluso*

_____
James R. Peluso (Bar Roll # JP2875)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, NY 12210
Telephone: (518) 463-7784
jpeluso@dblawny.com

*/s/ Joseph E. O'Connor*

_____
Joseph E. O'Connor (Bar Roll # JO5185)
O'Connor & Partners, PLLC
255 Wall Street, Kingston, NY 12401
Telephone: (845) 303-8777
joconnor@onplaw.com

*Counsel for Plaintiff and the Proposed Class*