Vinesign Document ID: 33FAAFA2-C0A3-44F2-BB04-855A304599EC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

Breeanne Buckley Peni, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

DAILY HARVEST, INC. and SECOND BITE FOODS, INC., d/b/a "STONE GATE FOODS",

Defendants.

Civil Action No. 22-cv-05443

| | |
|---|---|
| Exhibit A | Amended Class Action Complaint |
| Exhibit B | Proposed Preliminary Approval Order |
| Exhibit C | Settlement Notice |
| Exhibit D | Proposed Final Approval Order |
| Exhibit E | Proof of Claim Form |
| Exhibit F | Allocation Matrix |

# CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Agreement" or "Settlement") is made and entered into by and among the following parties, as hereinafter defined: (1) Plaintiff Breeanne Buckley Peni (collectively "Plaintiff" or "Named Plaintiff"), on behalf of herself and the Settlement Class Members, and (2) Defendant Daily Harvest, Inc., and (3) Defendant Second Bite Foods, Inc., d/b/a "Stone Gate Foods" (the "Settling Defendants" and together with Plaintiff, the "Settling Parties" or "Parties"). Subject to the Court's approval, the Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in the Agreement and upon the occurrence of the Effective Date, this class action lawsuit shall be settled, compromised, and dismissed upon the terms and conditions contained herein.



The signed document can be validated at https://app.vinesign.com/Verify

## RECITALS, EXHIBITS, AND DEFINITIONS INCORPORATED

The following Recitals and Definitions, as well as all Exhibits attached to this document, are hereby expressly incorporated by reference as part of this Settlement Agreement. Terms used in this Agreement are defined below or indicated in parentheses elsewhere in this Agreement.

## RECITALS

A. On June 27, 2022, plaintiff Breeanne Buckley Peni filed a Class Action Complaint alleging Strict Liability, Breach of Warranty, and Negligence against Daily Harvest, Inc., in the Southern District of New York in a case styled *Breeanne Buckley Peni, individually and on behalf of all others similarly situated, v. Daily Harvest, Inc.*, Case No. 1:22-cv-05443.

B. Around this same time, a number of related actions were filed against the Settling Defendants, as well as (in some cases) Smirk's Ltd. ("Smirk's") and Molinos Asociados SAC ("Molinos"), which are not parties to this Agreement (Smirk's and Molinos will be referred to herein as the "Non-Settling Defendants"). Those filed in federal court were transferred to the District Court for the Southern District of New York and assigned to the Honorable Denise L. Cote. Those filed in New York State Supreme Court have been consolidated for discovery purposes and remain in that Court; and since that time, they have been following the directives of the Hon. Denise L. Cote of the Southern District of New York in these proceedings.

C. These lawsuits and claims (collectively, the "Daily Harvest Litigation" or "Litigation") all seek to recover damages in connection with personal injuries allegedly caused by the consumption of French Lentil + Leek Crumbles

("Crumbles") manufactured by Stone Gate Foods and distributed and sold by Daily Harvest.

D. On April 28, 2023, the District Court for the Southern District of New York entered a Coordination Order for all Related Actions in the Daily Harvest Litigation.

E. The Parties engaged in substantial written discovery, including e-discovery production of thousands of pages of company documents by the Settling Defendants in response to Plaintiff's discovery requests and depositions of Daily Harvest employees. Plaintiffs and claimants involved in the Litigation, in turn, produced medical records, fact sheets and other documents related to their claims against the Settling Defendants.

F. On November 13, 2023, the Settling Parties participated in a full-day, in-person settlement conference with the Honorable Sarah L. Cave, United States Magistrate Judge. At the conclusion of the hard-fought settlement conference, the Settling Parties agreed in principle to settle the claims against Daily Harvest and Stone Gate Foods, subject to the negotiation of this Agreement and Court approval. Weeks of subsequent negotiations, including with Magistrate Judge Cave, resulted in a term sheet setting forth the key terms now incorporated in this superseding Agreement.

G. To avoid the costs, disruption, and distraction of further Litigation, the Settling Parties have concluded that it is desirable that the Litigation between the Settling Parties be settled and dismissed on the terms recommended by Magistrate Judge Cave and now reflected in this Agreement, while preserving Plaintiff's and Class Members' Remaining Claims and Litigation against the Non-Settling Defendants.

H. Pursuant to and consistent with New York General Obligations Law §15-108 or other applicable law, the Settling Defendants are relieved from liability for contribution to Smirk's and Molinos. The Settling Parties acknowledge and agree that, under this Agreement, those Non-Settling Defendants will receive a set-off or judgment reduction consistent with New York General Obligations Law §15-108, or other applicable law. The Settling Parties also acknowledge and agree that, as part of this Agreement, the Non-Settling Defendants' crossclaims for indemnity and contribution against the Settling Defendants must be barred or dismissed, if necessary, by joint motion by the Settling Parties.

I. The Settling Parties agree that the Litigation has been prosecuted by Plaintiff and defended by the Settling Defendants in good faith and in compliance with Rule 11 of the Federal Rules of Civil Procedure, and that the Litigation involving the Settling Parties is being voluntarily settled after receiving advice of counsel and Court-assisted mediation efforts.

J. Class Counsel have conducted extensive investigation relating to the claims and the underlying events and transactions alleged in the Litigation. Class Counsel have analyzed the evidence adduced through the extensive discovery conducted by the Setting Parties during the course of this Litigation and has researched the applicable law with respect to the claims of Plaintiff and the Settlement Class Members against the Settling Defendants and the potential defenses thereto, allowing Class Counsel to verify the reasonableness and adequacy of the Settlement.

K. Based upon their investigation as set forth above, and considering the risks and costs of further litigation between the Settling Parties, Plaintiff and Class Counsel

have concluded that the terms and conditions of this Settlement, as embodied herein, are fair, reasonable, adequate and equitable to Plaintiff and the Settlement Class Members, and in their best interests, and that a settlement of the Litigation and the prompt provision of effective relief to the Settlement Class are in the best interests of the Settlement Class Members after considering: (1) the monetary benefit the Settlement Class Members will receive from the Settlement; (2) the attendant risk of litigation against the Settling Defendants; and (3) the desirability of permitting the proposed settlement to be consummated as provided by the terms of this Agreement.

L. Plaintiff asserts her firm belief that she would prevail in the Litigation and maintains that there is no merit to the Settling Defendants' Defenses or Claims of no fault. Additionally, Plaintiff specifically identifies the tara flour used in Daily Harvest's Crumbles, manufactured by Stone Gate Foods, as the cause of her injuries and damages and those of all Class Members. Nonetheless, Plaintiff considers it desirable to resolve the Class Action and Litigation on the terms stated herein, to avoid further expense and delay of payments to Class Members in need.

M. The Settling Defendants dispute and deny liability and contend that they would prevail in the Litigation. By entering into this Agreement, the Settling Defendants are not admitting to any intentional or negligent action or to any wrongdoing or liability whatsoever. The Settling Defendants, while continuing to deny all allegations of wrongdoing and disclaiming liability with respect to the Litigation, consider it desirable to resolve the Class Action and Litigation on the terms stated herein, in order to avoid further expense, inconvenience, and interference with

ongoing business operations, and to dispose of burdensome Litigation with the Plaintiff and Settlement Class. It is acknowledged that the amount paid in settlement is less than the total claim of Class Members.

N. The Settling Defendants have also made separate claims against each other and have litigated those claims in a separate declaratory judgment action in Minnesota, case number 23-cv-00569-ECT-DJF ("the Minnesota Proceeding"). As a condition of this Settlement, the Settling Defendants intend to release each other and dismiss their claims against each other with prejudice.

O. Notwithstanding the above, the Settling Defendants acknowledge that to the extent Plaintiff's damages were caused by consumption of the Crumbles, those damages were caused fully and exclusively by the tara flour supplied by the Non-Settling Defendants Smirk's and Molinos and, therefore, under common-law principles of indemnity and contribution Non-Settling Defendants Smirk's and Molinos are obligated to indemnify the Settling Defendants and make them whole, which includes monies paid by the Settling Defendants pursuant to this Agreement and to defend the Litigation. Nothing in this Agreement should be deemed to dismiss, discharge or in any way prejudice the Settling Defendants' rights to seek damages and contractual indemnity from the Non-Settling Defendants for commercial damages caused to the Settling Defendants as a result of the Non-Settling Defendants breach of contract, nor prejudice the rights of Plaintiffs as the assignees and recipients of certain of the Settling Defendants' rights to seek common law indemnity and contribution against the Non-Settling Defendants for amounts paid to resolve Class Members' claims arising from personal injury, as prescribed in this

Agreement. Moreover, this Agreement may be used in any action or proceeding by the Settling Defendants to pursue certain contractual indemnity rights against the Non-Settling Defendants and by Plaintiffs to enforce their assigned rights to common law indemnity and contribution against the Non-Settling Defendants to show that payments made by the Settling Defendants to the Plaintiffs pursuant this Agreement were precipitated by the inclusion of the tara flour provided by the Non-Settling Defendants and used in the manufacture of the Crumbles, the consumption of which allegedly injured Plaintiffs.

P. The Settling Defendants hereby consent, solely for the purposes of the Settlement set forth herein, to (1) certification of a Settlement Class under Rule of Civil Procedure 23(B)(3) of all persons in the United States (including its territories) who purchased, received, or consumed French Lentil + Leek Crumbles and suffered personal injuries allegedly caused by consumption of the Crumbles, and all persons in the United States (including its territories) who suffered consequential monetary damages arising from or related to another person's alleged personal injuries arising from consumption of the Crumbles, and (2) appointment of Plaintiff's Counsel as Class Counsel for the Settlement Class Members and Plaintiff as the Class Representative of the Settlement Class; provided, however, that if this Agreement fails to receive Court approval or otherwise fails to become effective, including, but not limited to, the judgment not becoming final as provided in Section 43 of this Agreement, then the Settling Defendants (1) will retain all claims, rights and defenses they had immediately preceding the execution of this Agreement, including the right to object to the propriety of class certification in all other

contexts and for all other purposes, (2) the parties agree that the Settlement Class must be decertified, and (3) all parties in the Litigation will revert to the positions they occupied immediately preceding the execution of this Agreement and proceed thereafter as if the Settlement Class had never been certified. The fact that the Settling Defendants conditionally consented herein to certification of the Settlement Class shall not be used against the Settling Defendants by any Party or non-party to this Agreement for any purpose in the Litigation or any other action, lawsuit, or proceeding of any kind whatsoever.

