UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BREEANNE BUCKLEY PENI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DAILY HARVEST, INC. and SECOND BITE FOODS, INC. d/b/a "STONE GATE FOODS",<br><br>Defendants. | SECOND AMENDED CLASS ACTION COMPLAINT<br><br>Civil Case No. 1:22-cv-05443-DLC<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and through the undersigned attorneys, as and for her class action complaint, alleges as follows.

## I.   INTRODUCTION

1. Plaintiff brings this action against defendants for personal injuries arising out of an outbreak of gastrointestinal illness related to a certain food product containing tara flour that was manufactured, produced, prepared, packaged, marketed, sold and/or distributed by defendants, namely known as "French Lentil + Leek Crumbles" under the brand name Daily Harvest.

## II.   JURISDICTION

2. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action involving more than 450 putative class members, some of whom are citizens of states diverse from defendant, and the amount in controversy exceeds $5,000,000, exclusive of costs and interest.

3. This Court has personal jurisdiction over defendants because defendants maintain their principal place of business in this district, regularly and systematically transacted business in

this district, contracted to supply goods or services in this district, the wrongful conduct complained of in this complaint occurred in this district, and/or defendants committed tortious acts outside of this district that caused injury to persons, including plaintiff, within this district.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because plaintiff and one or more defendants reside in this district, a substantial part of the events or omissions giving rise to the complaint occurred in this district, and defendants are subject to personal jurisdiction in this district.

### III. PARTIES

5. Plaintiff Breeanne Buckley Peni is an individual residing in Dutchess County, State of New York.

6. Defendant Daily Harvest, Inc. ("Daily Harvest") is corporation organized and existing under the laws of the State of Delaware with a principal place of business in this District, and registered with the New York State Department State as having a principal executive office located at 37 West 20th Street, Suite 1101, New York, NY 100111.

7. Defendant Second Bite Foods, Inc. d/b/a Stone Gate Foods ("Stone Gate Foods") is a corporation existing under the laws of the State of Minnesota with a principal place of business located at 5365 Shore Trail NE, Prior Lake, Minnesota 55372.

### IV. FACTUAL BACKGROUND

**A. Defendant Daily Harvest**

8. Defendant Daily Harvest operates as a direct-to-customer food brand in the United States.

9. Daily Harvest markets its food as being organic, clean, healthy, easy to prepare, and ready in minutes, while staying earth friendly.[1]

10. Defendant Daily Harvest advertises that it provides a "Chef-crafted meal delivery that starts with good, clean food! Built on fruits + vegetables. Farm-froze to lock in nutrients and flavor."[2]

11. Daily Harvest's website advertises its products and services to consumers as "A Better Food System," "From Seed to Plate" and that "We Got You."[3]

12. Defendant Daily Harvest states that its food products are grown in organic soil that is bio-diverse, resulting in healthier soil, more nutrient-dense foods, and less carbon in the atmosphere.[4]

13. Daily Harvest markets its products as being chef-crafted food built on sustainably sourced fruits and vegetables that are grown using organic agriculture and chemical free practices, and made without sources of dairy, gluten, gums, fillers, or any type of artificial product.[5]

14. Daily Harvest states that it works with farmers directly to ensure the most sustainable and healthy products for their customers and to help transition farmed land from conventional to organic with increased biodiversity.[6]

---

[1] Daily Harvest, *What We Eat and How its Grown Matters*, https://www.daily-harvest.com/about (last accessed June 27, 2022).
[2] Google search result for "Daily Harvest," https://www.google.com/search?q=daily+harvest&rlz=1C1GCEA_enUS972US972&oq=daily+harvest&aqs=chrome.0.69i59j46i131i199i433i465i512j69i59l2j0i3j0i131i433j0i131i433i512j0i433i512j0i3j0i433i512.2640j1j15&sourceid=chrome&ie=UTF-8 (last accessed June 27, 2022).
[3] *Id*.
[4] Daily Harvest, *What We Eat and How its Grown Matters*, https://www.daily-harvest.com/about (last accessed June 27, 2022).
[5] *Id*.
[6] *Id*.

