UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Breeanne Buckley Peni, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>    v.<br><br>DAILY HARVEST, INC., SECOND BITE FOODS, INC. d/b/a "STONE GATE FOODS", SMIRK'S LTD., AND MOLINOS ASOCIADOS SAC,<br><br>                          Defendants. | Civil Action No. 22-cv-05443<br>Honorable Denise Cote |

**JOINT DECLARATION OF PLAINTIFF'S COUNSEL IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, APPOINT CLASS COUNSEL, APPROVE PROPOSED CLASS NOTICE, AND SCHEDULE A FINAL APPROVAL HEARING**

William D. Marler, James R. Peluso, and Jeffrey A. Bowersox, pursuant to 28 U.S.C. § 1746, hereby declare that the foregoing is true and correct to the best of their knowledge:

1. We submit this Joint Declaration in support of the accompanying Unopposed Motion to Preliminarily Approve Class Action Settlement, Appoint Class Counsel, Approve Proposed Class Notice, and Schedule a Final Approval Hearing.[1]

2. We are counsel for Plaintiff Breeanne Buckley Peni and the proposed Class Counsel for the putative Settlement Class.

3. We have personal knowledge of the facts set forth in this declaration, and if called upon to testify, we could and would testify competently thereto.

---

[1] All capitalized terms herein shall have the meanings ascribed by the Settlement Agreement (Exhibit 1).

4. This action is part of the coordinated Daily Harvest Litigation (the "Litigation").

5. After several months of arms-length negotiations and settlement discussions—including multiple in-person conferences and telephonic conferences with the Hon. Sarah L. Cave, Magistrate Judge, and several in-person and remote conferences with retired NAM Judge Peter B. Skelos—Plaintiff and Defendants Smirk's Ltd. ("Smirk's") and Molinos Asociados SAC ("Molinos") entered into a Settlement Agreement (the "SA") in this matter, a true and correct copy of which is attached hereto as **Exhibit 1**.

6. The following exhibits are submitted in support of the motion herein:

| | |
|---|---|
| Exhibit 1 | Executed Settlement Agreement |
| Exhibit A | Proposed Third Amended Class Action Complaint; |
| Exhibit B | Proposed Preliminary Approval Order; |
| Exhibit C | Proposed Settlement Notice; |
| Exhibit D | Proposed Final Judgment; |
| Exhibit E | Proposed Claim Form; |
| Exhibit F | Proposed Allocation Matrix; |
| Exhibit G | Firm Resumes of the Proposed Class Counsel; and |
| Exhibit H | Class Counsel Unreported Cases. |

7. The proposed settlement resolves all litigation against Defendants Smirk's and Molinos (the "Settling Defendants") arising out of Plaintiff's and the putative Class Members' consumption of Daily Harvest's French Lentil + Leek Crumbles ("the Product" or "the Crumbles").

8. The Court previously issued an Order Granting Preliminary Approval of a class settlement with defendants Daily Harvest and Stone Gate (Doc. 77), and the Final Approval Hearing is scheduled for October 15, 2024. (Doc. 78).

9. The parties have similarly agreed to a class settlement mechanism with Smirk's and Molinos to potentially resolve over four hundred fifty (450) individual claims asserted against the Settling Defendants. The settlement globally resolves these claims without the need to litigate, at hundreds of individual trials, issues of proof specific to any class member, such as causation or damages. The class mechanism allows all putative Class Members to join the Settlement and will provide certainty and finality to those Class Members who do not opt-out.

**FACTUAL AND PROCEDURAL BACKGROUND.**

10. The Crumbles were manufactured for Daily Harvest by Stone Gate Foods using an ingredient known as tara flour. This tara flour was supplied to Stone Gate Foods by Smirk's, which sourced it from Molinos.

11. Plaintiff alleges that consumption of the tara flour-containing product caused her to experience personal injuries, characterized by onset of gastrointestinal illness symptoms, which resulted in medical treatment, hospitalization, and surgical cholecystectomy.

