UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                         :
BREEANNE BUCKLEY PENI, individually      :
and on behalf of all others similarly    :
situated,                                :       22cv5443 (DLC)
                                         :
                          Plaintiff,     :
                                         :       OPINION
              -v-                        :       AND ORDER
                                         :
DAILY HARVEST, INC., et al.,             :
                                         :
                          Defendants.    :
                                         :
--------------------------------------- X

APPEARANCES:

For plaintiff Breeanne Buckley Peni:
William Marler
Marler Clark, Inc. PS
180 Olympic Drive S.E.
Bainbridge Island, WA 98110

Joseph Edward O'Connor
O'Connor & Partners, PLLC
255 Wall Street
Kingston, NY 12401

Paul Vincent Nunes
Heisman Nunes & Hull LLP
1630 Empire Blvd., Suite 3b
Webster, NY 14614

James Rocco Peluso, Jr.
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210

For defendant Daily Harvest, Inc.:
Jeffrey S. Jacobson
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036

Justin M. Ginter
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932

Sarah L. Brew
Faegre Drinker Biddle & Reath LLP
90 S. 7th St.
Ste. 2200
Minneapolis, MN 55402

For defendant Second Bite Foods, Inc.:
Joseph C. Baiocco
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, NY 10604

Bryan Thomas Vannini
Wilson Elser Moskowitz Edelman & Dicker LLP
1010 Washington Boulevard, 6th Floor
Stamford, CT 06905

For movant Aleta Reese:
Aleta Reese
<u>Pro se</u>

DENISE COTE, District Judge:

Aleta Reese, a member of the settlement class represented by Breeanne Buckley Peni in her lawsuit against defendants Daily Harvest, Inc. and Second Bite Foods, Inc. ("Settling Defendants"), requests leave to opt out from Peni's class action settlement. For the following reasons, her request is denied.

## **Background**

This Opinion concerns an untimely request by Reese to opt out of participation in a class action settlement. She argues that inadequate notice of the settlement was provided to absent

2

class members.  The background of this request as described
below includes the history of the class action, the process for
providing notice of a settlement to absent class members, and
then Reese's relation to this litigation and her late request to
opt out.

I.  History of the Case

Plaintiff Breeanne Buckley Peni initiated this action on
June 27, 2022.  She alleged that defendant Daily Harvest, Inc.
("Daily Harvest"), a company that sells subscription-based meals
online, sold her a product that caused her severe
gastrointestinal illness resulting in her hospitalization and
surgery to remove her gallbladder.  The product, called "French
Lentil + Leek Crumbles" ("Crumbles"), was alleged to contain an
ingredient, "tara flour," that caused Peni's injuries.  Peni
brought claims for strict liability, negligence, and breach of
express and implied warranties.  She proposed to represent a
class of people who suffered injuries from the same product,
which was recalled in June 2022 due to reports by consumers of
gastrointestinal and liver-related illnesses.  On August 17,
2022, Peni filed an amended complaint, adding as a defendant
Second Bite Foods ("Second Bite"), which manufactured Crumbles
for Daily Harvest.

Dozens of other lawsuits in state and federal court were also filed against the Settling Defendants, alleging claims similar to Peni's.  An Order of August 28, 2023 provided for the coordination of discovery and pretrial scheduling in these lawsuits.  The parties subsequently engaged in substantial discovery overseen by this Court, as well as in settlement conferences with the Honorable Sarah Cave, a U.S. Magistrate Judge in this district.

On May 2, 2024, Peni filed an unopposed motion for preliminary approval of a class action settlement with the Settling Defendants, pursuant to Rule 23(B)(3), Fed. R. Civ. P ("Settlement").[1]  The proposed agreement would cover everyone in the United States who suffered personal injuries alleged to have been caused by Crumbles, as well as anyone who suffered consequential monetary damages arising from another person's alleged personal injuries caused by Crumbles.  The Settlement provided a total sum of just under $23 million in exchange for class members' release of claims.  In a declaration, three of the proposed class counsel attested that they represented 449 putative class members, and that they were aware of 60 other

---

[1] More recently, on September 20, 2024, Peni moved for preliminary approval of a class action settlement with the two other defendants in this litigation, Smirk's Ltd. and Molinos Asociados SAC.  That unopposed motion was granted on October 9.

