UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Breeanne Buckley Peni, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  v.<br><br>DAILY HARVEST, INC., SECOND BITE FOODS, INC. d/b/a "STONE GATE FOODS", SMIRK'S LTD., AND MOLINOS ASOCIADOS SAC,<br><br>       Defendants. | Civil Action No. 22-cv-05443<br>Honorable Denise Cote |

**JOINT DECLARATION OF PLAINTIFF'S COUNSEL IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT WITH SMIRK'S LTD. AND MOLINOS ASOCIADOS SAC**

  William D. Marler, James R. Peluso, and Jeffrey A. Bowersox, pursuant to 28 U.S.C. § 1746, hereby declare that the foregoing is true and correct to the best of their knowledge:

  1. We submit this Joint Declaration in support of the accompanying Unopposed Motion for Final Approval of the Class Action Settlement with Smirk's Ltd. ("Smirk's") and Molinos Asociados SAC ("Molinos").[1]

  2. We are counsel for Plaintiff Breeanne Buckley Peni and the proposed Class Counsel for the putative Settlement Class.

  3. We have personal knowledge of the facts set forth in this declaration, and if called upon to testify, we could and would testify competently thereto.

  4. The following exhibits are submitted in support of the motion herein:

---

[1] All capitalized terms have the meanings ascribed by the Settlement Agreement (Exhibit 1).

| | |
|---|---|
| Exhibit 1 | Executed Settlement Agreement, without exhibits.[2] |
| Exhibit 2 | Third Amended Class Action Complaint. |
| Exhibit 3 | Settlement Notice dated November 6, 2024. |
| Exhibit 4 | Allocation Matrix. |
| Exhibit 5 | Claim Form. |
| Exhibit 6 | Proposed Final Judgment. |
| Exhibit 7 | Firm Resumes of the Proposed Class Counsel. |
| Exhibit 8 | Class Counsel Unreported Decisions. |
| Exhibit 9 | Declaration of the Settlement Administrator, Edgar C. Gentle, III, dated February 10, 2025. |

5.      This action is part of the coordinated Daily Harvest Litigation (the "Litigation").

6.      On October 25, 2024 (Doc. 138), The Court granted final approval of the class settlement with Defendants Daily Harvest, Inc. ("Daily Harvest") and Second Bite Foods, Inc. d/b/a "Stone Gate Foods", following the Final Approval Hearing held on October 15, 2024 (Doc. 78).

7.      This proposed Settlement Agreement ("SA" or "the Settlement") resolves all litigation against Defendants Smirk's and Molinos (the "Settling Defendants") arising out of Plaintiff's and the putative Class Members' consumption of Daily Harvest's French Lentil + Leek Crumbles ("the Product" or "the Crumbles"). It closely mirrors the class action settlement between Plaintiff and Defendants Daily Harvest and Stone Gate Foods, which the Court has already approved, with one key difference—this Settlement includes two hold backs, compared to one in the Daily Harvest-Stone Gate Settlement. The Class Members, proposed distribution system

---

[2] The fully executed copy of the Settlement Agreement and all attached exhibits was previously filed at ECF Doc. 108.

(adjusted pro rata due to a smaller fund), and the proposed timing are substantially the same between the two settlements.

8.      The Court granted preliminary approval of the Settlement by Order dated October 9, 2024. (Doc. 110).

9.      In accordance with the Settlement Agreement, following the Court's issuance of the Preliminary Approval Order, Plaintiff Peni filed the Third Amended Class Action Complaint against the Settling Defendants. (Exhibit 2).

10.     On November 6, 2024, Notice to the Class was duly provided by the Settlement Administrator. (Declaration of Edgar C. Gentle, III, dated February 10, 2025 at ¶ 3).

11.     A copy of the Settlement Notice transmitted to the Class and published on the Settlement Website is attached as "Exhibit 3".

12.     A copy of the Settlement Allocation Matrix is attached as "Exhibit 4".

13.     Approval of the instant motion and entry of judgment would grant final approval of the Settlement, including the distribution of the Net Settlement Fund by the Settlement Administrator pursuant to the terms of the Settlement Agreement and Allocation Matrix.