Q. This Settlement reflects a compromise between the Settling Parties, and nothing in this Agreement shall constitute or be used as evidence of liability, by or against any Settling Party, or by any non-party to this Agreement, for any purpose, except as prescribed in this Agreement. This Agreement shall in no event be construed or deemed to be a concession by Plaintiff, or any Settlement Class Member, of the truth, or lack thereof, of any allegation or the validity, or lack thereof, of any claim asserted against the Settling Defendants in the Litigation between the Settling Parties. Nor shall this Settlement be construed or deemed to be an admission or concession by the Settling Defendants with respect to the validity, or lack thereof, of any claims or defenses asserted in the Litigation or of any fault or liability or wrongdoing whatsoever.

R. Under no circumstances shall this Settlement be construed or deemed to be relevant to, admissible in, or otherwise available for use by any Party or non-party to this Agreement as evidence in the Litigation or any other claim, action, lawsuit, arbitration, or proceeding of any kind whatsoever, including, but not limited to, any

claims, suits, actions, litigation, arbitration or involving the non-Settling Defendants, namely Smirk's Ltd. and Molinos Asociados SAC, except for the fact of this Settlement, the amount of the Settlement (to evidence the amount of contribution claims of the Settling Defendants), and citation to any of the Court's orders approving the Settlement or otherwise available for citation, or upon written consent by Class Counsel and the Settling Defendants' counsel and as prescribed in paragraph P above.

S. This Agreement is contingent upon the issuance by the Court of both the proposed Preliminary Approval Order and Final Approval Order, with no material alterations from the proposed orders attached hereto as Exhibits B and D, and the Final Approval Order becoming final, as set forth in Section 40 below. Should the Court not issue the Preliminary Approval Order and Final Approval Order, or should the Final Approval Order not become final, the Settling Defendants do not waive, and instead expressly reserve, all rights to defend against claims in the Litigation and to assert claims against the Non-Settling Defendants.

T. NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel, that subject to final approval of the Court, after a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in consideration of the benefits flowing to the Parties from the Settlement set forth herein, that all Released Claims shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions.

## DEFINITIONS

As used in this Agreement and the attached Exhibits (which are an integral part of the Agreement and are incorporated in their entirety by reference), the following terms shall have the meanings set forth below, unless this Agreement specifically provides otherwise. Other capitalized terms in this Agreement but not defined in this section shall have the meanings ascribed to them elsewhere in this Agreement.

1.1 **"Action"** means the Amended Consolidated Class Action Complaint to be filed by the Plaintiff under the caption *Breeanne Buckley Peni, individually and on behalf of all others similarly situated, v. Daily Harvest, Inc. and Second Bite Foods, Inc. d/b/a "Stone Gate Foods"*, Case No. 1:22-cv-05443-DLC.

1.2 **"Administrative Expenses"** means: (a) the reasonable costs, fees, and expenses that are incurred by the Settlement Administrator in connection with providing notice to the Settlement Class and administering the Settlement, including but not limited to distributing the Net Settlement Fund to the Settlement Class Members; (b) fees and expenses incurred in connection with the Fund; (c) taxes; (d) expenses related to the Settlement Administrator's evaluation of claims; and (e) costs associated with the Settlement Administrator resolving medical liens.

1.3 **"Agreement"** means this Class Action Settlement Agreement, containing all terms, conditions, and Exhibits, which constitutes the entire agreement between the Parties.

1.4 **"Allocation Matrix"** refers to the document outlining how the Settlement Administrator shall review, evaluate, and award Monetary Benefits to qualified Class Members, attached hereto as Exhibit F.

1.5 **"Approved Claimant"** means a Settlement Class Member who submits a timely Proof of Claim Form to the Settlement Administrator, that the Settlement Administrator has found

satisfies all the requirements set forth on the Claim Form in accordance with the requirements established by this Settlement.

1.6 "**Benefit**" or "**Monetary Benefit**" means the payment available to a Claimant who files a valid Claim under this Agreement. The specific Benefit received is subject to review, validation, and adjustments by the Settlement Administrator based upon the terms and conditions of this Agreement.

1.7 "**Claim**" means a completed and signed Proof of Claim Form submitted by a Settlement Class Member, or on their behalf, to the Settlement Administrator in accordance with the instructions on the Claim Form and the terms of this Settlement.

1.8 "**Claim Form Deadline**" or "**Claims Deadline**" means the date by which a Claim Form must be postmarked via United States First Class Mail or via electronic submission by 11:59 p.m. Eastern Time to be considered timely. The Claim Form Deadline shall be clearly set forth in the Preliminary Approval Order as well as in the Settlement Notice and/or the Claim Form and shall be the seventy-fifth (75th) consecutive day after the Notice Date. If the Claim Form Deadline is on a weekend or holiday, the Claim Form Deadline shall extend to the next business day following the weekend or holiday.

1.9 "**Claim Period**" means the period of time during which a Settlement Class Member must submit a Claim Form to the Settlement Administrator to be eligible to receive a Monetary Benefit as part of the Settlement, which shall begin on the Notice Date and end on the Claim Form Deadline. The Claim Period shall be set forth in the Preliminary Approval Order.

1.10 "**Claimant**" means a Settlement Class Member who submits a Claim.

1.11 "**Class Counsel**" means the law firms of Marler Clark, Inc. PS, Dreyer Boyajian LLP, O'Connor & Partners, PLLC, Heisman Nunes & Hull LLP and Bowersox Law Firm, P.C.

1.12 "**Class**" or "**Class Members**" means all persons in the United States (including its territories) who purchased, received, or consumed French Lentil + Leek Crumbles and suffered personal injuries allegedly caused by consumption of the Crumbles, and all persons in the United States (including its territories) who suffered consequential monetary damages arising from or related to another person's alleged personal injuries arising from consumption of the Crumbles. Specifically excluded from the Class are (i) any Governmental Entity; (ii) subsidiaries, divisions, corporate affiliates, owners, officers, current employees, and directors of the Settling Defendants; (iii) any assigned judges and members of their staffs and immediate families; and (iv) Class Counsel.

1.13 "**Class Notice List**" means the names, mailing addresses, and email addresses of all potential Class Members compiled by the Settlement Administrator from information provided by Class Counsel and the Settling Defendants, including from Daily Harvest's records of all individuals to whom it sold or shipped the Crumbles, to be used by the Settlement Administrator for the sole purpose of performing the Settlement Administrator's obligations pursuant to this Settlement Agreement.

1.14 "**Class Action Complaint**" means the complaint in the form attached hereto as Exhibit A to be filed by Plaintiffs upon entry by the Court of the Preliminary Approval Order.

1.15 "**Court**" means the United States District Court for the Southern District of New York.

1.16 "**Crumbles**" means Daily Harvest's French Lentil + Leek Crumbles product, all units of which the Settling Defendants have represented contained tara flour as an ingredient.

1.17 "**Daily Harvest's Counsel**" means the law firm of Faegre Drinker Biddle & Reath LLP. "**Stone Gate Foods' Counsel**" means the law firm of Wilson Elser Moskowitz Edelman &

Dicker LLP.

1.18 **"Effective Date"** means the fifth (5th) business day after the Final Approval Order becomes a final, non-appealable judgment. If no appeal is taken, the Effective Date shall be the fifth (5th) business day after the latest possible deadline for an appeal. (For avoidance of doubt, the Parties shall not assume the lack of an appeal even if no person or entity would seem to have standing to appeal from entry of the Final Approval Order.) If an appeal is taken and approval of the Settlement is affirmed in its entirety, the date on which the Final Approval Order becomes final would be five business days after the date on which such affirmance is no longer subject to further appeal or review. If a petition for a writ of certiorari is filed in the United States Supreme Court but is denied, the date on which the Final Approval Order becomes final would be five business days after the date on which the Supreme Court denies the petition.

1.19 **"Eligibility Requirements"** means the requirements necessary to qualify as a Qualified Claimant.

1.20 **"Execution Date"** means the date on which all Parties execute this Agreement, but if not all Parties execute it on the same day, then the date on which the last Party executes the Agreement.

1.21 **"Final Approval Hearing"** means the hearing set by the Court in the Preliminary Approval Order pursuant to Rule 23(i) of the Federal Rules of Civil Procedure to consider, among other things, final approval of the Settlement.

1.22 **"Final Judgment"** means the issuance of an order granting final approval to the Settlement and final judgment substantially in the form of the Final Approval Order attached hereto as Exhibit D, to be entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure granting final approval of the Settlement embodied herein.

1.23 "**Hold Back Amount**" means the amount, if any, of the Total Settlement Fund Value to be held back by the Settling Defendants or their insurers for a prescribed period of time correlating to the Settling Defendants' determination of the estimated value of those claims made by Class Members who have opted out of the Settlement.

1.24 "**Net Settlement Fund**" means the Qualified Settlement Fund less any Administrative Expenses.

1.25 "**Notice Date**" is the date, to be set by the Court in the Preliminary Approval Order, by which the Settlement Administrator must commence the process of providing Settlement Notices to Class Members in the manner set forth in this Agreement and in the Preliminary Approval Order.

1.26 "**Objection**" means an objection timely filed with the Court by a member of the Settlement Class objecting to any aspect of the Settlement.

1.27 "**Objection Deadline**" which shall be set forth in the Preliminary Approval Order, means seventy-five (75) days after the Notice Date.

1.28 "**Opt-Out**" means a request by a member of the Settlement Class to be excluded from the Settlement Class by following the opt-out procedures set forth in the Preliminary Approval Order and the Class Notice.

1.29 "**Opt-Out Deadline,**" which shall be set forth in the Preliminary Approval Order, means thirty (30) days after the Notice Date.

1.30 "**Preliminary Approval Order**" means the order, substantially in the form attached hereto as Exhibit B, to be entered by the Court granting preliminary approval of this Agreement as within the range of reasonableness for possible final approval, such that notice of the potential settlement should be provided to Class Members; approving Class Notice to the Class Members as described in Section 7 below as being the best notice practicable under the circumstances; and

setting the Final Approval Hearing to consider final approval of the Settlement and any objections thereto.