15. Defendant Daily Harvest represents on its website that "[w]e freeze our ingredients at peak ripeness, typically within 24 hours of harvest, to lock in flavor and nutrients, reduce food waste, and eradicate the need for additives or harmful preservative."[7]

**B. Defendant Stone Gate Foods**

16. Defendant Stone Gate Foods, according to its website, is a "specialty food manufacturer" that has served "retail, food service and private label companies throughout the country for the last 44 years."[8]

17. Stone Gate Foods' website states that: "Specializing in frozen foods, our proven expertise in specialty food development and manufacturing has made us the go-to co-packaging facility and private label manufacturer for top brands throughout the United States."[9]

18. Stone Gate Foods advertises that its "40,000 square-foot flexible manufacturing facility specializes in the production of a wide variety of both ready-to-eat and ready-to-cook frozen food products for Private Label and Contract Manufacturing."[10]

19. Defendant Stone Gate Foods represents on its website that "WE MAKE SAFETY A PRIORITY."[11]

20. Stone Gate states that "All of our products are developed by professional chefs and are carefully crafted using the very best ingredients. From homestyle to bistro, barbecue to bar food, food brands trust Stone Gate Foods to create extraordinary products of the highest quality."[12]

---

[7] *Id*.
[8] *See* https://stonegate-foods.com/ (last accessed August 15, 2022).
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *See* https://stonegate-foods.com/brands/ (last accessed August 15, 2022).

C. **Daily Harvest French Lentil + Leek Crumbles**

21. At the end of April 2022, defendant Daily Harvest introduced a new plant-based protein line of foods intended to be a substitute for ground meat, of which one of the new products was "French Lentil + Leek Crumbles."[13]

22. Defendant Stone Gate Foods manufactured and/or produced the food product known as "French Lentil + Leek Crumbles" that was sold and distributed by Daily Harvest.

23. Upon information and belief, the ingredients of the French Lentil + Leek Crumbles included lentil, butternut squash, hemp seed, quinoa, cremini and tara flour.

24. On or about June 19, 2022, defendant Daily Harvest stated on its website that the company had received reports of French Lentil + Leek Crumbles causing gastrointestinal issues.[14]

25. The French Lentil + Leek Crumbles is a frozen product packaged in a 12oz white pouch with the words "Daily Harvest" at the top, a large "CRUMBLES" immediately below the top and the words "French Lentil + Leek" in bold, as shown below:

---

[13] Dani Blum, *Daily Harvest Recalls Lentil and Leek Crumbles After Consumers Fall Ill*, THE NEW YORK TIMES (June 24, 2022) available at: https://www.nytimes.com/2022/06/24/well/eat/daily-harvest-recalls-meat-substitute.html.
[14] Daily Harvest, https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory# (last accessed June 27, 2022).



Figure 1

26. Daily Harvest told customers "to dispose of the product and not eat it."[15]

27. On June 23, 2022, defendant Daily Harvest announced that it was recalling its French Lentil + Leek Crumbles due to consumer reports of gastrointestinal illness.

28. According to defendant Daily Harvest, all lot codes of the French Lentil + Leek Crumbles are affected by the recall.

---

[15] *Id.*

29.     Defendant updated its website to include the following statement:

*Published June 23, 2022 at 6:10PM ET*

Daily Harvest has voluntarily recalled all French Lentil + Leek Crumbles due to consumer reports of gastrointestinal illness and potential liver function issues.

From April 28 to June 17, 2022, approximately 28,000 units of the recalled product were distributed to consumers in the continental United States through online sales and direct delivery, as well as through retail sales at the Daily Harvest store in Chicago, IL and a "pop-up" store in Los Angeles, CA. Samples were also provided to a small number of consumers. Daily Harvest directly notified by email those consumers who were shipped the affected product, and other consumers for whom the company had contact information, and consumers were issued a credit for the recalled product.

Consumers who may still have the recalled product in their freezers should immediately dispose of it.

French Lentil + Leek Crumbles is a frozen product packaged in a 12oz white pouch with the words "Daily Harvest" at the top, a large "CRUMBLES" immediately below the top and the words "French Lentil + Leek" in bold, as shown below. All lot codes of the French Lentil + Leek Crumbles are affected. No other Daily Harvest products are affected or part of this recall.

To date, the company has received approximately 470 reports of illness or adverse reactions. Consumer safety is our highest priority, and we have taken immediate steps to stop production and distribution of the product and conduct a root cause investigation, which is ongoing.