12. On June 27, 2022, Plaintiff Peni filed her Class Action Complaint alleging causes of action for strict liability, breach of warranty, and negligence against Daily Harvest, Inc. (Doc. 1). On August 17, 2002, Plaintiff amended her complaint to add Stone Gate Foods as a defendant. (Doc. 21). Following a motion to compel arbitration by Daily Harvest that was granted on November 10, 2022 (Doc. 36), Stone Gate moved to dismiss the class action allegations in the Amended Complaint. (Doc. 41). Plaintiff then stipulated to discontinue her claims against Stone

Gate Foods without prejudice (Doc. 47), pending ongoing settlement negotiations to globally resolve the Litigation. (Doc. 44, 51-64).

13. Plaintiff's case has since been subject to the Court's Coordinated Order in the Litigation, which was entered "to enhance judicial efficiency, avoid undue burden and promote the just and coordinated resolution of all the cases that involve the same subject matter as the Daily Harvest Litigation." (*In re: Daily Harvest, Inc. Products Liability Litigation*, Case No. 1:22-cv-05987 at Doc. 165, Coordination Order dated April 28, 2023).

14. Specifically, Plaintiff's action is one of eighty-four (84) active lawsuits in New York federal and state courts filed in the Litigation against the Settling Defendants, of which sixty-one (61) suits are pending in the Southern District of New York. This includes *Albright v. Daily Harvest Inc., et al* (Case No. 22-cv-05987 DLC) currently pending before this Court.

15. Your declarant, William D. Marler of the law firm Marler Clark, Inc. PS, represents eighty (80) of the plaintiffs with active lawsuits filed in New York federal and state courts, and approximately two-hundred sixty (260) additional putative Class Members.

16. Plaintiff Peni is represented by your declarant James R. Peluso of the law firm Dreyer Boyajian LLP, which represents thirty (30) additional putative Class Members.

17. Your declarant, Jeffrey A. Bowersox of Bowersox Law Firm, PC, represents one (1) of the plaintiffs with active lawsuits filed in New York federal and state courts, and seventy-seven (77) additional putative Class Members.

18. In total, approximately four hundred forty-nine (449) putative Class Members are represented by counsel who have signed the proposed Settlement Agreement. (Ex. 1).[2]

---

[2] Other than the 449 Claimants represented by Class Counsel, approximately sixty (60) additional Claimants are represented by thirty-five (35) other counsel across the U.S.

19. In brief, the Settling Parties engaged in extensive investigation and other litigation efforts throughout the prosecution of the Litigation, including, inter alia: (1) researching and drafting the initial and amended complaints in the Litigation; (2) researching the applicable law with respect to the claims in the Litigation and the potential defenses thereto; (3) engaging in significant fact discovery, including document and witness discovery, exchange of scientific studies about the use of tara flour in food, and disclosure of medical records for hundreds of claimants; (4) engaging in extensive settlement discussions; and (5) participating in court-assisted mediation and settlement conferences.

20. After extensive arm's length negotiations, the Parties reached an agreement to settle the Litigation against the Settling Defendants for the amount of $7,671,000.

21. The Parties thereafter worked to draft and finalize the terms of the Settlement in the Settlement Agreement. (Ex. 1).

22. Pursuant to the Settlement Agreement, upon the Court's granting of the Preliminary Approval Order, Plaintiff Peni shall file the Third Amended Class Action Complaint against the Settling Defendants. (Ex. A).

23. The claims against the Settling Defendants would then be stayed in all pending actions, and then dismissed if the Court grants a Final Judgment approving the Class Settlement. (Ex. D).

24. We can state as of record that there was no collusion of any kind between counsel for the Settling Parties and that all negotiations culminating in the proposed Settlement were at arm's length and hard-fought.

25. As demonstrated by the attached resumes of the proposed Class Counsel (Ex. G, Firm Resumes), your declarants have substantial experience in the litigation, certification, and

settlement of class action cases, and specifically in cases involving outbreaks of food and waterborne illnesses. (Ex. H, Unreported Decisions).

26. Based on our experience, the Settling Defendants' counsel are also highly experienced in this type of litigation.

27. It is our joint considered opinion that counsel for each Settling Party has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe that the proposed Settlement Agreement fairly resolves the Litigation.