4

claimants represented by 35 other counsel around the United States.

Following revisions to the notice and the execution of an amended settlement agreement, an Order of May 22, 2024 granted preliminary approval of the Settlement. That Order set a schedule for the Settlement Administrator to notify potential class members of the Settlement. The schedule also provided that Opt-Out Requests would be due July 24, 2024, and objections would be due September 2. Claims by class members who did not opt out could be filed on or before September 2. A hearing on final approval of the Settlement was scheduled for October 15, 2024.

II.  Notice of the Settlement

The Order of May 22, granting preliminary approval to the Settlement, authorized a framework for providing notice to potential class members, pursuant to Rule 23(c) and (e), Fed. R. Civ. P. The proposed settlement notice was approved as to form and content. And the plan for providing notice to the class, as detailed in the agreement memorializing the Settlement ("Agreement"), was found to "constitute[] the best notice practicable under the circumstances" and comply with applicable law.

The Agreement, which the parties signed on May 21, 2024, stated that the parties would provide the Settlement Administrator, Edgar Gentle,[2] with the names, mailing addresses, and email addresses of everyone known to them to have received or consumed Crumbles, or to have asserted a personal injury claim related to Crumbles.  Specifically, Daily Harvest provided Gentle with records listing everyone to whom it sold or shipped Crumbles, including the email addresses that customers used to create accounts and place orders online.  The Settling Defendants supplemented this list with people whose counsel had contacted them seeking compensation.  Having compiled this information, Gentle would then send the settlement notice via email to everyone listed.

There were a couple of exceptions to delivery through email: "If an email address is not available for an individual on the Class Notice List, or an email is returned as undeliverable, the Settlement Notice will be sent to the individual's last known mailing address via U.S. mail."  The Agreement did not mention any plan to track recipients' opening of the email, or that any follow-up steps would be taken with respect to recipients that received but did not open the email.

---

[2] Gentle has extensive experience as a settlement administrator and is well qualified to perform this role.

Apart from sending the notices, Gentle would also activate and maintain a public website providing information about the Settlement, including the settlement notice.

On June 19, 2024, Gentle sent emails with the settlement notice to the above-described list of potential class members, which contained 20,820 email addresses. And on August 25, Gentle again sent the settlement notice to the email list as a reminder to submit claims before the September 2 deadline. In an attempt to avoid spam filters diverting the notice emails from recipients' inboxes, Gentle used a marketing software called Constant Contact, which also produces statistics on the number of recipients who receive and open the email. Gentle took several other steps to "improve deliverability rates," including sending email from a "self-authenticated" domain name that matched the settlement website and optimizing the subject line to avoid spam filters.

Constant Contact reported to Gentle that, of the 20,820 email addresses to which a notice was sent, 9,853 recipients opened the email; 575 clicked the link inside the email to the settlement notice; 533 emails bounced back (at which point a notice was physically mailed to a corresponding mailing address); and 37 recipients "unsubscribed from future email communications." Gentle has not provided similar statistics

7

regarding his August 25 follow-up email.  With respect to the
settlement website, Gentle explained it had around 5,400 total
visitors, 325 of whom had reached the website through an online
search engine.  The "Filing a Claim Form" page of the website
had around 3,000 visitors.

As of the September 2, 2024 claim deadline, Gentle had
received 1,188 claim forms submitted via the settlement website,
the settlement email, "secure portal uploads," physical mail,
and fax.  Of those claimants, around 479 were represented by
counsel and 709 were not.  13 persons had submitted valid opt-
out forms, although five of those individuals subsequently
withdrew their forms and elected to participate in the
Settlement, leaving a total of eight opt-outs.  One objection
was filed.[3]

On September 30, the plaintiff moved for final approval of
the Settlement.  A final approval hearing was held on October
15.  The Settlement was found to be procedurally and
substantively fair under Rule 23, Fed. R. Civ. P., and
applicable Second Circuit and Supreme Court caselaw.  Also at
the hearing, the parties explained and answered questions