14.     A Fairness Hearing on Final Approval of the Settlement is scheduled for March 3, 2025.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

15.     The Crumbles were manufactured for Daily Harvest by Stone Gate Foods using an ingredient known as tara flour. This tara flour was supplied to Stone Gate Foods by Smirk's, which sourced it from Molinos.

16. Plaintiff alleges that consumption of the tara flour-containing product caused her to experience personal injuries, characterized by onset of gastrointestinal illness symptoms, which resulted in medical treatment, hospitalization, and surgical cholecystectomy.

17. On June 27, 2022, Plaintiff Peni filed her Class Action Complaint alleging causes of action for strict liability, breach of warranty, and negligence against Daily Harvest, Inc. (Doc. 1). On August 17, 2002, Plaintiff amended her complaint to add Stone Gate Foods as a defendant. (Doc. 21). Following a motion to compel arbitration by Daily Harvest that was granted on November 10, 2022 (Doc. 36), Stone Gate moved to dismiss the class action allegations in the Amended Complaint. (Doc. 41). Plaintiff then stipulated to discontinue her claims against Stone Gate Foods without prejudice (Doc. 47), pending ongoing settlement negotiations to globally resolve the Litigation among all parties, including Daily Harvest, Stone Gate, Smirk's, and Molinos. (Doc. 44, 51-64).

18. Plaintiff's case has since been subject to the Court's Coordinated Order in the Litigation, which was entered "to enhance judicial efficiency, avoid undue burden and promote the just and coordinated resolution of all the cases that involve the same subject matter as the Daily Harvest Litigation." (*In re: Daily Harvest, Inc. Products Liability Litigation*, Case No. 1:22-cv-05987 at Doc. 165, Coordination Order dated April 28, 2023).

19. Specifically, Plaintiff's action is one of eighty-four (84) active lawsuits in New York federal and state courts filed in the Litigation against the Settling Defendants, of which sixty-one (61) suits are pending in the Southern District of New York. This includes *Albright v. Daily Harvest Inc., et al* (Case No. 22-cv-05987 DLC) currently pending before this Court.

20. Your declarant, William D. Marler of the law firm Marler Clark, Inc. PS, represents eighty (80) of the plaintiffs with active lawsuits filed in New York federal and state courts, and approximately two-hundred sixty (260) additional putative Class Members.

21. Plaintiff Peni is represented by your declarant James R. Peluso of the law firm Dreyer Boyajian LLP, which represents thirty (30) additional putative Class Members.

22. Your declarant, Jeffrey A. Bowersox of Bowersox Law Firm, PC, represents one (1) of the plaintiffs with active lawsuits filed in New York federal and state courts, and seventy-seven (77) additional putative Class Members.

23. In total, approximately four hundred forty-nine (449) putative Class Members are represented by the Class Counsel who executed the Settlement Agreement. (Ex. 1).[3]

24. In brief, the Settling Parties engaged in extensive investigation and other litigation efforts throughout the prosecution of the Litigation, including, inter alia: (1) researching and drafting the initial and amended complaints in the Litigation; (2) researching the applicable law with respect to the claims in the Litigation and the potential defenses thereto; (3) engaging doctors, epidemiologists, and scientific experts regarding the causal link between exposure to tara flour and plaintiffs' physical injuries; (4) communicating with hundreds of claimants (sometimes collectively and sometimes individually) regarding their injuries and the status of the litigation; (5) engaging in significant fact discovery, including document and witness discovery, exchange of scientific studies about the use of tara flour in food, and disclosure of medical records for hundreds of claimants; (6) engaging in extensive settlement discussions; and (7) participating in court-assisted mediation and settlement conferences.

---

[3] Other than the 449 Claimants represented by Class Counsel, approximately sixty (60) additional Claimants are represented by thirty-five (35) other counsel across the U.S.

25. After extensive arm's length negotiations, the Parties reached an agreement to settle the Litigation against the Settling Defendants for the amount of $7,671,000.