1.31 **"Proof of Claim Form"** or **"Claim Form"** means the claim form, lien questionnaire, and HIPAA forms, substantially as they appear in Exhibit E attached hereto, which a Settlement Class Member must complete and timely submit to the Settlement Administrator should that Settlement Class Member seek compensation pursuant to the Settlement. The Claim Form (whether submitted in hard copy or online through the Settlement Website or by email) will require each Class Member to attest under oath that he or she meets the Eligibility Requirements and to submit the Required Documentation to prove their entitlement to compensation, if any, from the Settlement Fund.

1.32 **"Qualified Class Member"** means a Settlement Class Member who submits a timely completed Proof of Claim Form that the Settlement Administrator, in consultation with the Settling Parties, determines satisfies all the Eligibility Requirements required by this Settlement. Subject to Court approval of the Settlement, a Qualified Class Member will be entitled to a Monetary Benefit from the Settlement in an amount to be determined by the Settlement Administrator.

1.33 **"Qualified Settlement Fund"** or **"Fund"** refers to the class action qualified settlement fund (26 CFR § 1.468B-1) to be established and approved by the Court.

1.34 **"Released Claims,"** as set forth fully in Sections 57 through 61, means any and all suits, claims, controversies, rights, agreements, promises, debts, liabilities, accounts, reckonings, demands, judgments, obligations, covenants, contracts, or causes of action of every nature, character, and description, in law or in equity, (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability

whatsoever), whether based on federal, state, local, statutory, or common law or any other law, rule or regulation, whether known or unknown, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and unknown claims, that (1) have been asserted in the Action by Plaintiff or in the Litigation by any Settlement Class Member against the Settling Defendants, or (2) could have been asserted in any forum by the Plaintiff or the Settlement Class Members against any of the Settling Defendants or Released Parties, which in any way arise out of, are related to, or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Action, including, but not limited to, claims for personal or monetary injuries (including loss of consortium) related to any person's purchase or consumption of Crumbles. Notwithstanding the foregoing, "Released Claims" does not include claims relating to the enforcement of the Settlement or its terms.

1.35 "**Released Party**" and "**Released Parties**" means any and all of the Settling Defendants and the Settling Insurers and each of their respective past and present insurers, subsidiaries, parents, successors, predecessors, assigns, corporate affiliates, controlled persons, controlling persons, owners, family members and partners, and as to each of the foregoing, their current or former legal representatives, heirs, executors, administrators, trustees, beneficiaries, managers, officers, directors, agents, employees, corporate affiliates, and attorneys. The terms "Released Party" and Released Parties" do not include the non-settling defendants Smirk's Ltd. and Molinos Asociados SAC. Neither the Releases nor anything else in this Agreement is intended to release or waive any right or claim to enforce the terms of this Agreement or any claims the Class Members or the Settling Defendants have against Smirk's Ltd. and Molinos Asociados SAC. This release specifically does not release claims, including but not limited to any direct or assigned

claims for indemnity, against Smirk's Ltd. and Molinos Asociados SAC.

1.36 "**Remaining Claims**" shall mean any suits, actions, controversies, demands, rights, causes of action, or other claims of every nature, character, and description, in law or in equity, that (1) Plaintiff or the Settlement Class Members may have against Smirk's Ltd. and/or Molinos Asociados SAC or (2) Daily Harvest and Stone Gate Foods may have against Smirk's Ltd. sounding in breach of contract or warranty to recover commercial damages and costs to defend this Litigation.

1.37 "**Required Documentation**" means any documentation required to establish proof of purchase of Daily Harvest's French Lentil + Leek Crumbles, medical expenses, or other out-of-pocket costs relevant to the submission of a Claim.

1.38 "**Settlement**" means the settlement described in this Settlement Agreement.

1.39 "**Settlement Administrator**" means Edgar Gentle of Gentle Turner & Benson, LLC | P.O. Box 361930, Hoover, AL 35236-1930, www.crumblessettlement.com, crumblessettlement@gtandslaw.com.

1.40 "**Settlement Notice**" means the Notice in the form attached hereto as Exhibit C, to be disseminated as provided for the Preliminary Approval Order.

1.41 "**Settlement Distribution Schedule**" or "**Settlement Program**" means the settlement program to be administered by the Settlement Administrator for the review, evaluation, and award of Monetary Benefits to qualified Class Members.

1.42 "**Settlement Email**" refers to crumblessettlement@gtandslaw.com, the Settlement email address established by the Settlement Administrator to facilitate the administration of the Settlement.

1.43 "**Settlement Website**" refers to the website established by the Settlement Administrator at www.crumblessettlement.com, to facilitate the administration of the Settlement.

This includes providing Class Members the ability to submit a Proof of Claim Form through the website, via the Settlement email, or by regular mail. The Settlement Website will not include any of the Settling Defendants' logos or trademarks. The Settlement Email and the Settlement Website shall be activated when Class Notice is commenced. The Settlement Website shall include, in downloadable format, the following: (i) the Settlement Notice; (ii) the Preliminary Approval Order; (iii) the Settlement Agreement (including all of its exhibits); (iv) the Class Action Complaint; (v) a Question and Answer section agreed to in good faith by the Settling Parties anticipating and answering Settlement-related questions from prospective class members; (vi) contact information for the Settlement Administrator, including a Toll Free number, as well as Class Counsel; (vii) all preliminary and final approval motions filed by the Parties, and any orders ruling on such motions; and (viii) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Administrator shall maintain the Settlement Website until such time as the Settlement is fully administered. The Settlement Website shall also allow Claimants to provide updated contact information.

1.44 "**Settling Insurers**" shall refer to (i) Daily Harvest's insurer, The Hartford Casualty Insurance Company (The Hartford) and/or (ii) Stone Gate Foods' insurer, Acuity Insurance (Acuity).

1.45 "**Settling Defendants**" means Daily Harvest, Inc., and Second Bite Foods, Inc., d/b/a "Stone Gate Foods".

1.46 "**Settling Parties**" means Plaintiff, Daily Harvest, Inc., and Second Bite Foods, Inc., d/b/a "Stone Gate Foods."

1.47 **"Taxes"** means (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the reasonable

expenses and costs incurred in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, the reasonable expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

1.48 **"Total Settlement Fund Value"** means twenty-two million, nine hundred and ninety-nine thousand dollars ($22,999,000), representing $254,155 paid by The Hartford, on behalf of Daily Harvest, to settle sixty-two (62) Class Members' claims, and, subject to the rights, terms, and conditions of this Agreement, additional payments to the Qualified Settlement Fund of $16,745,845.00 by The Hartford, on behalf of Daily Harvest, and $5,999,000 by Acuity, on Behalf of Stone Gate Foods.

1.49 **"Uncashed Settlement Checks"** means any checks mailed to Settlement Class Members that remain uncashed after a period of one hundred and eighty (180) days from the date of distribution of the checks to Settlement Class Members.

1.50 **"Unrepresented Claimant"** refers to any Class Member that is not represented by legal counsel.

1.51 The word "or" means "and/or."

1.52 The plural includes the singular and vice versa.

## SETTLEMENT FUND

1. In consideration for the Settlement and Releases given herein and subject to the rights, terms, and conditions set forth in this Agreement, the Settling Insurers on the Settling Defendants' behalf, will make certain payments to the Qualified Settlement Fund, consistent with the requirements and timing set forth below. Specifically, if Preliminary Approval of the Settlement is granted, the Settling Insurers, on the Settling Defendants' behalf, will make a

contribution to pay for administrative costs related to Class Notice, as set forth in Section 4. If Final Approval of the Settlement is granted, then the Settling Insurers, on the Settling Defendants' behalf, will make additional contributions to the Settlement Fund, subject to a potential hold back amount as set forth in Section 18, to pay for additional Administrative Expenses, with the remainder of the Fund to be distributed to Settlement Class Members in the manner set forth in this Agreement. The Total Settlement Fund Value is twenty-two million, nine hundred and ninety-nine thousand dollars ($22,999,000), subject to the rights, terms, and conditions of this Agreement. Neither the Settling Defendants, Settling Insurers, nor any of their past, present, or future corporate affiliates shall be liable or obligated to pay any monies, or incur any expenses, for any reason, other than the amounts expressly provided for in this Agreement.

**CLASS SETTLEMENT PROCEDURES**

2. **Preliminary Motion for Approval.** As soon as practicable after the Execution Date of this Agreement, but no sooner than the Settling Defendants advise Class Counsel that they are prepared to transmit notices to governmental authorities pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), Class Counsel shall move for an order granting Preliminary Approval to this Settlement Agreement as within the range of possible final approval and (i) conditionally certifying the Settlement Class for purposes of this Settlement only; (ii) approving Class Notice to the Settlement Class Members as described in Section 7; (iii) approving the Claim Form in a form substantially similar to the one attached hereto as Exhibit E; and (iv) setting a hearing to consider final approval of the Settlement and any Objections thereto. The Settling Defendants shall have no obligation to make separate filings in support of the motion, but may voluntarily do so. If the Court elects to hold a hearing before deciding whether to enter the Preliminary Approval Order, the Settling Defendants shall appear

at the hearing to confirm their agreement with the terms of the Settlement.

3. **Amended Class Action Complaint.** Pursuant to this Agreement, upon entry of the Preliminary Approval Order, the Plaintiff shall file an Amended Class Action Complaint in the form attached hereto as Exhibit A. The Class Action Complaint shall seek certification of the Class under Federal Rule of Civil Procedure 23(B)(3) as exactly defined herein and approved by the Court in the Preliminary Approval Order.

4. **Notice Funding.** Within ten (10) business days after the Court enters the Preliminary Approval Order, Plaintiff's Counsel and the Settling Insurers, on behalf of the Settling Defendants and Class Counsel, shall pay a total of $100,000 (divided equally in one-third shares among the Marler Clark Law Firm, insurers for Daily Harvest, and insurers for Stone Gate Foods) to the Qualified Settlement Fund for the Settlement Administrator to provide Class Notice. Where Class Members are known by the parties to be represented by counsel for purposes of asserting Released Claims, the parties shall provide that information to the Settlement Administrator and the Settlement Administrator will send a copy of the Notice to those counsel.