This recall is being made in cooperation with the U.S. Food and Drug Administration. Consumers who have questions or would like to report adverse reactions should contact Daily Harvest by email at crumbles-recall@daily-harvest.com or by visiting https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory# or by calling 1-888-302-0305 9am – 9pm Eastern Time, 7 days a week.[16]

30.     On July 19, 2022, Daily Harvest announced that it had identified the ingredient "tara flour" as the cause of the gastrointestinal illness outbreak.

31.     Daily Harvest's website update as of July 19, 2022, stated in bold typeface:

---

[16] Daily Harvest, https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory#.

7

> **At this time, we have identified tara flour as the cause of the issue. Our extensive investigation has involved many experts analyzing data from all sources. We have only used this ingredient in French Lentil + Leek Crumbles and we are no longer sourcing from this producer who does not provide any ingredients for our 140+ other items. This was the first and only time we've used tara flour, which has been available and used in the North American market as a plant-based source of protein prior to our use. Our investigation team will continue working with the FDA, the tara flour producer and others to help determine what specifically made people sick.**[17]

D. <u>Plaintiff's Injury</u>

32. At all relevant times, plaintiff Breeanne Buckley Peni purchased and consumed French Lentil + Leek Crumbles that were prepared, marketed, sold and distributed by defendant Daily Harvest.

33. Plaintiff first subscribed to defendant Daily Harvest's meal delivery products in or about May 2022.

34. In May 2022, plaintiff made an online purchase of the French Lentil + Leek Crumbles from Daily Harvest.

35. Said food product was delivered to plaintiff on or about May 24, 2022.

36. Plaintiff last consumed the French Lentil + Leek Crumbles on or about June 10, 2022.

37. After consuming "French Lentil + Leek Crumbles" plaintiff became violently ill with gastrointestinal illness and was hospitalized.

38. Plaintiff's initial symptoms included fever, nausea, extreme abdominal pain, chills and joint pain.

39. On or about June 12, 2022, plaintiff was hospitalized.

---

[17] Daily Harvest, https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory#.

40.     As a result of her illness from consuming French Lentil + Leek Crumbles made with tara flour, plaintiff suffered gastrointestinal injury that required surgery to remove her gallbladder.

41.     Plaintiff remained hospitalized until being discharged on or about June 17, 2022.

42.     As a direct and proximate result of the foregoing, plaintiff suffered general and special, incidental, and consequential damages which shall be fully proven at the time of trial, including, but not limited to both past and future damages for: bodily injury, pain and suffering, loss of enjoyment of life, risk of future injury, medical and medical related expenses, travel and lodging related expenses, lost wages, emotional distress and other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## V.     CLASS ALLEGATIONS

43.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

44.     Plaintiff brings this action on behalf of herself and under Fed. R. Civ. P. 23 (a), (b)(1), (b)(2) and (b)(3) as representative of a class of persons who are asserting claims for personal injuries against defendants caused by the recall of contaminated French Lentil + Leek Crumbles.

45.     Plaintiff proposes a Nationwide Class defined as follows:

> All persons in the United States (including its territories) who purchased, received, or consumed French Lentil + Leek Crumbles ("the Product" or "the Crumbles") and directly suffered personal injuries caused by the consumption of the Crumbles, and all persons in the United States (including its territories) who suffered consequential monetary damages arising from or related to another person's personal injuries arising from consumption of the Crumbles.

46.     Excluded from the Classes are defendants, their officers, directors, current employees, subsidiaries, corporate affiliates, successors or assigns and the judicial officers assigned to this case and their immediate family members.

47. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

48. The exact number of members of the class, as identified above, is not known to plaintiff, but upon information and belief, exceeds 450 persons and is sufficiently numerous such that joinder of individual members herein is impracticable.

49. Upon information and belief, the putative class members are readily identifiable through records in the possession of defendants that identify their online subscription based customers who purchased and were delivered the subject food products.

50. Certification of plaintiff's claims for class-wide treatment is appropriate because plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51. The members of the putative class are mutually and commonly aggrieved and the relief sought is common to the entire class and, if granted, would commonly benefit the entire class.