28. In assessing the merits of the proposed Settlement, the proposed Class Counsel considered the risks and uncertainties of ultimately prevailing at trial in light of various factors. As with any litigated case, Plaintiff and the putative Class Members face an uncertain outcome at trial, including the risk of enforcing a judgment because of the limited insurance coverage available to satisfy the hundreds of claims asserted against the Settling Defendants.

29. The proposed Settlement Agreement eliminates the attendant risks of litigation by providing Plaintiff and the putative Class Members a substantial and certain recovery of valuable benefits in a timely manner and avoiding further delay and the risk of loss that might result from further litigation, trial, and appeals.

30. The undersigned have litigated all kinds of cases involving food and waterborne pathogens. The instant Litigation alleging foodborne illness caused by the consumption of tara flour is, to our knowledge, the first litigation of its kind. The Settling Defendants have raised a number of factual and legal defenses relative to the tara flour, including issues related to general and individual causation and the admissibility of scientific expert proof.

31. In addition, Molinos Asociados SAC is a foreign company based in Peru that does not have liability insurance and contests jurisdiction. The proposed settlement resolves all cross

claims among the defendants and, together with the Daily Harvest and Stone Gate settlement, would achieve a global settlement of this matter.

32.     We further understand that the proposed settlement amount of $7,671,000 is to be paid into the Settlement Fund by Citizens Insurance Company of America and The Hanover Insurance Company (collectively, "the Settling Insurers") on behalf of Smirk's. The Settling Insurers shall also contribute $25,000 to cover Smirk's portion of the Settlement Notice. Molinos, which is uninsured, will also contribute $25,000 towards the Settlement Notice. This settlement is intended to resolve all Class Members' claims under this Settlement Agreement. As further discussed below, the settlement with Smirk's includes the remaining balance of Smirk's insurance coverage.

33.     Indeed, in light of the risks, uncertainties, limited insurance coverage, and delays associated with continued litigation, the proposed Settlement addresses these risks by providing guaranteed monetary benefits to the putative Class Members who participate in the Settlement Program.

34.     For all of the reasons set forth in the motion papers herein, your declarants submit that the proposed Settlement Agreement is fair, reasonable, and is in the best interest of Plaintiff and the putative Class Members.

**SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT.**

**A.    The Proposed Rule 23(b)(3) Class**

35.     For the purposes of settlement, the Settling Parties request that the Court conditionally certify that the proposed settlement class (the "Settlement Class") be defined as follows, with French Lentil + Leek Crumbles being the brand name:

> All persons in the United States (including its territories) who purchased, received, or consumed French Lentil + Leek Crumbles

and directly suffered personal injuries caused by consumption of the Crumbles, and all persons in the United States (including its territories) who suffered consequential monetary damages arising from or related to another person's personal injuries arising from consumption of the Crumbles.

36. Should the Court grant preliminary approval of the Settlement, Plaintiff proposes to file a Third Amended Class Action Complaint against the Settling Defendants in the form attached hereto as "Exhibit A." The claims against the Settling Defendants would then be stayed in all pending actions, and then dismissed if the Court grants the Final Judgement. (Ex. D).

### B. The Proposed Class Notice

37. The Settlement Agreement provides for the proposed Class Notice and settlement claims procedure to be administered by a neutral third-party Settlement Administrator, who is responsible for disseminating the Class Notice, establishing the Settlement Website, receiving Opt-Out requests and Objections, receiving Claim Forms, reviewing and evaluating claims, allocating individual awards to class members, and distributing settlement proceeds to approved claimants. A summary of the proposed timetable for the notice and administration process is detailed below.

38. The Settlement Agreement provides for dissemination of a Notice of Proposed Class Action Settlement (Exhibit C) within twenty (20) business days of entry of the Preliminary Approval Order. (SA ¶ 7). Class Counsel shall provide the Settlement Administrator with the Class Notice List, which will include the names, last known email addresses, and, if no e-mail addresses are available, postal addresses, to the extent available, belonging to all Class Members. (SA ¶ 6).

39. Shortly after receiving the Class List, the Settlement Administrator will send the Settlement Notice via email and if unavailable or returned as undeliverable, then by U.S. Mail.