---

[3] The parties submitted briefing on this timely filed objection,
submitted by Julie Watson, and oral argument was presented at
the final approval hearing on October 15, 2024.  The objection
was overruled for the reasons stated on the record.  The
objection did not concern the adequacy of notice.

regarding the process for notifying the class of the Settlement, as well as their interactions with Reese.  Notice was found to be adequate, and Reese's request for leave to file an untimely opt-out request was denied.  An Order of October 15 gave Reese 28 days to file a claim.[4]

III. Reese's Claims and Request to Opt Out

The following facts are taken largely from Reese's submissions, filed pro se in October 2024.  Additional facts are taken from the submissions of the Settling Defendants and class counsel, filed in opposition to Reese's October request to opt out.

On May 29, 2022, Reese consumed Crumbles at lunch.  That evening, she was taken to the emergency room at a University of California, San Diego medical facility, due to "severe abdominal pain and uncontrollable vomiting."  Reese subsequently experienced jaundice and elevated liver enzyme levels for five months.  As of October 2024, she continued to experience related health problems and has accumulated more than $100,000 in medical debt and missed wages.

In August 2022, Reese decided to seek compensation for her damages by filing a lawsuit.  She looked up the statute of

---

[4] Her claim form is due to be submitted by November 12, 2024.

limitations on her potential claims and decided to wait until
her "condition was static" to file suit.  She researched what
law firms were participating in litigation related to Crumbles
and emailed Bill Marler, counsel for the plaintiff in this case,
on July 20, 2022.  She explained that she was "poisoned by the
now famous 'Crumbles'" and would be submitting a demand for
compensation or filing a lawsuit.  She said she "would just like
to make sure I am not required to opt out of any default class
actions against the company."  She explained that she was
represented by an attorney[5] and was planning to seek damages as
an individual and not as part of a class action.  She hoped
Marler would tell her "if there [are] any steps I need to take
to avoid being included in a Daily Harvest class action."  Reese
did not include Marler's immediate response, but in subsequent
correspondence of August 31, 2022, Reese clarified that she did
not want to retain Marler, thanked him for the updates from his
office, and reiterated that she wanted to make sure she "wasn't
participating in any active class action by default," and that
she planned to "file an independent complaint in the next 6-8

---

[5] The attorney to whom she was referring may be Thomas Slattery.
Slattery filed a lawsuit on behalf of Reese and himself in 2020.
In that lawsuit, he explains that he was engaged to Reese.  In
October 2024, Slattery communicated with Gentle's office on
behalf of Reese.

months." Marler acknowledged the email and wished her well. There was no further communication between Reese and Marler.

Nearly two years later, on May 24, 2024 -- two days after the Settlement was preliminarily approved -- Reese filed a lawsuit against Daily Harvest and Second Bite in California state court. A declaration submitted by Reese indicates that Daily Harvest was served with this suit on July 2, 2024, although Daily Harvest says it was never served. It is not clear when or how Second Bite was served, but it removed the action to the United States District Court for the Southern District of California on August 28, where it remains pending.

Meanwhile, Reese's email address was included on the list that Gentle used to send emailed notices to the potential class members. Gentle emailed the notice to her on June 19 and again on August 25. Neither one of those emails was returned as undeliverable, so, pursuant to the notice plan, Gentle did not send any physical mail to Reese. Reese says that the notice landed in her junk folder and, in support of her request, submitted a screenshot showing the August 25 email in her junk folder.[6]

---

[6] The screenshot shows that Reese has at least 51,122 emails in her inbox and 426 in a junk folder. It also indicates that 422 of the emails in the junk folder are unread. In the left-hand column of the screenshot, the 422 figure sits in relation to the "Junk" folder link just as the 51,122 figure is positioned with

On September 27, 2024, Reese emailed counsel for Daily
Harvest to ask if it would accept service of her complaint.
Counsel noted in an October 4 response the existence and
timeline of the Settlement, including the July 24 deadline to
opt out.  Counsel advised Reese that her claim would be barred
if the Settlement was approved at the October 15 fairness
hearing.  Reese responded the same day that she had "opted out
of the class" and that her complaint against Daily Harvest had
already been served but she had not received an answer.  Counsel
for Daily Harvest, copying Peni's counsel, again explained that
the Settlement had been preliminarily approved and that notice
had been given.  Counsel advised Reese to contact the Settlement
Administrator if she believed the Administrator had erred in
omitting her name from the list of opt-outs.  Reese responded
that she was "not represented by any of the attorneys copied."