26. The Parties thereafter worked to draft and finalize the terms of the Settlement in the Settlement Agreement. (Ex. 1).

27. We can state as of record that there was no collusion of any kind between counsel for the Settling Parties and that all negotiations culminating in the proposed Settlement were at arm's length and hard-fought.

28. As demonstrated by the attached resumes of the proposed Class Counsel (Ex. 7, Firm Resumes), your declarants have substantial experience in the litigation, certification, and settlement of class action cases, and specifically in cases involving outbreaks of food and waterborne illnesses. (Ex. 8, Unreported Decisions).

29. Based on our experience, the Settling Defendants' counsel are also highly experienced in this type of litigation.

30. It is our joint considered opinion that counsel for each Settling Party has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe that the proposed Settlement Agreement fairly resolves the Litigation.

31. In assessing the merits of the proposed Settlement, the proposed Class Counsel considered the risks and uncertainties of ultimately prevailing at trial in light of various factors. As with any litigated case, Plaintiff and the putative Class Members face an uncertain outcome at trial, including the risk of enforcing a judgment because of the limited insurance coverage available to satisfy the hundreds of claims asserted against the Settling Defendants.

32. The proposed Settlement Agreement eliminates the attendant risks of litigation by providing Plaintiff and the putative Class Members a substantial and certain recovery of valuable

benefits in a timely manner and avoiding further delay and the risk of loss that might result from further litigation, trial, and appeals.

33. The undersigned have litigated all kinds of cases involving food and waterborne pathogens. The instant Litigation alleging foodborne illness caused by the consumption of tara flour is, to our knowledge, the first litigation of its kind. The Settling Defendants have raised a number of factual and legal defenses relative to the tara flour, including issues related to general and individual causation and the admissibility of scientific expert proof.

34. In addition, Molinos Asociados SAC is a foreign company based in Peru that does not have liability insurance and contests jurisdiction. The Settlement resolves all crossclaims among the defendants and, together with the Daily Harvest and Stone Gate settlement, would achieve a global settlement of this matter.

35. We further understand that with the exception of the hold backs described below the proposed settlement amount of $7,671,000 is to be paid into the Settlement Fund by Citizens Insurance Company of America and The Hanover Insurance Company (collectively, "the Settling Insurers") on behalf of Smirk's. The Settling Insurers have also contributed $25,000 to cover Smirk's portion of the Settlement Notice. Molinos, which is uninsured, has contributed $25,000 towards the Settlement Notice.

36. Indeed, in light of the risks, uncertainties, limited insurance coverage, and delays associated with continued litigation, the proposed Settlement addresses these risks by providing guaranteed monetary benefits to the putative Class Members who have filed claim forms to participate in the Settlement Program.

37. As set forth below, the proposed Settlement has the overwhelming support of the Class Members, and should be granted final approval as fair, reasonable, and in the best interests of the Class.

## II. THE PROPOSED RULE 23(B)(3) CLASS

38. The Settlement Class is defined as follows, with French Lentil + Leek Crumbles being the brand name:

> All persons in the United States (including its territories) who purchased, received, or consumed French Lentil + Leek Crumbles and directly suffered personal injuries caused by consumption of the Crumbles, and all persons in the United States (including its territories) who suffered consequential monetary damages arising from or related to another person's personal injuries arising from consumption of the Crumbles.

(Ex. 1, Settlement Agreement, ¶ 1.12).

## III. NOTICE OF THE SETTLEMENT WAS ISSUED AS ORDERED.

39. The Court preliminarily approved the notice program for the Settlement on October 9, 2024. (Doc. 110).

40. On November 6, 2024, the Settlement Administrator issued the Court-approved Settlement Notice (Ex. 3), as ordered. (Ex. 9, Decl. Gentle, ¶ 3).

41. The Court-approved Settlement Notice describes plainly: (i) the terms and effect of the Settlement Agreement; (ii) the time and place of the Final Approval Hearing; (iii) the nature and extent of the release of claims; (iv) how the recipients of the class settlement Notice may object to the Settlement; (v) the procedure and timing for objecting to the Settlement; (vi) the manner and methods by which Class Members may either participate in, or exclude themselves from the Settlement; (vii) the Allocation Matrix and method of awarding payments; (viii) the Hold Back Amount; (ix) how to access the Settlement Website; and (x) other relevant information. (Ex. 3).