5. **CAFA Notice.** Within ten (10) business days after Class Counsel have moved the Court to enter of the Preliminary Approval Order, the Settling Defendants shall serve notices of the Settlement to government authorities as required by CAFA, and shall, within five (5) business days after service of such CAFA Notice, certify to Class Counsel in writing that such service has been made. The Settling Parties agree to request that the Court not schedule the Final Approval Hearing until at least 90 days after the Settling Defendants have transmitted CAFA notices (*i.e.*, no earlier than 100 days after Class Counsel moved the Court to enter the Preliminary Approval Order). The costs of preparing and serving CAFA notices shall be paid by the Settling Defendants and shall not be paid from the Fund.

## CLASS NOTICE

6. **Class Notice List**. Within one (1) business day after entry of the Preliminary Approval Order, Class Counsel and the Settling Defendants will provide the Settlement Administrator with the names, mailing addresses, and email addresses of all individuals reasonably known to them who received or consumed Crumbles or have asserted a claim relating to personal injury caused by consumption of Crumbles (and, where applicable, their counsel). Daily Harvest will also provide the Settlement Administrator with its records showing all individuals to whom it sold or shipped the Crumbles, along with the dates and amounts of Crumbles shipped (the "Crumbles Information"). This information will be provided to and used by the Settlement Administrator for the sole purpose of performing the Settlement Administrator's obligations pursuant to this Settlement Agreement, including Notice and administration of the Settlement Program, and shall otherwise remain confidential and not be disclosed or used for any other purpose at any time. The Settlement Administrator will compile the information from Class Counsel and the Settling Defendants into a Class Notice List and will provide the Class Notice List to Class Counsel and the Settling Defendants.

7. **Notice to the Class**. Unless this date is adjusted by the Court, within twenty (20) business days after the entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Settlement Notice substantially in the form attached here to as Exhibit C to be sent via electronic mail to all persons on the Class Notice List. If an email address is not available for an individual on the Class Notice List, or an email is returned as undeliverable, the Settlement Notice will be sent to the individual's last known mailing address via U.S. mail. The Settlement Administrator shall activate the Settlement Website for public accessibility no earlier and no later than the Notice Date.

8. **Certification of Compliance.** The Parties shall supervise the Settlement Administrator in the performance of the notice functions set forth in this Section. Prior to the Final Approval Hearing, in connection with the motion for final approval of the Settlement, Class Counsel shall serve and file a sworn statement from the Settlement Administrator evidencing compliance with the provisions of the Preliminary Approval Order concerning the distribution of the Settlement Notice to the Settlement Class as well as a summary of activity and visits to the dedicated Settlement Website.

**OBJECTIONS BY SETTLEMENT CLASS MEMBERS**

9. Any Class Member, who has not opted out, on his or her own, or through an attorney hired at his or her own expense, may object to the terms of the Settlement. Any such Objection must be filed with the Court and received by Class Counsel, the Settling Defendants' counsel, and the Settlement Administrator no later than the Objection Deadline. To be effective, any such Objection must be in writing and include the contents described below:

(a) Identification of the objection as pertaining to the case by reference to the case name, number, and court, which is *Breeanne Buckley Peni, individually and on behalf of all others similarly situated, v. Daily Harvest, Inc. and Stone Gate Foods*, Case No. 1:22-cv-05443-DLC.

(b) The name, address, telephone number, and, if available, the email address of the Person objecting, and if represented by counsel, of the objector's counsel;

(c) A written statement of all grounds for the Objection, accompanied by any legal support for such Objection;

(d) A statement of whether the objector intends to appear at the Final Approval Hearing, either with or without counsel;

(e) A statement of facts that establish the objector's membership in the Settlement Class, including all information required by the Claim Form;

(f) A detailed list of all other objections submitted by the objector or the objector's counsel to any class action settlement in any court in the United States in the previous five (5) years. If the objector or the objector's counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, the objector shall affirmatively state that fact in the written materials provided in connection with the Objection to this Settlement; and

(g) The objector's signature or other duly authorized representative of the objector (along with documentation setting forth such representation) and the signature of the objector's attorney, if the objector is represented.

10. Any Class Member who fails to timely file and serve a written Objection containing all of the information listed in the items (a) through (g) directly above, including notice of his/her intent to appear at the Final Approval Hearing, shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by any means, including, but not limited to, an appeal.

11. If any Objection is received by the Settlement Administrator, the Settlement Administrator shall forward the Objection and all supporting documentation to counsel for the Settling Parties. The failure of the Class Member to comply with the filing requirements listed

above shall be grounds for striking and/or overruling the Objection, even if the Objection is otherwise timely submitted to the Settlement Administrator.

12. A Class Member who objects to the Settlement may also submit a Claim Form on or before the Claim Form Deadline, which shall be processed in the same way as all other Claim Forms. A Class Member shall not be entitled to an extension to the Claim Form Deadline on the grounds that the Class Member has also submitted an objection.

**OPT-OUT REQUESTS**

13. Class Counsel believes this Settlement is fair, reasonable, adequate and equitable to the Settlement Class Members. However, if any Class Member wishes to Opt-Out of (in other words, be excluded from) this Settlement, the Class Member may do so by completing the online exclusion form at the Settlement Website; downloading and timely submitting to the Settlement Administrator a completed exclusion form; or submitting to the Settlement Administrator a written request for exclusion, as described in the Notice, submitted online or postmarked no later than the Opt-Out Deadline. Opt-Out requests not submitted online or postmarked by the Opt-Out Deadline shall not be valid. Class Members who elect to Opt-Out of this Settlement shall not be permitted to object to this Settlement, to intervene, or to submit a Claim. Class Members shall be encouraged, but not required, to provide their email addresses and telephone numbers in their requests for exclusion. So-called "mass" or "class" opt-outs shall not be allowed. Any request for exclusion must be made individually by each person who seeks to Opt-Out. For the avoidance of doubt, any Class Member who does not individually and timely Opt-Out of this Settlement will be deemed a member of, and will be included within, the Settlement Class.

14. If a Class Member submits both a Claim Form and an Opt-Out request, the Settlement Administrator shall promptly contact that Class Member to discuss and obtain

clarification as to whether the Class Member intended to Opt-Out or to seek monetary benefits from the Settlement.

15. The named Plaintiff affirmatively supports this Settlement and agrees not to Opt-Out of this Settlement. Class Counsel also affirmatively support this Settlement and, accordingly, neither Plaintiff nor Class Counsel shall in any way encourage any Class Member to Opt-Out, nor shall the Settling Defendants or their counsel discourage any Class Member from participating in this Settlement. Notwithstanding the above, Class Counsel, in accord with their ethical obligations, are free to advise individual clients represented by Class Counsel of the legal rights and remedies associated with an Opt-Out.

16. Any Class Member who does not file a timely request to Opt-Out as provided above shall be bound by this Settlement Agreement and all subsequent proceedings, orders, and judgments in this Litigation, and shall be precluded from asserting Released Claims in any forum against any Released Party.

**SETTLEMENT FUND HOLD BACK**

17. The Settlement Administrator shall scan and electronically send copies of all Opt-Out requests in PDF format (or such other format as shall be agreed) to the Settling Defendants' Counsel and to Class Counsel expeditiously (and not more than five (5) business days) after the Settlement Administrator receives such a request. The Settlement Administrator will provide a full and complete list of Opt-Out requests ("Opt-Out List") to the Settling Defendants' Counsel and to Class Counsel within five (5) business days after the Opt-Out Deadline.

18. Once the Settlement Administrator provides the Opt-Out List, the Settling Defendants shall have fourteen (14) days to reasonably determine, at their sole discretion, the amount, if any, that they will hold back from payment into the Qualified Settlement Fund after

entry of the Order for Final Approval, consistent with Section 45, to cover the Settling Defendants' reasonable material exposure relative to the potential litigation, arbitration or claims by the Opt-Outs ("Hold Back Amount") and will identify the Hold Back Amount to the Settlement Administrator and Plaintiffs' Class Counsel. If the Hold Back Amount is ten (10) percent or less of the Total Settlement Fund Value, Plaintiff and Plaintiff's counsel cannot object to the Hold Back Amount.

19. In the event that the Settling Defendants determine that the Hold Back Amount must exceed 10% of the Total Settlement Fund Value, and Plaintiff and Class Counsel do not agree that the amount is reasonable, then the Parties shall engage in good faith negotiations, employing the assistance of Magistrate Judge Sarah L. Cave, if needed, to reach agreement on any Hold Back Amount exceeding ten (10) percent of the Total Settlement Fund Value. The Claim Period and Objection Deadline shall be extended during the period of such good faith negotiations, and the Settlement Administrator shall post this information about the extension on the Settlement Website. If necessary, the Settling Parties shall inform the Court of the need to postpone the Final Approval Hearing, and the Settlement Administrator shall post to the Settlement Website information about any adjourned date for the Final Approval Hearing.

20. Should the Parties be unable to agree on a Hold Back Amount exceeding ten (10) percent of the Total Settlement Fund Value, after good faith negotiations, then any Party to this Agreement has the right to terminate its participation in the Settlement in its sole discretion pursuant to Section 81.

21. Should the Settling Defendants determine that the Hold Back amount is ten (10) percent or less of the Total Settlement Fund Value, or the Parties agree to a greater Hold Back Amount, the Settlement Administrator shall promptly post the Hold Back Amount to the

Settlement Website, and the Objection Deadline shall become the fourteenth (14th) day after such posting, which shall also be promptly posted by the Settlement Administrator on the Settlement Website. The Claims Deadline shall be extended by the number of days of the extension period in Section 19. For avoidance of doubt, unless otherwise ordered by the Court, no individualized notice of this information need be provided by email, mail, or other means to Class Members or their counsel; such updated information need only be posted by the Settlement Administrator to the Settlement Website. The sole exception is that the Settlement Administrator shall communicate any adjourned date for the Final Approval Hearing to Class Members who previously have submitted a valid Objection. For purposes of clarity, the Objector Deadline and Claims Period have been set intentionally by the Settling Parties to fall a reasonable time after communication to the Class of any Hold Back Amount, so that Class Members may make an informed decision, following the communication of the Hold Back Amount, to participate in the Settlement.