52. There are numerous questions of law and fact common to plaintiff and the class, including:

    a. Whether defendants sold the French Lentil + Leek Crumbles products containing tara flour that were unreasonably dangerous, defective, adulterated, and not safe or fit for human use and consumption;

    b. Whether defendants failed to adequately warn plaintiff and the class of dangers that accompanied the use and consumption of the French Lentil + Leek Crumbles products containing tara flour;

    c. When defendants knew or should have known of an outbreak of gastrointestinal illness caused by the French Lentil + Leek Crumbles and whether defendants failed to timely notify plaintiff and the class of said danger;

    d. Whether defendants failed to exercise reasonable care in the preparation, marketing, sale and distribution of the French Lentil + Leek Crumbles products containing tara flour;

    e. Whether defendants failed to adequately monitor the safety and sanitary conditions of their food products, facilities and services;

    f. Whether defendants failed to apply reasonable policies and procedures so as to ensure the safety and sanitary conditions of the French Lentil + Leek Crumbles containing tara flour products sold to the public, including plaintiff;

    g. Whether defendants failed to prevent gastrointestinal injury to persons who consumed the French Lentil + Leek Crumbles products;

    h. Whether defendants failed to properly train their agents, servants and employees how to ensure the safety of their food products; and

    i. Whether defendants violated applicable laws, rules, and regulations including, but not limited to, sections 199-a and 200 of the NYS Agriculture and Markets Law and section 331 of the Federal Food, Drug and Cosmetics Act, 21 U.S.C., § 301 et seq.

53. Common questions of fact and law predominate over any questions affecting only individual members of the class, including but not limited to the alleged acts and omissions and breach of defendants' legal duties set forth herein.

54. Plaintiff's claims herein are typical of the claims of the class, in that the claims of all members of the class, including plaintiff, depend on a showing of the acts and omissions of defendant giving rise to the right of plaintiff to the relief sought.

55. Plaintiff will fairly and adequately protect the interests of the respective class members in that plaintiff has such a plain, direct, and adequate interest in the outcome of the controversy to assure the adequacy of the presentation of the issues involved herein. Plaintiff has no interest which is adverse to any interest of the class members.

56. Plaintiff has retained competent counsel with substantial experience litigating class claims in both state and federal court, including the successful class certification of claims for personal injury arising out of water and foodborne outbreaks of gastrointestinal illness.

57. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither plaintiff nor her counsel have interests adverse to the class.

58. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

59. Class treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of evidence, testimony and effort. Class treatment will further avoid the risk of inconsistent rulings and judgments on common issues of fact and law that individual actions would endanger.

60. Absent class certification, individual litigation of the claims would be unreasonably expensive in light of the probable recoverable damages, burdensome upon the court, and would waste resources otherwise available to compensate the class.

61. Absent class certification, the claims of any infant class members may be untimely.

## VI. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Strict Liability)**

62. Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

63. Defendants received monetary benefit from the sale of their food products.

64. Defendants had a duty to provide the aforesaid food products in such condition that they would be reasonably safe for consumption and to warn plaintiff of any dangers which could accompany such use.

65. At all relevant times, the food manufactured, produced, prepared, packaged, marketed, sold and distributed by defendants was unreasonably dangerous, defective, and not safe and fit for its intended use and purpose by plaintiff.

66. Defendants failed to warn plaintiff of dangers which could accompany the consumption of food that they manufactured, produced, prepared, packaged, marketed, sold and distributed.

67. Upon information and belief, defendants had actual and/or constructive knowledge of the nature and the condition of the safety of the food products, facilities and services that they provided and/or should have had such knowledge in the exercise of reasonable care.

68. Defendants are strictly liable to plaintiff for placing said food products into the stream of commerce for consumption by members of the public, including plaintiff.

69. As a direct and proximate result of the foregoing, plaintiff suffered personal injuries and seeks general, special, incidental, and consequential damages in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION
### (Breach of Express and Implied Warranties)

70.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

71.     At all relevant times that defendants manufactured, produced, prepared, packaged, marketed, sold and distributed their food products, said defendants expressly and implicitly represented and warranted that such food products were reasonably safe, wholesome, merchantable, and fit for the intended and ordinary use by consumers, including plaintiff.

72.     Defendants' representations and warranties were directed at purchasers and consumers of its food products, including plaintiff, who were intended beneficiaries of same.

73.     The representation and warranties of defendants with respect to the food consumed by plaintiff were breached in that said food sold to plaintiff was not safe or fit for human use, and was not of merchantable quality, and in fact was otherwise dangerous and unsafe, all in violation of defendant's express statements and implied warranties of merchantability.