(SA ¶ 7). The Settlement Notice will provide Class Members with pertinent information regarding the Settlement as well as direct them to the Settlement Website, and the contact information for Class Counsel. The Settlement Notice shall advise the Class Members of their rights under the Settlement, including the procedures specifying how to request exclusion from the Settlement or submit an objection to the Settlement. (SA ¶ 9).

40. On the date of issuance of the Settlement Notice, the Settlement Administrator shall post the Settlement Website, which will include the Settlement Agreement, the Settlement Notice, relevant pleadings and Court orders regarding the Settlement, and a list of frequently asked questions mutually agreed upon by the Parties. Contact information for the Settlement Administrator, including a toll-free number, as well as Settlement Class Counsel's contact information will also be provided. (SA ¶ 1.44).

41. The form and method of the Class Notice agreed to by the Settling Parties satisfies all due process considerations and meets the requirements of Rule 23(e)(1)(B). The proposed Settlement Notice describes plainly: (i) the terms and effect of the Settlement Agreement; (ii) the time and place of the Final Approval Hearing; (iii) how the recipients of the Class Notice may object to the Settlement; (iv) the nature and extent of the release of claims; (v) the procedure and timing for objecting to the Settlement; and (vi) the form and methods by which Class Member may either participate in or exclude themselves from the Settlement. (Exhibit C).

**C. Monetary Terms**

42. The proposed Settlement Agreement provides for a monetary settlement of Seven Million, Six Hundred and Seventy-One Thousand Dollars ($7,671,000.00) to be allocated among the Class Members who submit an approved Claim Form through a claims process (the "Settlement Program") to be administered by the court-appointed Settlement Administrator. (SA

¶ 32). The settlement will completely resolve the litigation of all claims as to the Settling Defendants, permitting the Court to dismiss said claims and enter judgment if the settlement is approved following the Final Approval Hearing.

43. The proposed Settlement Agreement provides that the settlement administration costs will be paid from the Settlement Fund. (SA ¶ 1). The proposed Settlement Agreement allocates up to $500,000 for the Settlement Administrator's expenses, in addition to the $500,000 previously allocated for the Daily Harvest-Stone Gate Settlement. Any remaining funds shall be distributed to claimants on a pro rata basis. (SA ¶ 31).

### D. Opt-Out Procedure and Holdbacks

44. Class Members have thirty-five (35) days from the Notice Date to opt-out of the proposed Settlement. (SA ¶ 1.31). Opt-out requests may be submitted online or by mail. (SA ¶ 13).

45. It is agreed that Smirk's will withhold a portion of its total contribution to the Settlement Fund for a specified period of time to cover its reasonable material exposure relative to the potential litigation or claims from Opt-Outs (the "Class Action Hold Back Amount"). Any remaining funds from this hold back will be distributed pro rata to members of the Class Action no later than December 31, 2026.

46. It is also agreed that Smirk's and its insurers will hold back $753,712.16 for claims already made against the Citizens/Hanover policies (the "Claims Hold Back Amount"). Within thirty (30) days of Hanover's closing of all claims related to the Claims Hold Back Amount, Hanover shall provide the plaintiff with a written statement of the amounts paid, along with reference claim numbers used in the resolution of the unrelated pending claims against Smirk's, once all such claims are resolved. If any of the $753,712.16 is not paid on those other claims,

within thirty (30) days of Hanover's closing of all claims related to the Claims Hold Back Amount, Hanover will pay the remainder of the unpaid amount to the Qualified Settlement Fund and it will then be distributed to the members of the Class Action on a pro rata basis.

### E. Claim Forms, Monetary Awards, and Appeals

47. The net Settlement Funds will be distributed to Class Members who file a Claim Form and meet the Eligibility Requirements for the payment of a Monetary Benefit. Each Claim Form shall be evaluated by the Settlement Administrator pursuant to the Allocation Matrix to determine the amount of the Monetary Benefit award. (SA ¶¶ 26-28, 32-35). The Settlement Program includes a Cure Period to submit any supplemental Required Documentation in support of the Claim. (SA ¶ 36). Class Members shall have the right to serve an Appeal upon the Settlement Administrator if their claim is denied. A Claimant who disagrees with the appeal ruling of the Settlement Administrator may appeal to the Court within fourteen (14) days of the Settlement Administrator's appeal determination by submitting a written statement to the Court at Attn: Hon. Judge Denise Cote, Case No. 1:22-cv-05443-DLC, United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, outlining the Claimant's position and why the Claimant believes the Settlement Administrator has erred. The appeals process shall not result in any modification of substantive eligibility criteria. The Court shall issue a determination on the appeal in writing, which shall be served on the Claimant (and the Claimant's counsel, where applicable) and the Settlement Administrator. Decisions of the Court are final and binding. (SA ¶ 37).