Thomas Slattery of the Slattery Law Firm contacted Gentle's
office to obtain its records showing that notice of the
Settlement had been sent to Reese.  On October 3, Gentle's
office sent Slattery evidence of the June 19 and August 25
emails sent to Reese's email address.  Also on October 3, Reese
emailed Gentle's office, copying the Slattery Law Firm,

respect to the "Inbox" link, which may mean that there are
51,122 <u>unread</u> emails in addition to some number of read emails
in the inbox.

requesting information about the measures Gentle took to ensure that the notice emails had not been "blocked by Apple." She explained that the notice emails had never come to her inbox, and that she had "manually opted out of this settlement in numerous emails written directly" to Marler.

On October 7, the Pro Se Intake Unit received an "Objection to Class Action Settlement" from Reese. The Objection requested a stay of proceedings and an extension of the opt-out deadline due to faulty notice.[7] An Order of October 8 noted that the opt-out deadline was July 24, 2024. It requested responses to the Objection from the parties by October 11. Daily Harvest filed a response in opposition to Reese's submission on October 8. Among other arguments, Daily Harvest noted that, pursuant to the Agreement, it had designated a portion of its settlement payment as a "Holdback amount" to resolve claims of individuals who had timely opted out of the class, and that the amount -- which had already been disclosed to the class -- would have to be revised if Reese's untimely request were accepted.

On October 9, the Pro Se Intake Unit received Reese's motion for leave to opt out after deadline. On October 14, Reese submitted a final declaration, detailing her research

---

[7] Reese's submissions were filed pro se, although the emails that Reese attached as exhibits indicate that she was in fact working with the Slattery Law Firm.

regarding the spam filter used by iCloud, Reese's email service, and the analytics available to users of Constant Contact.  On October 15, the parties appeared for a final approval hearing, where Reese's request to opt out was denied.  This Memorandum Opinion supplements the record of the October 15 hearing in stating the reasons for the denial of Reese's request.

## Discussion

In approving a class action settlement under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  In class actions filed pursuant to Rule 23(b)(3), such as this one, individual notice is typically required where class members will need to take some action, such as filing a claim, to participate.  Rule 23(e)(1)(B), Advisory Committee Notes (2003); Fed. R. Civ. P. 23(c)(2)(B).  Notices must include certain substantive content, the adequacy of which is not in dispute here.  Rule 23(c)(2)(B), Fed. R. Civ. P.  With respect to delivery, "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."  Id.

Along with the requirements of Rule 23, notice must also meet the requirements of the Due Process Clause of the Constitution, seeing as final approval of a class settlement

extinguishes the legal rights of absent class members.  See
Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 222 (2d
Cir. 2012).  To do so, the notice must be "the best practicable,
'reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them
an opportunity to present their objections.'"  Id. at 224
(quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812
(1985)).  So long as these requirements are met, Due Process
does not require the recipient to actually receive notice.  See,
e.g., Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir.
1988).

       "The standard for the adequacy of a settlement notice in a
class action under either the Due Process Clause or the Federal
Rules is measured by reasonableness."  Hecht, 691 F.3d at 224
(citation omitted).  The Advisory Committee Notes to the most
recent amendments to Rule 23 remark that email may sometimes be
"the most promising" method of notice.  Rule 23(c)(2)(B),
Advisory Committee Notes (2018); see also id. ("[W]hen selecting
a method or methods of giving notice courts should consider the
capacity and limits of current technology, including class
members' likely access to such technology.").  And in assessing
the adequacy of settlement notice, the Second Circuit Court of
Appeals has "considered whether any class members responded to

the notice." <u>Hecht</u>, 691 F.3d at 225 (citation omitted).  If the notice "prompts widespread reaction from class members, it would appear that the notice has served its due process purpose." <u>Id.</u> (citation omitted).