42. On February 10. 2025 the Settlement Administrator, Edgar C. Gentle, III, signed a Certification of Settlement Administrator's Compliance with the Provisions of the Preliminary Approval Order and Declaration in Support of Plaintiff's Motion for Final Approval of the Settlement. (Exhibit 9).

43. As set forth in the declaration of the Settlement Administrator, on November 6, 2024, the Settlement Notice was transmitted via electronic mail to the Class Notice List containing 20,758 email addresses. "Reports showed the following statistics: 6,294 (31%) opened, 482 (2%) clicked the linked Notice inside the email, 490 (2%) bounced back, and were subsequently mailed to the physical address found in the Class Notice list, and 43 (1%) unsubscribed from future email communications." (Exhibit 9, Decl. Gentle at ¶ 3). On January 7, 2025, the Settlement Notice was re-sent to remind potential class members of the approach Claims Deadline of January 21, 2025.

44. As of December 11, 2024, the Opt-Out Deadline, the Settlement Administrator received three (3) opt out forms. (Exhibit 9, Decl. Gentle at ¶ 5).

45. As of January 21, 2025, the Objection Deadline, no objections were received by the Settlement Administrator or filed with the Court. (Exhibit 9, Decl. Gentle at ¶ 7).

46. Approximately 3,777 claimants have filed a Claim Form seeking to participate in the Settlement. (Ex. 9, Decl. Gentle, ¶ 8).

47. Accordingly, it is respectfully submitted that the Notice program satisfied the Court's Order, was successful, and the response of the Class Members to the Settlement is overwhelmingly favorable.

### IV. SUMMARY OF THE SETTLEMENT AGREEMENT TERMS

#### A. Monetary Terms

48. The proposed Settlement Agreement provides for a monetary settlement of Seven Million, Six Hundred and Seventy-One Thousand Dollars ($7,671,000.00) to be allocated among the Class Members who submit an approved Claim Form through a claims process (the "Settlement Program") to be administered by the court-appointed Settlement Administrator. (SA ¶ 1). The settlement will completely resolve the litigation of all claims as to the Settling Defendants, permitting the Court to dismiss said claims and enter judgment if the settlement is approved following the Final Approval Hearing.

49. The proposed Settlement Agreement provides that the settlement administration costs will be paid from the Settlement Fund. (SA ¶ 31). The proposed Settlement Agreement allocates up to $500,000 for the Settlement Administrator's expenses, in addition to the $500,000 previously allocated for the Daily Harvest-Stone Gate Settlement. Any remaining funds shall be distributed to claimants on a pro rata basis. (SA ¶ 31).

#### B. The Hold Back Amount

50. Pursuant to the terms of the Settlement, it is agreed that Smirk's will withhold a portion of its total contribution to the Settlement Fund for a specified period of time to cover its reasonable material exposure relative to the potential litigation or claims from Opt-Outs (the "Class Action Hold Back Amount"). (SA ¶ 18). Any remaining funds from this hold back will be distributed pro rata to members of the Class Action by December 31, 2026, or once all of the Opt-Out claims or Opt-Out litigation are resolved, whichever date is later. (SA ¶ 23).

51. It is also agreed that Smirk's and its insurers will hold back $753,712.16 for claims already made against the Citizens/Hanover policies (the "Claims Hold Back Amount"). (SA ¶

24). Within thirty (30) days of Hanover's closing of all claims related to the Claims Hold Back Amount, Hanover shall provide the plaintiff with a written statement of the amounts paid, along with reference claim numbers used in the resolution of the unrelated pending claims against Smirk's, once all such claims are resolved. (SA ¶ 24). If any of the $753,712.16 is not paid on those other claims, within thirty (30) days of Hanover's closing of all claims related to the Claims Hold Back Amount, Hanover will pay the remainder of the unpaid amount to the Qualified Settlement Fund, and it will then be distributed to the members of the Class Action on a pro rata basis. (SA ¶ 24).