22. Class Counsel believes this Settlement is fair, reasonable, adequate and equitable to the Settlement Class Members. However, a Class Member who validly opts out may rescind that Opt-Out, and submit a Claim Form, at any time prior to the Final Approval Hearing. In this event, any such person shall be considered a member of the Class upon Final Approval, and the Settling Defendants (on a pro rata basis) shall subtract from the Hold Back Amount and redeposit into the Fund the proper amount correlating to the Settling Defendants' determination of the estimated value of the previously opted-out claims, under Section 1.23.

23. The Settling Defendants, or their respective Settling Insurers, shall each retain a pro rata share of the Hold Back Amount determined by each Settling Defendant's total settlement contribution.

24. The Settling Defendants, through their respective Settling Insurers, shall pay into the Settlement Fund the balance of the Hold Back Amount not reasonably used by them to resolve Opt-Out claims, arbitration, or litigation by December 31, 2025, or once all of the Opt-Out claims or Opt-Out litigation are resolved, whichever date is later. Such balance shall be distributed to all Qualified Claimants on a pro rata basis within 30 days thereafter.

**SETTLEMENT ADMINISTRATOR RESPONSIBILITIES AND COSTS**

25. The Parties agree that Edgar Gentle of Gentle Turner & Benson, LLC will serve as the Settlement Administrator, and Mr. Gentle, and his firm will provide class notice and administration services as provided in this Agreement. Class Counsel solicited bids from at least three qualifying firms and conferred before selecting a firm to serve as Settlement Administrator. If a Motion to Appoint Mr. Gentle as Settlement Administrator with the responsibilities and authority set forth in this Agreement is required, Plaintiffs will make such motion, and the Settling Defendants will not object.

26. The Settlement Administrator shall be responsible for, among other things, providing Notice as set forth in Section 7, administering the Settlement Website and the Qualified Settlement Fund; the Opt-Out and Objections process and reporting requirements; processing, evaluating, accepting or rejecting Claim Forms; and the determination and payment of Monetary Benefits under the Settlement Program described herein and in the Allocation Matrix, attached hereto as Exhibit F. The Settlement Administrator is authorized to communicate with Potential Settlement Class Members, including those who have opted out, about their potential claims and the operation and benefits of the Settlement Program.

27. To prevent the payment of fraudulent Claims and to pay only Valid Claims, the Settlement Administrator will use adequate and customary procedures and standards. The Settlement

Administrator will use the Crumbles Information provided by Daily Harvest, as well as all information and documentation he deems relevant to analyze and evaluate claims submitted, including but not limited to, medical records and billing, other economic loss information, and written statements provided by Class Members and/or their individual counsel related to claims made within the Class Settlement, to assess the validity of Claims. If the Settlement Administrator or Parties detect or reasonably suspect any fraud, the Settlement Administrator may require additional information from any Person who has submitted a claim or deny claims the Settlement Administrator deems to be fraudulent, subject to the supervision of the Parties and the ultimate oversight by the Court.

28. The Settlement Administrator will also undertake other administrative tasks in a rational, responsive, cost-effective, and timely manner, including forwarding to Class Counsel, with copies to Settling Defendants' Counsel, documents and other materials received in connection with the administration of the Settlement promptly upon receipt, and making available for inspection by Class Counsel and Settling Defendants' Counsel any documentation related to the Settlement submitted to the Settlement Administrator, and any correspondence related to the Settlement sent or received by the Settlement Administrator, at any time upon reasonable notice. The Settlement Administrator will provide reports respecting opt-out requests, objections, claims received, processed, and paid, deidentified under HIPAA, to Class Counsel and Settling Defendants' Counsel (at least) monthly, including, without limitation, reports regarding any requests for exclusion received from Class Members and will provide reports and settlement administration information related to opt-out requests, objections, claims processing, and payment processing, deidentified under HIPAA, to the Court as the Court may require, on a quarterly basis.

29. The Settlement Administrator shall keep all information received, including the identity and mailing addresses of the Potential Settlement Class Members, confidential. The

Parties agree that this information may not be used for any purpose other than effectuating the terms of the Settlement or the duties or obligations arising hereunder.

30. The Settlement Administrator shall maintain reasonably detailed records of his activities under the Settlement, including all such records as are required by applicable law, in accordance with its normal business practices, which will be made available to the Parties upon request.

31. The Settlement Administrator will prepare invoices for review and approval by Class Counsel, the Settling Defendants' counsel and, if required, the Court. All fees and expenses incurred by the Settlement Administrator in connection with Notice and administering claims and performing the other tasks set forth in this Agreement will be paid from the Qualified Settlement Fund; however, the Settlement Administrator's total costs for class notice and class administration and any expenses incurred therefrom shall not exceed 2% of the Fund or approximately $459,980.00, unless the Court explicitly orders otherwise. In all circumstances, such fees and expenses shall be paid solely from the Fund. Neither the Settling Defendants, Settling Insurers, nor any of their past, present, or future corporate affiliates shall be obligated to pay any additional settlement administration fees, expenses, costs, or disbursements in connection with this Settlement, other than the amounts expressly provided for in this Agreement.

**SETTLEMENT PROGRAM**

32. Subject to the rights and limitations set forth in this Agreement, every Settlement Class Member shall have the right to submit a Claim for a Monetary Benefit. A Claim shall be a Valid Claim only if submitted on the Claim Form, which may be accessed online, pursuant to and in compliance with the procedures set forth herein. Submission of a Claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any Party, any Class

Member, or any other Person, except as expressly provided herein. The Settlement Administrator shall establish an Allocation Matrix prior to the filing of the Preliminary Approval Motion, to be posted on the Settlement Website prior to when the Class Notice is sent, outlining how Claims will be graded and paid, to be referenced in the Preliminary Approval Motion and the Class Notice. Within the same time frame, the Claim Form will also be posted on the Settlement Website.

33. At the election of the Class Member, a Claim Form may be submitted in paper via first class mail or online at the Settlement Website. If submitted by mail, a Claim Form must be postmarked or submitted online no later than the Claim Deadline. Class Members have sole responsibility for ensuring a mailed Claim Form is delivered to the Settlement Administrator, so Class Members who submit Claim Forms by mail may wish to do so by a means providing for proof of delivery. A Claim Form postmarked or submitted online after the Claim Deadline will not be a valid Claim and cannot be cured. For Claim Forms that are submitted online, the Class Member shall have the opportunity to upload Proof of Purchase image files (e.g., jpeg, tif, pdf). For the avoidance of doubt, each Class Member may file only a single Claim.

34. **Eligibility Requirements.** To be eligible for a Monetary Benefit, a Class Member must timely submit a completed Proof of Claim Form and all required documentation by the Claim Deadline. Qualified Class Members, as determined by the Settlement Administrator, shall receive a Benefit, provided the Proof of Claim Form and documentation submitted establish that the Claimant meets the following additional Eligibility Requirements:

**Personal Injury Claim**: (i) Proof of purchase through the Crumbles Information provided by Daily Harvest or other reliable information establishing that the Claimant, purchased, received, or consumed French Lentil + Leek Crumbles, and (ii) documentation or other reliable information, including, but not limited to,

declaration(s) under penalty of perjury, supporting the allegation of damages allegedly caused by the consumption of Crumbles; or

**Monetary Damages Claim**: (i) Proof of purchase through the Crumbles Information provided by Daily Harvest or other reliable information, establishing that the person whose alleged injuries form the basis of the claim purchased, received, or consumed French Lentil + Leek Crumbles, and (ii) documentation or other reliable information, including, but not limited to, declaration(s) under penalty of perjury, supporting the allegation of monetary damages allegedly caused by that person's consumption of Crumbles.

35. **Relief to Qualified Class Members.** The Settlement Administrator shall determine the Monetary Benefit to be awarded to each Qualified Class Member pursuant to the Settlement Program described herein and the Allocation Matrix attached hereto as Exhibit F. Any amounts remaining in the Qualified Settlement Fund after the Settlement Administrator applies the Allocation Matrix, or any later payment of Hold-Back amounts back into the Fund, shall be paid to Qualified Class Members on a pro rata basis. As a result, the actual amount paid to Settlement Class Members may depend upon the number of Qualified Claims, and their merits.

36. **Cure Period Prior to Rejection of Timely Claim.** The Settlement Administrator shall receive and review Claim Forms and required documentation, if any. Claim Forms that do not meet the Eligibility Requirements shall be rejected. Prior to rejecting a timely submitted Claim, in whole or in part, the Settlement Administrator shall notify the Claimant in writing, by mail, first class postage pre-paid, to Claimant with an emailed copy to counsel for Claimant (if any) to give the Claimant (or counsel for Claimant) the chance to remedy any curable deficiencies in the Proof of Claim Form within a period of twenty (20) days after such notice has been mailed or emailed.

37. **Appeal.** If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days, serve upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation. The Settlement Administrator shall within twenty (20) days notify the Claimant of the Settlement Administrator's determination on the appeal. The Settlement Administrator's decision shall be final and binding, except that Class Counsel and Defendant shall have the right to audit claims and to challenge the Settlement Administrator's decision by motion to the Court.

38. **Sole Remedy.** By submitting a Proof of Claim, a Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the terms of this Agreement and the releases provided for in the Judgment.

39. **Approved Class Claims List.** The Settlement Administrator's determination of validity of Claims and Benefit amounts within a maximum of one hundred seven (107) days after the Final Approval Hearing. Following this determination, the Settlement Administrator shall provide Class Counsel and Settling Defendants' Counsel, subject to HIPAA requirements, with: (1) a list of Approved Class Member Claims ("Approved Claims List"); (2) a corresponding calculation of the total settlement payment approved by the Settlement Administrator for each Claim; and (3) upon request, the corresponding Proof of Claim Forms and required documentation, if any.