74.     As a direct and proximate result of the foregoing, plaintiff suffered personal injuries and seeks general and special, incidental, and consequential damages in an amount to be determined at the time of trial.

## THIRD CAUSE OF ACTION
### (Negligence)

75.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein

76.     Defendants owed a duty to the plaintiff to use reasonable care in connection with the preparation, marketing, sale and distribution of their food products.

77.     Defendants had a duty to ensure that the food prepared, marketed, sold and distributed to plaintiff was safe for its intended use, and in a sanitary condition.

78.     Defendants owed a duty to comply with all applicable state and federal laws and

regulations governing the preparation, marketing, sale and distribution of its food products, including but not limited to New York State Agriculture and Markets Law §§ 199-a, 200, and the Federal Food, Drug and Cosmetics Act, 21 U.S.C., § 301 et seq., which prohibit the sale of food that is unsafe for consumption by the public.

79. Defendants breached their duties owed to plaintiff.

80. The food manufactured, produced, prepared, packaged, marketed, sold and distributed by defendants that was consumed by plaintiff was unsafe, adulterated and unfit for human consumption.

81. Defendants committed the following acts and omissions of negligence:

   a. Defendants failed to exercise reasonable care in the preparation, marketing, sale and distribution of their food products;

   b. Defendants failed to adequately monitor the safety of their food products, facilities and services;

   c. Defendants failed to apply reasonable policies and procedures so as to ensure the safety of the food they sold to the public, including plaintiff;

   d. Defendants failed to provide proper warnings and safeguards to persons who purchased and consumed their food products, including plaintiff;

   e. Defendants failed to prevent the adulteration of food and prevent gastrointestinal injury to persons who consumed their food products, including plaintiff;

   f. Defendants failed to properly train their agents, servants and employees how to ensure the safety of the food they sold to the public, including plaintiff; and

   g. Defendants violated applicable laws, rules, and regulations including, but not

limited to, sections 199-a and 200 of the NYS Agriculture and Markets Law and section 331 of the Federal Food, Drug and Cosmetics Act, 21 U.S.C., § 301 et seq.

82. Defendants' breach of their duty in violation of the aforementioned statutory laws and regulations constitutes negligence *per se*.

83. As a direct and proximate result of defendants' negligence and negligence per se, plaintiff was injured, and said injury was foreseeable.

84. As a direct and proximate result of the foregoing, plaintiff suffered personal injuries and seeks general and special, incidental, and consequential damages in an amount to be determined at the time of trial.

## VII. DEMAND FOR TRIAL BY JURY

Plaintiff demands a jury trial on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendants as follows:

A. Certifying this action as a class action;

B. Appointing the named plaintiff as class representative;

C. Appointing the undersigned counsel as class counsel;

D. Awarding compensatory and special damages, together with pre and post judgment interest, in an amount to be determined at trial;

E. Granting declaratory relief adjudicating the parties' legal rights and obligations;

F. For the costs, disbursement, and reasonable attorneys' fees of this action; and

G. For such other and further relief as this Court deems just and proper.

Dated: September 30, 2024

Respectfully,


*/s/ James R. Peluso*

_____
James R. Peluso (Bar Roll # JP2875)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, New York 12210
Telephone: (518) 463-7784
jpeluso@dblawny.com

Joseph E. O'Connor (Bar Roll # JO5185)
O'CONNOR & PARTNERS, PLLC
255 Wall Street, Kingston, NY 12401
Telephone: (845) 303-8777
joconnor@onplaw.com

William D. Marler
MARLER CLARK, INC. P.S.
1012 First Avenue, Fifth Floor
Seattle, WA 98104
Telephone: (206) 346-1888
bmarler@marlerclark.com

Paul V. Nunes (Bar Roll # PN2853)
HEISMAN NUNES & HULL LLP
1603 Empire Blvd., Suite 3B
Webster, NY 14580-2182
Telephone: (585) 270-6922
pnunes@nhhattorneys.com

Jeffrey A. Bowersox
BOWERSOX LAW FIRM, P.C.
385 1st Street, Suite 215
Lake Oswego, OR 97034
Telephone: (503) 452-5858
jeffrey@bowersoxlaw.com

*Counsel for Plaintiff and the Proposed Class*