48. By submitting a Claim Form, a Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the terms of the Settlement Agreement and the releases provided for in the Final Approval Order and

11

Judgment. (SA ¶ 38).

### F. Attorney's Fees and Costs

49. The proposed Class Counsel are not requesting an award of attorneys' fees directly from the Settlement Fund. Rather, Class Counsel and the attorneys for individual Class Members shall be compensated pursuant to the retainer agreements between Plaintiffs, Class Members, and their respective counsel. (SA ¶ 55). If a Class Member is not represented by counsel and does not have an attorney lien resulting from previous representation relating to the Crumbles, then any Monetary Benefit awarded to said Unrepresented Claimant shall be reduced by one-third (1/3) under the terms of the Settlement Agreement. In effect, Class Counsel is requesting that the Court impose a 1/3 attorney's fee award for any Monetary Benefit paid to Unrepresented Claimants, however, that the value of said fee award be deposited back into the Settlement Fund. Class Counsel submits that the proposed 1/3 reduction represents a fair method of allocating the Settlement Funds to Unrepresented Claimants and treats each Class Member equitably.

### G. Dismissal and Release of Claims

50. Upon entry of the Final Approval Order, the Settlement Class Members shall be deemed to have forever released any and all claim against the Settling Defendants for any damages arising from or related to personal injury caused by the consumption of the French Lentil + Leek Crumbles. (SA ¶ 56). These releases are also described in the proposed Settlement Form Notice (Exhibit C) and Claim Form (Exhibit E).

### H. Summary of Proposed Timetable

51. The parties request that the Court schedule a Final Approval Hearing 143 days after the order granting preliminary approval. *See* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS § 6:18 (11th ed. 2014) ("Courts have consistently held that 30 to 60 days

between the mailing (or other dissemination) of class notice and the last date to object or opt out, coupled with a few more weeks between the close of objections and the settlement hearing, affords class members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement.").

52. To afford the putative class adequate notice and opportunity to be heard, Plaintiff proposes the following timetable of settlement-related events:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline for Parties to deposit funds into Qualified Settlement Fund ("QSF") for administration costs. | Within 10 business days after entry of preliminary approval order. |
| Deadline for publication and emailing of settlement notice to begin. | 20 business days after entry of preliminary approval order. |
| Deadline for class members to:<br><br>• Submit an Opt-Out request to be excluded from the Settlement;<br>• File an Objection to the Settlement; and/or<br>• File intention to appear at Final Approval Hearing. | 35 days after first publication/emailing of notice. |
| Deadline for attorneys representing any Class Member objecting to the Settlement to enter their appearance. | 75 days after first publication/mailing of notice. |
| Deadline for Class Members to submit a Claim Form. | 75 days after first publication/emailing of notice. |
| Deadline for the Settling Parties to file motion for final approval of the proposed Settlement. | No later than fourteen (14) days prior to the Final Approval Hearing. |

13

| Deadline for Parties to file all papers in response to any timely and valid Objections. | Fifteen (15) business days prior to Final Approval Hearing. |
|---|---|
| Final Approval Hearing. | 143 days after Preliminary Approval Hearing. |

## THE METHOD OF DISTRIBUTING THE SETTLEMENT FUNDS IS FAIR AND ADEQUATE.

53. The method of distributing the Settlement Funds pursuant to the Settlement Agreement's claims process ("Settlement Program") is fair and adequate.

54. The negotiated terms of the Settlement Program, including the Allocation Matrix, is the product of extensive work by and among the counsel who drafted and executed the Settlement Agreement, and who, as discussed, represent over four-hundred forty-nine (449) putative Class Members.

55. To receive a settlement award ("Monetary Benefit"), each Class Member must submit a Claim Form with the Required Documentation by the Claim Deadline. (SA ¶¶ 32-35).