The notice plan executed here was reasonably calculated to apprise absent class members of the Settlement.  This is a product liability case where the product at issue was sold over the internet to customers who subscribed online.  It stands to reason that the best way to contact potential class members was to use the very email addresses that customers used to purchase the product.  That list of email addresses was augmented with the contact information of anyone who had asserted a personal injury claim against Daily Harvest based on their consumption of Crumbles.  And because nearly two years had passed between the last sale of Crumbles and this Settlement's preliminary approval, and many purchasers alleged that they suffered severe injuries, hundreds of potential class members had retained counsel to represent them as they sought compensation for their injuries.  Those class members and their attorneys could learn of and about the Settlement not only from receiving emailed notice, but also via the Southern District docket or the Settlement website, which received thousands of visitors.

The reaction of class members, including those <u>not</u>
represented by counsel, weighs strongly in favor of finding
notice to be adequate.  Of the 1,188 claim forms submitted,
around 709 were filed by class members not represented by
counsel.  This fact alone substantiates the notice's
effectiveness, because it means that hundreds of people made
their way to submitting a claim through the emailed notice or
the Settlement website.[8]

The preliminary approval of the Settlement followed
significant consultations between the Court and the parties.
Before preliminary approval was given, the Agreement and the
substance of the notice underwent substantial revisions.  After
approval, substantial sums were spent on carrying out the notice
plan over the course of several months.  As of its preliminary
approval, there was no reason to think the notice plan was
anything other than fair, adequate, and reasonable.  The fact
that one class member's notification appears to have gone into
her email junk folder does not make it unreasonable now.

Reese does not raise any compelling argument to the
contrary.  She does not dispute that she received two emails

_____

[8] Some people may have received physical mail as well, but, based
on the small percentage of emailed notices that were
undeliverable, the vast majority of claimants received only
electronic mail.

from Gentle at her personal email address.  This is the same address she used to communicate with Daily Harvest and order Crumbles.  The June 19 email notified her of the Settlement and her chance to file a claim, object, or opt out.

There is no suggestion that the email account that Gentle used to contact Reese was unused or defunct; Reese used that very account to email her late request to opt out to this district's Pro Se Intake Unit and to communicate with Gentile and Daily Harvest this Fall.  Nor does Reese substantiate her claims that she did not receive notice due to "bureaucratic errors" or "technical glitches" in notifying the potential class.  In fact, she submitted a screenshot showing her receipt of one of the emails.  The fact that Reese did not open the June 19 email sent to her by Gentle, or that her email account automatically placed emails in her junk folder rather than her inbox, does not render the notice program utilized here unreasonable.

In essence, Reese is suggesting that any notice sent to a class by email must track whether the email is opened and provide for supplemental notice by physical mail if it is not. There is no basis to find that such a notice regime was required here to meet the requirements of Due Process or Rule 23.  The reaction of the class, including members not represented by

18

counsel, leaves no doubt that notice was adequate.  Neither Rule
23 nor the Due Process Clause requires notice to always be
conducted using physical mail.  The circumstances of this case
are such that emailed notice was particularly appropriate.

Reese also argues that her email correspondence with Marler
in August 2022 qualified as a valid request to opt out.  It did
not.  At that time, no settlement agreement existed from which
to opt out, nor had any class been certified.  If Reese's
position is that she was owed individual notice of the
Settlement, she is correct.  But she received individual notice,
along with the rest of the class.  Marler was under no
obligation to personally email her simply because she had
corresponded with him two years earlier.  In fact, she told him
that she had her own attorney and did not want him to represent
her.  And, based on her own representations, Reese was
especially well-equipped to become aware of and act upon the
announcement of the Settlement.  As of August 2022, she was
researching Crumbles-related litigation, she was represented by
an attorney, and she was preparing to file a lawsuit of her own,
which she ultimately did two years later -- two days after
preliminary approval of the Settlement.  If Reese and her
attorney were not keeping abreast of this federal litigation and
its Settlement, they certainly could have been.

## Conclusion

Reese's October 9, 2024 request for leave to untimely opt out of the Settlement is denied.

Dated:    New York, New York
          October 24, 2024

DENISE COTE
United States District Judge