### C. Claim Forms, Monetary Awards, and Appeals

52. The Net Settlement Funds will be distributed to Class Members who file a Claim Form and meet the Eligibility Requirements for the payment of a Monetary Benefit. Each Claim Form shall be evaluated by the Settlement Administrator pursuant to the Allocation Matrix (Ex. 4) to determine the amount of the Monetary Benefit award. (SA ¶¶ 26-28, 32-35). The Settlement Program includes a Cure Period to submit any supplemental Required Documentation in support of the Claim. (SA ¶ 36). Class Members shall have the right to serve an Appeal upon the Settlement Administrator if their claim is denied. The Settlement Administrator's decision shall be final and binding, except that Class Counsel and Defendants shall have the right to audit claim and to challenge the Settlement Administrator's decision by motion to the Court. (SA ¶ 37).

53. By submitting a Claim Form, a Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the terms of the Settlement Agreement and the releases provided for in the Final Approval Order and Judgment. (SA ¶ 38).

### D. Attorney's Fees and Costs

54. The proposed Class Counsel are not requesting an award of attorneys' fees directly from the Settlement Fund. Rather, Class Counsel and the attorneys for individual Class Members shall be compensated pursuant to the retainer agreements between Plaintiffs, Class Members, and their respective counsel. (SA ¶ 55). If a Class Member is not represented by counsel and does not have an attorney lien resulting from previous representation relating to the Crumbles, then any Monetary Benefit awarded to said Unrepresented Claimant shall be reduced by one-third (1/3) under the terms of the Settlement Agreement. In effect, Class Counsel is requesting that the Court impose a 1/3 attorney's fee award for any Monetary Benefit paid to Unrepresented Claimants, however, that the value of said fee award be deposited back into the Settlement Fund. Class Counsel submits that the proposed 1/3 reduction represents a fair method of allocating the Settlement Funds to Unrepresented Claimants and treats each Class Member equitably.

### E. Dismissal and Release of Claims

55. Upon entry of the Final Approval Order, the Settlement Class Members shall be deemed to have forever released any and all claim against the Settling Defendants for any damages arising from or related to personal injury caused by the consumption of the French Lentil + Leek Crumbles. (SA ¶ 56). These releases are also described in the proposed Settlement Notice (Ex. 3) and Claim Form (Ex. 5).

## V. THE METHOD OF DISTRIBUTING THE SETTLEMENT FUNDS IS FAIR AND ADEQUATE.

56. The total settlement value is fair based on the fact that this is a limited fund settlement, and the method of distributing the Net Settlement Funds pursuant to the Settlement Agreement's claims process ("Settlement Program") is fair and adequate.

57. The category award amounts are also reasonable in proportion to the total settlement value based on Class Counsel's experience with settlement awards in other foodborne illness cases.

58. The negotiated terms of the Settlement Program, including the Allocation Matrix (Ex. 4), is the product of extensive work by and among the five law firms serving as the proposed Class Counsel, who represent approximately 450 Class Members across all categories of the Allocation Matrix.

59. To receive a settlement award ("Monetary Benefit"), each Class Member must submit a Claim Form with the Required Documentation by the Claim Deadline. (SA ¶¶ 32-35).

60. The court-appointed Settlement Administrator will review each Class Member's claim pursuant to a set of uniform criteria in considering, evaluating, and making individual settlement awards. (SA ¶ 35); (Ex. 4, Allocation Matrix); (Ex. 9, Decl. Gentle ¶ 8).

61. The Allocation Matrix provides for five categories of claimants: (1)(A) No Direct Personal Injury But Consequential Monetary Damages, (1)(B) Personal Injury But No Medical Treatment, (2) Personal Injury With Medical Treatment, (3) Personal Injury With Hospitalization, (4) Personal Injury With Cholecystectomy, and (5) Enhancement Awards. (Ex. 4). Each category will be funded by a gross amount as set forth in the Allocation Matrix. Based on the current number of known claimants, the estimated Monetary Benefit payable to claimants in Categories 1A, 1B, 2, 3 and 4 is $165, $335, $5,000, $10,000, and $43,330, respectively. Claimants in Categories 2, 3 and 4 are also eligible to apply for an Enhancement Award per the criteria in Category 5.