## FINAL JUDGMENT AND SETTLEMENT APPROVAL ORDER

40. **Final Approval Order and Judgment.** No later than fourteen (14) days prior to the Final Approval Hearing, Plaintiff shall move for entry of an order of final approval, granting final approval of this Settlement and holding this Agreement to be final, fair, reasonable,

adequate, and binding on all Settlement Class Members who have not excluded themselves as provided herein, and ordering that the settlement relief be provided as set forth in this Agreement, approving and ordering the releases as set forth in Section 57, and entering final judgment dismissing with prejudice all claims Class Members asserted in, or that they could have asserted in, this Litigation. The Final Approval Order shall, among other things, also:

a) Dismiss Plaintiff's and the Settlement Class claims (including all individual claims and Settlement Class claims presented thereby) against the Settling Defendants on the merits and with prejudice, without fees or costs to any party;

b) Dismiss Non-Settling Defendants' crossclaims for indemnity and contribution against the Settling Defendants with prejudice pursuant to New York General Obligations Law §15-108;

c) Preserve the Remaining Claims against the Non-Settling Defendants;

d) Bar and permanently enjoin all potential Settlement Class Members from (i) filing, commencing, prosecuting, intervening in, or participating (as Settlement Class Members or otherwise) in any lawsuit, arbitration or other legal proceeding in any jurisdiction based on or relating to the Released Claims;

e) Without affecting the finality of the Final Approval Order for the purposes of appeal, retaining the Court's jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of this Agreement and the Final Approval Order, and for any other necessary purpose.

41. The Settling Defendants shall have no obligation to make separate filings in support of the Motion for Final Approval but shall appear at the hearing to confirm their agreement with the terms of the Settlement as provided herein.

42. **Effect of Non-Approval.** This Agreement is subject to and conditioned upon the issuance by the Court of the Final Approval Order, in substantially the same form as the proposed Final Approval Order attached as Exhibit D, that finally certifies the Settlement Class for the purposes of this Settlement, grants final approval of the Agreement, enters final judgment dismissing with prejudice the Plaintiff's and Settlement Class Members' claims, dismisses with prejudice the Non-Settling Defendants' crossclaims against the Settling Defendants, preserves the Remaining Claims against the Non-Settling Defendants, and provides all other relief specified herein, which relief shall be subject to the terms and conditions of this Agreement and the Parties' performance of their continuing rights and obligations hereunder. If the Court does not enter the Final Approval Order in substantially the same form as the proposed Final Approval Order attached as Exhibit D, the Settling Defendants shall have no obligation under this Agreement and the Parties will return to the status quo ante.

43. In the event that this Agreement is not approved by the Court in substantially its present form, any Objection to the Settlement is sustained by the Court, or the Settlement does not become final for any reason, including Termination pursuant to Section 81, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties or the Class Members, and shall not be used in this Action or in any other action, arbitration or proceeding for any purpose, and any order or judgment entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc. In such event, this Agreement and all negotiations, proceedings, documents prepared, and statements made in

connection with this Agreement shall be without prejudice to any Settling Party or Class Member and shall not be admissible or offered into evidence in any action or proceeding, and shall not be deemed, asserted, or construed to be an admission or confession by any Settling Party or any other person or entity of any fact, matter, or proposition of law, and shall not be used or asserted in any other manner or for any purpose, and all Settling Parties and Class Members shall stand in the same position as if this Agreement and Settlement had not been negotiated, made, or submitted to the Court.

44. **Funding.** Within ten (10) business days after the Final Approval Order becomes final, where final means that the appeal period has passed, and no appeals have been filed or, if filed, such appeals have been dismissed, The Settling Insurers, on behalf of the Settling Defendants, shall send to the Settlement Administrator, to be paid into the Qualified Settlement Fund, the amount required for distribution.

45. The Settling Defendants' Payment pursuant to the Final Approval Order and Final Judgment shall be final and conclusive against all Settlement Class Members. All Settlement Class Members who have not opted out of the Settlement Class shall be bound by all terms of the Settlement, including the Final Judgment to be entered in this Action, and will be permanently barred and enjoined from bringing any action against the Settling Defendants or Released Parties with respect to any and all of the claims asserted in the Litigation.

## USE OF SETTLEMENT FUND

46. The Settlement Fund shall be used to pay Administrative Expenses and the remaining funds shall be distributed to Settlement Class Members according to the Settlement.

47. The Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1. The Settlement Administrator, as administrator of the

Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. The Settlement Administrator shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Settling Defendants and Released Parties shall not have any liability or responsibility for any such Taxes. Upon written request, the Settling Defendants will provide to the Settlement Administrator the statement described in Treasury Regulation § 1.468B-3(e). The Settlement Administrator, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

48. All Taxes shall be timely paid out of the Settlement Fund, and without further order of the Court. Any taxes paid from the Settlement Fund and any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Settling Defendants' and Released Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator with respect to the payment of Taxes.

49. Prior to the Effective Date, no disbursements shall be made out of the Settlement Fund except: (a) upon order of the Court; or (b) as provided in the Settlement. Prior to the Effective

Date, the Settlement Administrator may pay from the Settlement Fund Administrative Expenses actually incurred and paid or payable, which shall not exceed $100,000. After the Effective Date, the Settlement Administrator may pay from the Settlement Fund any additional, unpaid Administrative Expenses. The Settling Defendants and Released Parties are not responsible for, and shall not be liable for, any Administrative Expenses.

50. If the Effective Date does not occur, or if the Settlement is voided, terminated, or cancelled pursuant to the terms of the Settlement, Plaintiff and Class Counsel shall have no obligation to repay any of the Administrative Expenses that have been paid or incurred in accordance with Section 46. Any amounts remaining in the Settlement Fund after payment of Administrative Expenses incurred in accordance with Section 46, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to Settling Defendants. No other person or entity shall have any further claim whatsoever to such amounts.

51. No person or entity shall have any claim or cause of action against the Plaintiff, Class Counsel, the Settlement Administrator, or any other agent designated by Class Counsel arising from distributions made substantially in accordance with the Settlement, the manner of distribution of the Settlement Fund as approved by the Court, or any order of the Court.

52. The Settling Defendants and Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to distribution of the Settlement Fund, the payment or withholding of Taxes, the Settlement Administrator, Administrative Expenses, or any losses incurred in connection with the foregoing.

## PAYMENT OF SETTLEMENT CHECKS

53. The Settlement Administrator shall mail Benefit Payment checks to Qualified Class Members as their respective liens are resolved, with the Settlement Administrator to pay

liens. The checks must be cashed within six (6) months of the date of the mailing (the "Payment Period"). Any Qualified Class Member who does not cash his/her check within the Payment Period forgoes his/her claim to the Benefit Payment. Any proceeds from checks not cashed by the deadline shall become part of the Fund and distributed on a pro-rata basis to Class Members, if practicable, and if not practicable, shall be distributed as a *cy pres* Payment. Because the Settling Parties do not presently expect there to be a material number of uncashed checks (for multiple reasons, including that most Settlement Class Members are represented by counsel and because the Settlement Administrator will make payment options other than checks available to Settlement Class Members), the Settling Parties are not presently designating a *cy pres* recipient. In the event there are uncashed checks, the Settling Parties will identify a *cy pres* recipient to the Court and move the Court to approve distribution of those funds to said recipient. No funds shall be returned to the Settling Defendants.

54. No deductions for taxes assessed to Claimants will be taken from any Benefit Payment at the time of distribution. Settlement Class Members are responsible for paying all taxes due on such Payments. All Benefit Payments shall be deemed to be paid solely in the year in which payments are actually issued. The Parties do not purport to provide legal advice on tax matters to each other or to Settlement Class Members. To the extent this Agreement, or any of its Exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. Federal or any state tax issue, such advice is not intended for use by and should not be used by any Person for the purpose of avoiding penalties under the Internal Revenue Code or any state tax laws.

## ATTORNEY'S FEES AND CLASS COUNSEL EXPENSES

55. **Attorney's Fees.** Class Counsel and the attorneys for individual Class Members shall be compensated pursuant to the retainer agreements between Plaintiffs, Class Members, and their respective counsel (if any). Defendants acknowledge that various plaintiffs' counsel have contingent fee contracts with their respective individual clients. Defendants take no position regarding any existing contingency fee agreements and Class Counsel's application to the Court, if required, to approve as part of the Settlement the payment of legal fees pursuant to such retainer agreements. Neither the Settling Defendants nor any other Released Party shall have any responsibility for the payment of any Plaintiffs' or Class Members' past or future attorneys' fees or costs. The Settlement Administrator shall make any Settlement Benefit owed to a Claimant payable in the name of the Claimant or their attorneys for the Claimant's benefit. Any division of a settlement payment between a Claimant and/or their respective counsel is to be determined by such persons and any such division, or any dispute in relation to such division, shall in no way affect the validity of this Agreement, any Release, or any Released Claim. If a Class Member is not represented by counsel and does not have an attorney lien resulting from previous representation relating to the Crumbles, then any Monetary Benefit awarded to said Unrepresented Claimant shall be reduced by one-third (1/3) under the terms of the Settlement Agreement. In effect, Class Counsel is requesting that the Court impute a 1/3 attorney's fee award for any Monetary Benefit paid to Unrepresented Claimants; however, that the value of said fee award be deposited back into the Settlement Fund for the common benefit of all Claimants. Class Counsel submits that the proposed 1/3 reduction represents a fair method of allocating the Settlement Funds to Unrepresented Claimants and treats each Class Member equitably.

56. **Class Counsel Expenses.** Class Counsel may seek, and the Court may award reimbursement from the Settlement Fund of expenses incurred by Class Counsel, up to and not exceeding $33,333.33, to provide Notice to the Class under this Agreement upon entry of the Final Approval Order. The Settling Defendants and Released Parties will have no obligation to pay or reimburse Class Notice costs. The granting by the Court of reimbursement of expenses incurred by Class Counsel for Class Notice is not a necessary term of the Settlement, and it is not a condition of approval of the Settlement by the Court. No Party may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to such expense reimbursement and no order or proceeding relating to any expense reimbursement, or any appeal from any such order, shall not operate to terminate or cancel this Settlement.

**RELEASES**

57. Upon the entry of a Final Approval Order and without any further action by the Court or by any Party to this Agreement, Class Members (including Plaintiff), and any person claiming rights derivative of any Class Member as their spouse, parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, trustee, executor, devisee, predecessor, successor, assignee, assign, beneficiary, representative of any kind, shareholder, partner, director, employee, and any other person claiming by, through or on behalf of them, shall be deemed by operation of law and the Final Judgment to have fully, finally, and forever released, relinquished, waived, discharged and dismissed the Settling Defendants and Released Parties from all Released Claims (including, without limitation, any unknown claims), as well as any claims arising out of, relating to, or in connection with, the prosecution, defense, mediation, arbitration, settlement, disposition, or resolution of the Action, Litigation or the Released Claims.