56. The court-appointed Settlement Administrator will review each Class Member's claim pursuant to a set of uniform criteria in considering, evaluating, and making individual settlement awards. (SA ¶ 32); (Ex. F, Allocation Matrix).

57. The Allocation Matrix provides for five categories of claimants: (1)(A) No Direct Personal Injury But Consequential Monetary Damages, (1)(B) Personal Injury But No Medical Treatment, (2) Personal Injury With Medical Treatment, (3) Personal Injury With Hospitalization, (3) Personal Injury With Cholecystectomy, and (5) Enhancement Awards. (Ex. F). Each category will be funded by a gross amount as set forth in the Allocation Matrix. Based on the current number of known claimants, the estimated Monetary Benefit payable to claimants in Categories 1A, 1B, 2, 3 and 4 is $165, $335, $5,000, $10,000, and $43,330, respectively. Claimants in Categories 2, 3

14

and 4 are also eligible to apply for an Enhancement Award per the criteria in Category 5.

58.     As discussed above, the Settlement Program includes a Cure Period and process to file an Appeal of the Settlement Administrator's determination in evaluating and making settlement awards.

59.     Any amounts remaining in the Settlement Fund after the Settlement Administrator applies the Allocation Matrix pursuant to the Settlement Program, or any later payment of Hold-Back amounts back into the Fund, shall be paid to Qualified Class Members on a pro rata basis. (SA ¶ 35).

60.     Accordingly, the method for processing claims and distributing the Settlement Fund among the Class Members is fair and adequate.

61.     And of course, any Class Member has the right to exclude themselves from the Settlement Class and pursue their own claim. (SA ¶ 13).

## **THE PROPOSED CLASS SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARILY APPROVAL UNDER RULE 23.**

62.     For the reason discussed in the accompanying Memorandum of Law, certification of the proposed Settlement Class, for settlement purposes only, satisfies the criteria for preliminary approval under Rule 23(b)(3).

63.     First, the proposed Class satisfies the requirements of Rule 23(a), including: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the settlement class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the settlement class; and (4) the representative parties will fairly and adequately protect the interests of the settlement class.

64.     Second, the proposed Class satisfies the requirements of Rule 23(b)(3), whereby questions of law or fact common to class members predominate over any questions affecting only

15

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

65. Lastly, the proposed Settlement Agreement satisfies the requirements of Rule (23)(e)(2), including (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members.

### THE PROPOSED PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

66. The proposed Class Counsel have the capabilities and resources to provide adequate representation to the class. As discussed, Plaintiff and the putative Class Members are represented by counsel experienced in class action litigation including directly analogous cases. Indeed, proposed Class Counsel have been appointed class counsel in some of the largest outbreaks of food and waterborne illnesses in New York State and the nation. (Ex. G). Moreover, Class Counsel's work in this case on behalf of Plaintiff and the putative Class Members in the Related Litigation has been substantial.

67. Accordingly, Plaintiff requests that the Court appoint Marler Clark, Inc., P.S., Bowersox Law Firm, P.C., O'Connor & Partners, PLLC, Heisman Nunes & Hull LLP, and Dreyer Boyajian LLP as Class Counsel.

68. Counsel for Plaintiff is not currently aware of any disputes as to settlement approval, distribution of proceeds, or competing claims.

69. Accordingly, Plaintiff requests that the Court approve the Motion for Preliminary Approval of the Settlement.

Dated: October 8, 2024    Respectfully submitted,

/s/ *William D. Marler*

_____
MARLER CLARK, INC. P.S.
180 Olympic Drive S.E.
Bainbridge Island, Washington 98110
Telephone: (206) 346-1888
bmarler@marlerclark.com

/s/ *James R. Peluso*

_____
James R. Peluso (Bar Roll # JP2875)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, New York 12210
Telephone: (518) 463-7784
jpeluso@dblawny.com

/s/ *Jeffrey A. Bowersox*

_____
BOWERSOX LAW FIRM, P.C.
385 1ST Street, Suite 215
Lake Oswego, OR 97034
Telephone: (503) 452-5858
jeffrey@bowersoxlaw.com

*Counsel for Plaintiff and the Proposed Class*