62. As discussed above, the Settlement Program includes a Cure Period and process to file an Appeal of the Settlement Administrator's determination in evaluating and making settlement awards.

13

63. Any amounts remaining in the Settlement Fund after the Settlement Administrator applies the Allocation Matrix pursuant to the Settlement Program, or any later payment of Hold-Back amounts back into the Fund, shall be paid to Qualified Class Members on a pro rata basis. (SA ¶ 35).

64. Accordingly, the method for processing claims and distributing the Settlement Fund among the Class Members is fair and adequate.

65. And of course, any Class Member has the right to exclude themselves from the Settlement Class and pursue their own claim. (SA ¶ 13).

## VI.  THE PROPOSED CLASS SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL UNDER RULE 23.

66. For the reason discussed in the accompanying Memorandum of Law, certification of the proposed Settlement Class, for settlement purposes only, satisfies the criteria for final approval under Rule 23(b)(3).

67. First, the proposed Class satisfies the requirements of Rule 23(a), including: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the settlement class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the settlement class; and (4) the representative parties will fairly and adequately protect the interests of the settlement class.

68. Second, the proposed Class satisfies the requirements of Rule 23(b)(3), whereby questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

69. Lastly, the proposed Settlement Agreement satisfies the requirements of Rule (23)(e)(2), including (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members.

### VII. THE PROPOSED CLASS SETTLEMENT PARALLELS THE TERMS OF THE SEPARATE CLASS SETTLEMENT WITH CO-DEFENDANTS WHICH WAS APPROVED BY THIS COURT.

70. The above facts, as applied to the law, show that the Settlement Agreement stands on its own. At the same time, it should be noted that the Class Settlement Agreement parallels the terms of the Class Settlement involving the same Class Members approved by this Court involving co-defendants Daily Harvest, Inc. and Second Bite Foods, Inc. This conformity is more than appropriate as it instills confidence in the fairness of the over-all settlement and furthers the efficient processing of Class Members' claims.

### VIII. THE PROPOSED PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

71. The proposed Class Counsel have demonstrated the capabilities and resources to provide adequate representation to the class. As discussed, Plaintiff and the putative Class Members are represented by counsel experienced in class action litigation including directly analogous cases. Indeed, proposed Class Counsel have been appointed class counsel in some of the largest outbreaks of food and waterborne illnesses in New York State and the nation. (Ex. 7). Moreover, Class Counsel's work in this case on behalf of Plaintiff and the putative Class Members in the Related Litigation has been substantial.

72. Accordingly, Plaintiff requests that the Court appoint Marler Clark, Inc., P.S., Bowersox Law Firm, P.C., O'Connor & Partners, PLLC, Heisman Nunes & Hull LLP, and Dreyer Boyajian LLP as Class Counsel.

\* \* \*

73.     Wherefore, for all of the reasons above, Plaintiff respectfully requests that the Court grant the Motion for Final Approval of the Settlement and enter the attached Proposed Final Judgment. (Ex. 6).

Dated: February 14, 2025                             Respectfully submitted,

/s/ *William D. Marler*
_____
MARLER CLARK, INC. P.S.
180 Olympic Drive S.E.
Bainbridge Island, Washington 98110
Telephone: (206) 346-1888
bmarler@marlerclark.com

*/s/ James R. Peluso*
_____
James R. Peluso (Bar Roll # JP2875)
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, New York 12210
Telephone: (518) 463-7784
jpeluso@dblawny.com

*/s/ Jeffrey A. Bowersox*
_____
Jeffrey A. Bowersox, Esq.
BOWERSOX LAW FIRM, P.C.
385 1ST Street, Suite 215
Lake Oswego, OR 97034
Telephone: (503) 452-5858
jeffrey@bowersoxlaw.com

*Counsel for Plaintiff and the Proposed Class*