58. Upon the entry of a Final Approval Order, and without any further action by the

Court or any Party to this Agreement, the Settling Defendants agree to release each other, as well as their officers, directors, owners, employees, shareholders, assigns, corporate affiliates, attorneys, and insurers from any and all liability, claims, damages, hold harmless agreements, indemnity obligations, contractual obligations, common law claims, settlements or judgments arising out of or relating to the Action, Litigation, the Released Claims and the allegations made against each Settling Defendant in the Minnesota Proceeding. Upon the entry of the Final Approval Order, the Settling Defendants agree to dismiss each other with prejudice in the Minnesota Proceeding within ten (10) business days.

59. Without limiting the foregoing, the Releases specifically extend to any claims, that Class Members do not know or suspect to exist in their favor at the time that the Settlement, and the Releases contained herein, become effective, and Class Members waive any and all provisions, rights, and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

60. Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule, or regulation relating to limitations on releases. In connection with such waivers and relinquishment, Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with

respect to the subject matter of the Litigation, but that it is their intention to release fully, finally, and forever all Released Claims with respect to the Settling Defendants and Released Parties, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

61. Class Members shall be deemed to have agreed that the release set forth herein will be and may be raised as a complete defense to and will preclude any action, arbitration or proceeding based on the Released Claims. The Final Approval Order shall further provide for and effect the release of all actions, causes of action, claims, administrative claims, demands, debts, damages, costs, attorneys' fees, obligations, judgments, expenses, compensation, or liabilities, at law or in equity, whether now known or unknown, suspected or unsuspected, contingent or absolute, whether existing now or arising in the future, whether asserted or that could or might have been asserted, that constitute Released Claims.

62. Notwithstanding the above, the Court shall retain exclusive jurisdiction over the Settling Parties and the Agreement with respect to the future performance of the terms of the Agreement, and to assure that all payments and other actions required of any of the Parties by the Settlement are properly made or taken.

## RESPONSIBILITY FOR LIENS AND AGREEMENT TO INDEMNIFY

63. Class Members represent and warrant that, where necessary, they have obtained or will promptly obtain, the written consent and approval for settlement in connection with, and agree to assume responsibility for, all liens or subrogation rights being asserted by all persons, entities, businesses, firms, corporations or government entities who have given notice of any liens, subrogation claims, or rights to reimbursement, including, but not limited to, attorneys, public health insurers, including Medicare, the Center for Medicare & Medicaid Services,

Medicaid, and/or private health insurers relating to medical care provided as a result of or arising in connection with the subject matter of the Litigation, whether past, present or future, known or unknown, by any person, entity, business, firm, corporation or government entity or agency as a result of, or arising in connection with the Released Claims, including, but not limited to, medical expenses paid for or reimbursed by others. Class Members acknowledge that each of them is solely responsible for the payment of any such liens from the proceeds of this settlement and further warrants that all such subrogation and lien payments due and owing will be their sole and exclusive responsibility.

64. Class Members are solely responsible for the payment of any such Medicare, Medicaid, and/or any other conditional lien from the proceeds of this settlement and further agrees to pay Medicare, Medicaid, and/or any other public payor or private insurer to fully and finally satisfy any liens or interests, including those pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), and implementing regulations, 42 C.F.R. §§ 411.20 et seq., and warrant that all payments due and owing to Medicare, Medicaid, and/or any other payors or insurers are and will be the sole and exclusive responsibility of each Class Member.

65. Class Members will defend, indemnify and hold harmless the Settling Defendants and Released Parties for any and all amounts paid and/or sought by Medicare, Medicaid and/or private insurers from the Settling Defendants or Released Parties, and further agree to ensure that all other procedures required by Medicare, Medicaid, and/or private insurers are followed in order to protect the Settling Defendants and Released Parties from claims for healthcare expense reimbursement.

66. Class Members will defend, indemnify and hold harmless the Settling Defendants and Released Parties from any other claims or liability as a result of or arising in connection with

the subject matter of the Litigation, including any subrogation or other claims or liability arising from any claim, demand or cause of action asserted by any other public or private health insurers, medical providers or others for contribution or indemnity, or otherwise in connection with medical care arising in connection with the subject matter of the Litigation.

67. Class Members will defend, indemnify and hold harmless the Settling Defendants and Released Parties from any claims or actions for state or federal income taxes or additions to tax, and any interest or penalty thereon, or claims or liabilities arising from such taxes incurred by or asserted, arising out of Benefits paid to Class Members.

**ASSIGNMENT OF CLAIMS AGAINST NON-SETTLING DEFENDANTS**

68. Upon the entry of a Final Approval Order and without any further action by the Court or by any Party to this Agreement, the Settling Defendants and the Settling Insurers assign all of their interest, rights, claims, defenses and causes of action ("Assigned Claims") against the Non-Settling Defendants for common law contribution and indemnity in connection with the Non-Settling Defendants' contributions to the Qualified Settlement Fund, as set forth in the Agreement, to resolve Class Members' claims arising from personal injury. The Assigned Claims shall be effective upon entry of the Final Approval Order and Judgment, provided, however, that if this Agreement fails to receive Court approval or otherwise fails to become effective, including, but not limited to, the judgment not becoming final as provided in Section 43 of this Agreement, then the Assigned Claims will revert to the Settling Defendants, and all parties in the Litigation will retain the claims and causes of action that they had immediately preceding the execution of this Agreement. The Assigned Claims do not include the Settling Defendants' rights and causes of action to seek breach of contract damages and contractual indemnity from the Non-Settling Defendants for commercial damages caused to the Settling Defendants as a result of the Non-

Settling Defendants' breach of contract.

## REPRESENTATIONS AND WARRANTIES

69. The Settling Parties each represent, warrant and agree as follows:

70. Each Settling Party has had the opportunity to receive, and has received, independent legal advice from his or her or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income tax consequences of this Agreement, and fully understands and accepts the terms of this Agreement.

71. The Settling Defendants represent and warrant: (i) that they have the requisite corporate power and authority to execute, deliver, and perform the Agreement and to consummate the transactions contemplated hereby; (ii) that the execution, delivery, and performance of the Agreement and the consummation by them of the actions contemplated herein have been duly authorized by necessary corporate action on the part of the Settling Defendants; and (iii) that the Agreement has been duly and validly executed and delivered by each Settling Defendant and constitutes its legal, valid, and binding obligations.

72. Plaintiff represents and warrants that she is entering into the Agreement on behalf of herself individually and as a proposed Class Representative of her own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court. As Class Representative, she represents and warrants that she has reviewed the terms of the Agreement in consultation with Class Counsel and believes them to be fair and reasonable, and covenants that she will not file an Opt-Out request from the Settlement Class or object to the Agreement.

73. Plaintiff represents and warrants that no portion of any claim, right, demand, action, or cause of action against any of the Settling Defendants or Released Parties that she has

or may have arising out of the Action or pertaining to her claims in this Litigation, including as the Class Representative, and no portion of any recovery or settlement to which she may be entitled, has been assigned, transferred, or conveyed by or for in any manner; and no other person has any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement.

74. No Party relies or has relied on any statement, representation, omission, inducement, or promise of the other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement or entering the Settlement provided for herein, except as expressly stated in this Agreement.

## MISCELLANEOUS PROVISIONS

75. **Arm's-Length Negotiations.** The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel and under the supervision of, and upon specific recommendations provided by, the Honorable Sarah L. Cave.

76. **Entire Agreement**. This Agreement, together with the Exhibits hereto, constitutes the entire agreement between the Parties with respect to the subject matter of the Settlement and supersedes all prior negotiations, communications, memoranda, and agreements between the Parties (including, but not limited to, the Term Sheet). Neither Plaintiff nor the Settling Defendants is entering into this Agreement in reliance upon any representations, warranties, or inducements other than those expressly contained in this Agreement.

77. **Construing the Agreement.** This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it may have been initially drafted

by counsel for only one of the Parties. It is recognized that this Agreement is the result of arm's-length negotiations between the Parties, and it is acknowledged that all Parties have contributed substantially to the preparation of this Agreement. Accordingly, the doctrine of *contra proferentum* shall not apply in construing this Agreement, nor shall any other such similar doctrine be applicable.

78. **Plaintiff's Authority.** Plaintiff's Counsel and Class Counsel represent and warrant that they are authorized to take all appropriate actions required or permitted to be taken by or on behalf of either Plaintiff or, subsequent to an appropriate Court Order, the Settlement Class, in order to effectuate the terms of this Agreement and are also authorized to enter into appropriate modifications or amendments to this Agreement on behalf of Plaintiff and, subsequent to an appropriate Court Order, the Class Members.

79. **Notices.** All notices to the Parties and their counsel provided for herein shall be sent by email with a hard copy sent by overnight mail to:

(a) If to the Settlement Class Representatives or Class Counsel:

William D. Marler, Esq.
Marler Clark Inc., PS
1012 1st Avenue, Fifth Floor
Seattle, WA 98104
Tel: (206) 346-1890
bmarler@marlerclark.com

James R. Peluso, Esq.
Dreyer Boyajian
75 Columbia Street
Albany, NY 12210
Tel: (518) 463-7784
jpeluso@dblawny.com

Jeffrey A. Bowersox, Esq.
Bowersox Law Firm, P.C.
385 1st Street, Suite 215

Lake Oswego, OR 97034
Tel: (503) 452-5858
jeffrey@bowersoxlaw.com

(b) If to Settling Defendants:

Counsel for Daily Harvest
Sarah L. Brew, Esq.
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Tel: (612) 766-7470
sarah.brew@faegredrinker.com

Counsel for Stone Gate Foods
Daniel E. Tranen, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
7777 Bonhomme Avenue, Suite 1900
St. Louis, MO 63105
Tel: (314) 930-2862
daniel.tranen@wilsonelser.com

(c) If to the Settlement Administrator

Edgar C. Gentle III
Gentle Turner & Benson, LLC
P.O. Box 361930
Hoover, AL 35236-1930
Tel: (205) 716-3000
egentle@gtandslaw.com
crumblessettlement@gtandslaw.com

80. **Modification, Court Approval, Extensions.** This Agreement is not subject to modification without the written consent of the Settling Parties and approval of the Court; provided, however, that, after entry of the Final Approval Order, the Settling Parties may by agreement effect such modification of this Agreement and its implementing documents (including all exhibits hereto) without notice to or approval by the Court if such changes are consistent in all material respects with the Court's Final Approval Order or do not limit the rights

of Settlement Class Members. The Settling Parties also reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

81. **Termination of Agreement.** The Settling Defendants and the Plaintiff each have the right to terminate this Settlement if: (i) the Hold Back Amount exceeds ten (10) percent of the Qualified Settlement Fund and that Settling Parties cannot, in good faith, reach agreement on a Hold Back Amount exceeding ten (10) percent of the Fund; (ii) the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this Agreement or the proposed settlement that the terminating party in its (or their) sole judgment and discretion believes is material; or (iii) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Approval Order, or any of the Court's findings of fact or conclusions of law, that the terminating party in its (or their) sole judgment and discretion believes is material. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this paragraph no later than twenty (20) days after receiving notice of the event described in this paragraph. If the Agreement is terminated, then the Agreement, its terms, and its exhibits shall be null and void and shall have no force or effect, no party shall be bound by any of its terms (except for the terms of this Paragraph) and the Agreement shall not be admissible in any further or different proceedings.

82. **Evidentiary Preclusion.** Whether or not the Settlement, as embodied in this Agreement, is approved by the Court, and whether or not this Settlement is consummated, the fact and terms and of this Settlement, including the exhibits annexed hereto, the Settlement embodied within it, all negotiations, discussions, drafts, and proceedings in connection with this Settlement, and any act performed or document signed in connection therewith:

(a) Shall not be offered or received against the Settling Defendants or Released Parties, Plaintiff or the other Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Settling Defendants or Released Parties or by Plaintiff or the other Class Members with respect to the truth of any fact alleged by Plaintiff or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or Litigation, or the deficiency of any defense that has been or could have been asserted in the Action or Litigation, or of any liability, fault or wrongdoing of the Settling Defendants or Released Parties;

(b) Shall not be offered or received against the Settling Defendants or Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Settling Defendants, or against Plaintiff or any of the other Class Members as evidence of any infirmity in the claims of Plaintiff and the other Class Members;

(c) Shall not be offered or received against the Settling Defendants or Released Parties, Plaintiff or the other Class Members as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the foregoing parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if the Settlement is approved by the Court, the Settling Defendants and Released Parties may refer to this Settlement to effectuate the protection from liability granted them hereunder or in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue

preclusion or similar defense or counterclaim;

(d) Shall not be construed against the Settling Defendants, Released Parties, Settling Defendants' Counsel, or Plaintiff or the other Class Members or Class Counsel as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial; and

(e) Shall not be construed as or received in evidence as an admission, concession or presumption against Plaintiff or the other Class Members or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not exceed the benefits available to them in this Settlement.

83. **Exhibits**. All of the Exhibits hereto are incorporated herein by reference as if set forth herein verbatim, and the terms of all attachments are expressly made a part of this Agreement. In the event of any variance between the terms of this Agreement and any of the Exhibits hereto, the terms of this Agreement shall control and supersede the Exhibit(s).

84. **Waiver**. The waiver by any Settling Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior or subsequent to, or contemporaneous with, this Agreement.

85. **Tax Consequences**. No opinions concerning the tax consequences of the proposed personal injury settlement to individual claimants or class members is given or will be given by the Settling Defendants, Plaintiff, attorneys for individual Class Members, or Class Counsel, nor are any representations in this regard made by virtue of this Agreement. Each Class Member's (including their counsel's) tax obligations, if any, and the determination thereof, are the sole responsibility of the Class Member, and the tax consequences, if any, may vary depending on the particular circumstances of each individual Class Member.

86. **Media Communications**. Except as required by the Settling Parties or in accordance with applicable law, rule, or regulation (e.g., securities law, rules, or regulations), or any other exception expressly provided herein, to avoid contradictory, incomplete, false or confusing information about the Settlement, the Parties, Class Members and their Counsel agree that if they intend to make any written press releases, disclosures on their websites, or statements to the media or on social media about or that reference the terms of the Settlement or the Litigation, unless such releases or statements are identical to statements contained in this Agreement or the Exhibits, such releases or statements must be approved in writing by all of the other Parties in advance and, where desired by any other Party, made jointly. Any Party may respond to inquiries initiated by the media, and in doing so may decline to comment, but otherwise shall only refer the inquiring entity to the Class Notice, a statement approved by the other Party, or other truthful statements already in the public domain. Nothing provided herein shall prevent the Parties or Class Members from communicating with immediate family members, accountants, investors, or lenders about the Settlement or the Litigation without prior approval.

87. **Protective Orders.** All orders, settlement agreements and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties, Class Members and their counsel remain bound to comply with the Protective Orders, including the provisions to certify the destruction of "Confidential" documents.

88. **Binding on Successors.** This Agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the Plaintiff, Settlement Class Members, and Settling Defendants.

89. **Cooperation in Effecting Settlement**. The Parties and their counsel agree to

recommend approval of this Settlement Agreement to the Court and to undertake their commercially reasonable efforts in good faith, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate to secure prompt Final Settlement Approval and otherwise carry out the terms of this Settlement Agreement. The Parties and their counsel agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement. The Parties shall cooperate with the Settlement Administrator to the extent reasonably necessary to assist and facilitate the Settlement Administrator in carrying out its duties and responsibilities.

90. **Obligation to Conclude Settlement**. The obligation, although not the ability, of the Parties to conclude the proposed settlement is and will be contingent upon each of the following:

(a) Execution of this Agreement by the Parties;

(b) Entry by the Court of Preliminary Approval of the Settlement;

(c) Entry by the Order of Final Approval of the Settlement, in substantial compliance with the order submitted to the Court, which the time to appeal has expired or which has remained unmodified after any appeal(s); and

(d) Any other conditions stated in this Agreement.

91. **Governing Law**. This Agreement and any ancillary agreements shall be governed by, and interpreted according to, the law of the State of New York.

92. **Forum for Enforcement of Settlement**. Any action to enforce this Agreement shall be commenced and maintained only in the United States District Court for the Southern District of New York. If any Settlement Class Member hereafter sues or commences an arbitration against the Settling Defendants for the purpose of enforcing any claims that are

released under this Agreement, this Agreement shall be and constitute a complete defense thereto.

93. **Attorneys' Fees.** Notwithstanding any of the provisions herein, if any Party finds it necessary to institute legal proceedings to enforce another Party's obligation under this Agreement, the prevailing Party in any such action shall be entitled to recover its reasonable and necessary attorneys' fees and costs.

94. **Parties Bound.** This Agreement shall be binding upon and inure to the benefit of the Plaintiff, all Potential Settlement Class Members, Class Counsel, the Settling Defendants, and the respective heirs, successors and assigns of each of the foregoing.

95. **Authorization of Signatories.** The undersigned counsel for Plaintiff represents that (i) they are Qualified to enter into this Agreement on behalf of the Plaintiff and prospective Class Representative, and (ii) they are seeking to protect the interests of the entire Settlement Class. The undersigned counsel for the Settling Defendants represent that they are Qualified to enter into this Agreement on behalf of the Settling Defendants.

96. **Agreement Executable in Counterparts.** This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original; each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Electronic signatures or signatures sent by email shall be deemed original signatures and shall be binding.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys, as for the date stated above:

FOR PLAINTIFFS; MARLER CLARK, INC. P.S.

______________________________ Dated: May 1, 2024

William D. Marler

FOR PLAINTIFFS; BOWERSOX LAW FIRM, P.C.

______________________________ Dated: May 1st, 2024
Jeffrey Bowersox

FOR PLAINTIFFS; DREYER BOYAJIAN LLP, HEISMAN NUNES & HULL LLP, and O'CONNOR & PARTNERS, LLP

______________________________ Dated: ______________________
James Peluso

FOR DAILY HARVEST, INC.; FAEGRE DRINKER BIDDLE & REATH LLP

______________________________ Dated: ______________________
Sarah L. Brew

FOR SECOND BITE FOODS, INC.; WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

______________________________ Dated: ______________________
Daniel E. Tranen

FOR PLAINTIFFS; BOWERSOX LAW FIRM, P.C.

____________________________ Dated: ________________
Jeffrey Bowersox

FOR PLAINTIFFS; DREYER BOYAJIAN LLP, HEISMAN NUNES & HULL LLP, and O'CONNOR & PARTNERS, LLP

____________________________ Dated: 5/1/2024
James Peluso

FOR DAILY HARVEST, INC.; FAEGRE DRINKER BIDDLE & REATH LLP

____________________________ Dated: ________________
Sarah L. Brew

FOR SECOND BITE FOODS, INC.; WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

____________________________ Dated: ________________
Daniel E. Tranen

FOR PLAINTIFFS; BOWERSOX LAW FIRM, P.C.

____________________________ Dated: __________________

Jeffrey Bowersox

FOR PLAINTIFFS; DREYER BOYAJIAN LLP, HEISMAN NUNES & HULL LLP, and O'CONNOR & PARTNERS, LLP

____________________________ Dated: ________________________

James Peluso

FOR DAILY HARVEST, INC.; FAEGRE DRINKER BIDDLE & REATH LLP

____________________________ Dated: 5/1/2024

Sarah L. Brew

FOR SECOND BITE FOODS, INC.; WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

____________________________ Dated: ________________________

Daniel E. Tranen

FOR PLAINTIFFS; BOWERSOX LAW FIRM, P.C.

____________________________ Dated: ________________

Jeffrey Bowersox

FOR PLAINTIFFS; DREYER BOYAJIAN LLP, HEISMAN NUNES & HULL LLP, and O'CONNOR & PARTNERS, LLP

____________________________ Dated: ________________

James Peluso

FOR DAILY HARVEST, INC.; FAEGRE DRINKER BIDDLE & REATH LLP

____________________________ Dated: ________________

Sarah L. Brew

FOR SECOND BITE FOODS, INC.; WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

____________________________ Dated: 5/1/24

Daniel E. Tranen



US.363346399.01