```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
BREEANNE BUCKLEY PENI, individually and  :
on behalf of all others similarly        :
situated,                                :
                                         :        22cv5443 (DLC)
                   Plaintiff,            :
                                         :        OPINION AND
            -v-                          :          ORDER
                                         :
DAILY HARVEST, INC., et al.,             :
                                         :
                   Defendants.           :
                                         :
---------------------------------------- X
```

DENISE COTE, District Judge:

Ten claimants in the Daily Harvest Crumbles Settlement have appealed the Settlement Administrator's decisions regarding their settlement awards.  For the reasons below, the appeals are denied.

## Background

The plaintiffs in this class action were injured by consumption of French Lentil + Leek Crumbles, a product sold by Daily Harvest, Inc. and manufactured by Second Bite Foods, Inc., d/b/a Stone Gate Foods, with tara flour supplied by Smirk's Ltd. and Molinos Asociados SAC.  The plaintiffs filed dozens of lawsuits in state and federal court against the defendants, alleging claims for, among other things, strict liability, negligence, and breach of express and implied warranties.  An Order of April 28, 2023, coordinated discovery in this

litigation.  In re Daily Harvest, Inc. Products Liab. Litig., No. 22CV5987(DLC), 2023 WL 3144171 (S.D.N.Y. Apr. 28, 2023). The parties subsequently engaged in substantial discovery overseen by this Court, as well as in settlement conferences with the Honorable Sarah Cave, a U.S. Magistrate Judge in this district.  See Peni v. Daily Harvest, Inc., No. 22CV5443 (DLC), 2024 WL 4564198, at *1 (S.D.N.Y. Oct. 24, 2024) (describing history of the litigation).

In two waves in 2024, the defendants settled the claims brought against them.  The first settlement, which is the subject of the ten appeals, involved Daily Harvest, Inc. and Stone Gate Foods ("Daily Harvest Crumbles Settlement" or "Settlement"), and was for an amount of $22,999,000.  A second settlement involved Smirk's Ltd. and Molinos Asociados SAC ("Smirks-Molinos Settlement") and was for an amount of $7,671,100.[1]  On May 2, 2024, Breeanne Buckley Peni, the plaintiff in the above-captioned action, filed an unopposed motion to preliminary approve the Daily Harvest Crumbles Settlement, attaching a copy of the Daily Harvest Crumbles Settlement Agreement ("Settlement Agreement" or "Agreement") to the motion.

---

[1] The Smirks-Molinos Settlement was preliminarily approved on October 9, 2024 and final judgment was entered on March 11, 2025.

The Agreement describes a Settlement Program to be administered by Edgar C. Gentle, III of Gentle Turner & Benson, LLC, who is defined in the Agreement as the Settlement Administrator ("Administrator").  The Program included the following procedures:

> Eligibility Requirements.  To be eligible for a Monetary Benefit, a Class Member must timely submit a completed Proof of Claim Form and all required documentation by the Claim Deadline.  Qualified Class Members, as determined by the Settlement Administrator, shall receive a Benefit, provided the Proof of Claim Form and documentation submitted establish that the Claimant meets the . . . Eligibility Requirements.

> Relief to Qualified Class Members.  The Settlement Administrator shall determine the Monetary Benefit to be awarded to each Qualified Class Member pursuant to the Settlement Program described herein and the Allocation Matrix attached hereto.

> Appeal.  If any Claimant whose Claim has been rejected in whole in part desires to contest such rejection, the Claimant must, within twenty (20) days, serve upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation.  The Settlement Administrator shall within twenty (20) days notify the Claimant of the Settlement Administrator's determination on the appeal.

The Agreement contained an Allocation Matrix, which stated:

> Under this proposal, a Settlement Administrator would be appointed by the court to administer the distribution of funds among those injured.  Here, the approximately $22,999,000 in proposed settlement money ("Settlement Fund"), minus the initial hold back amount, if any, and administrative fees, would be separated into multiple categories (see below) with

3

the goals of ensuring that: (a) every claimant can reliably count on a base level of compensation with potential enhancements; and (b) the Settlement Administrator has a significant amount of money to award enhancements to claimants at his discretion. Under this proposal, a claimant is eligible to receive awards from the multiple categories listed below, as well as an enhancement from the Settlement Administrator.

The Matrix then outlined the following categories:

Category 1: $500,000

1A: This category will be used to compensate equally those claimants on a prorated bases (not to exceed $500 each) who suffered consequential monetary damages arising from or related to another person's alleged personal injuries arising from consumption of French Leek and Lentil Crumbles with tara in 2022.

1B: This category will be used to compensate equally those claimants on a prorated basis (not to exceed $1,000 each) whose personal injury illness is verified to be causally related to the consumption of French Leek and Lentil Crumbles with tara in 2022 but did not receive medical treatment.  Any unused amount will be utilized in Category 5.

Category 2: $4,335,000

This category will be used to compensate equally the approximately 289 claimants whose personal injury illness is verified to be causally related to the consumption of French Leek and Lentil Crumbles with tara in 2022 and who received medical treatment but were not hospitalized (estimated to be $15,000 gross each).  In addition, these claimants would be eligible for a Settlement Administrator enhancement as provided in Category 5.  Any unused amount will be utilized in Category 5.

Category 3: $5,580,000

This category will be used to compensate equally the approximately 186 claimants whose personal injury

4

illness is verified to be causally related to the consumption of French Leek and Lentil Crumbles with tara in 2022 and were hospitalized (estimated to be $30,000 gross each).  To qualify for this category, the claimant must have been admitted to a hospital. ER visits do not qualify.  In addition, these claimants would be eligible for a Settlement Administrator enhancement as provided in Category 5, including, but not limited to an enhancement for the number of days of hospitalization. Any unused amount will be utilized in Category 5.

Category 4: $4,200,000

This category will be used to compensate equally the approximately 42 cholecystectomy claimants whose personal injury illness is verified to be causally related to the consumption of French Leek and Lentil Crumbles with tara in 2022 (estimated to be $100,000 gross each).  In addition, these claimants would receive a Category 3 award (for a total award of $130,000 gross) and would be eligible for a Settlement Administrator enhancement, including, but not limited to an enhancement for the number of days of hospitalization. Any unused amount will be utilized in Category 5.

Category 5: $7,885,000

This is the Settlement Administrator's discretionary category.  This category will be used to pay any category 2, 3 or 4 shortfalls, if any.  Based on the evidence submitted, he may enhance awards for any claimant whose injury is verified to be causally related to the consumption of French Leek and Lentil Crumbles with tara in 2022.  It is agreed that the following are factors, among others, that merit consideration for enhancement, but do not require enhancement for any given claim (listed in no order of priority or gravity):

- Proof of consumption and documentation of an injury

• Any causally related invasive procedure, e.g., ERCP (endoscopic retrograde cholangiopancreatogram) or liver biopsy

• Number of days of hospitalization

• Any causally related complication of hospitalization that extended care needs post-hospitalization, e.g., wound infection, severe disruption of GI function

• Chronic physical or mental symptoms causally related to illness documented by MD or DO

• Causally related miscarriage documented by MD or DO and related damage

• Other documented factors

• To correct errors or omissions in scoring the above categories

The Agreement also attached a copy of the Claim Form that claimants would submit to the Administrator.  In section 4 of Claim Form, the form required claimants to check a box to select the category for their claim, indicating for instance whether they received medical treatment for illness.  As recited above, category 1A and B applied to claimants who did not receive medical treatment; category 2 to those who received medical treatment but were not hospitalized; category 3 to those who were hospitalized; and category 4 to those who were hospitalized for reasons relating to a cholecystectomy.  Underneath the selection boxes, claimants were instructed:

If you received medical treatment for your injuries and would like to be considered for an enhancement of

your monetary benefits, please identify any special
medical circumstances of your illness that should be
considered in evaluating the claim.  (Please note,
that only Claimants who can show they received medical
treatment for illnesses in Categories 2, 3, or 4
above, are eligible for an enhancement consideration.)

The form left five blank lines for information related to the
enhancement application.

On May 22, 2024, the Court appointed Edgar C. Gentle, III,
to serve as the Administrator for the Daily Harvest Crumbles
Settlement and preliminarily approved the Settlement.  On June
19, 2024, the Class Action Settlement Notice was provided to the
class.  The Notice specified that the proposed award amounts for
the five categories were projections that "may proportionally
increase or decrease depending upon the response from Class
Members."  On October 25, 2024, the Court entered final judgment
upon final approval of the Settlement.  The Order entering the
final judgment stated:

A Claimant who disagrees with the ruling of the
Settlement Administrator may appeal to the Court
within fourteen (14) days of the Settlement
Administrator's determination on appeal by submitting
a written statement to the Court . . . outlining the
Claimant's position and why the Claimant believed the
Settlement Administrator has erred.

(Emphasis supplied.)  An Order of September 29, 2025, extended
the date upon which claim forms would no longer be reviewed by
the Administrator from September 2, 2024, to December 1, 2024.

As described in the Allocation Matrix attached to the Settlement Agreement, the Administrator was given discretion to enhance awards for claimants to compensate for "shortfalls" in awards made in categories 2, 3, or 4.  In a report of October 31, 2025, the Administrator proposed a matrix for the enhancement awards to the Court ("Enhancement Matrix").  The Enhancement Matrix awarded points based on a list of factors, for example, one point is awarded per night spent in the emergency room, and 10 points are awarded if the claimant consumed Daily Harvest's product when under 18 or over 65 years of age.[2]  An Order of November 4 required any opposition to the proposed Matrix to be filed by November 11.  No objections were filed and an Order of November 12, 2025, approved the Enhancement Matrix.

Over the late Summer and Fall of 2025, the Administrator examined the filed claims, determined that 1,183 qualified for awards under categories 1 through 4, determined the amount of those awards and sent notice to all claimants of the proposed awards, advising them that they could appeal those determinations within twenty days.  A number of claimants

---

[2] Monetary values related to those points will be finalized after hold back funds are disbursed and this Court's review of the appeals are complete.

appealed the determinations within the 20-day period and the Administrator issued his decisions on those appeals in October 2025.  No claimants have appealed the Administrator's decisions on the category 1 through 4 awards.[3]

In determining enhanced awards, the Administrator considered only the claimants whose claim forms indicated the claimant would like to be considered for an enhancement and those who had requested such consideration within the appeal period for the category 1 through 4 award notices.[4]  The Administrator provided these claimants, 533 in total, with notice of a draft enhancement matrix and in September 2025 offered claimants the opportunity to supplement their claim with any information that would render them eligible for points under the proposed Enhancement Matrix.  Reviewing feedback from zoom

---

[3] At the end of category 1 through 4 review, 478 claimants were awarded category 1 damages; 503 fell in category 2, 159 in category 3, and 43 in category 4.  The 1,183 claimants were awarded a total sum of $17,004,841.

[4] In the category 1 through 4 award notices, the Administrator wrote, "You indicated on your Daily Harvest Claim Form that you are applying as a Category X."  If the claimant had indicated that they would like to be considered for an enhancement, the notice continued with the phrase, "as well as the Category 5 Special Enhancement fund."  Some claimants who had not indicated on the claim form that they wished to be considered for an enhancement then sua sponte requested that they too be considered.  These requests were reviewed as category 1-4 appeals and were granted.

interviews, the Administrator adjusted the proposed matrix and, as described above, submitted a final proposed matrix to the Court with an October 31, 2025 report.  After the November 12 Order adopted the Enhancement Matrix, the Administrator gave the 533 claimants notice of his enhancement determinations.[5]  Forty-three of the claimants appealed to him within the 20-day appeal period.  Another six claimants appealed their lack of receipt of a notice of enhanced award within that same period.[6]  The Administrator issued his decisions on those appeals in January 2026.  He granted or partially granted 21 appeals, resulting in the award of an additional 141 enhancement points.  Ten claimants have appealed the Administrator's decisions on enhancements to this Court.

The Administrator filed the ten appeals to this Court under seal on March 9, 2026.  Pursuant to an Order of March 16, the Administrator filed redacted copies of the ten appeals on the public record on April 7.

---

[5] The October 31 report stated that because the Settlement does not have the funds to address chronic issues raised in the zoom calls, the Administrator determined that injuries experienced after September 2, 2024 would be not be included in award assessments.  The report was adopted by the Court in its entirety on November 12 after no claimant objected to it by the Court-ordered deadline of November 11.

[6] The law firm representing the six claimants also represented claimants who received notices of enhanced awards.

## Discussion

It is an established principle that class members must be "treated equitably relative to each other."  Moses v. New York Times Co., 79 F.4th 235, 244 (2d Cir. 2023) (citation omitted). Accordingly, a district court may only approve a class action settlement agreement after considering whether the agreement satisfies that principle.  Rule 23(e)(2)(D), Fed. R. Civ. P. While the law "requires that class members be treated equitably" it does not require them to be treated "identically."  Moses, 79 F.4th at 245.  The advisory committee notes to Rule 23 explain that the apportionment of settlement awards should take "appropriate account of differences" among class members' claims.  2018 Advisory Notes, Rule 23, Fed. R. Civ. P.  See also 4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed.) (courts have "long focused" on equitable treatment of class members).

The principle of equitable treatment is especially relevant when the pool of funds to which the class members have access are limited and cannot fully compensate each claimant's injuries.  As the Supreme Court has recognized, when class action funds are limited and claims are made by numerous persons against a fund that is "insufficient to satisfy all claims," equity demands that all claims "stand[] upon an equal footing"

11

and should be compensated fairly through a "pro rata distribution or payment" scheme.  Ortiz v. Fibreboard Corp., 527 U.S. 815, 834, 841 (1999) (citation omitted).

The Settlement Agreement provides the Administrator with broad authority to apply the objective criteria set forth in the Allocation Matrix to ensure intra-class equity.  The Court of Appeals for the Second Circuit held many years ago that the scope of review of a decision made by a settlement administrator appointed pursuant to a settlement agreement is similar to the deferential standard applied to an arbitrator's decision. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 905 F.2d 610, 616 (2d Cir. 1990).  The administrator's decisions are entitled to "great deference."  Id.  Accordingly, the award "should be confirmed if a ground for the [the administrator's] decision can be inferred from the facts of the case."  Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., 57 F.4th 372, 379 (2d Cir. 2023) (citation omitted).  "Indeed, only a barely colorable justification for the outcome reached by the [administrator] is necessary to confirm the award."  Id. at 378-79 (citation omitted).  A reviewing court does not conduct a de novo review of the administrator's award.  Lanesborough 2000, LLC v. Nextres, LLC, 167 F.4th 33, 41 (2d Cir. 2026).

Ten claimants appeal from the Administrator's award decisions.  These ten appeals fall within three categories. Each category is discussed below.

I.    Failure to Request Enhanced Benefits

Six claimants (JD, AF, CM, LP, JR, and SS) have appealed from the Administrator's decision not to given them an enhanced award.  Each of these claimants is represented by the same law firm.  Each submitted a claim for and received a category three award due to a hospitalization.  None of their claim forms, however, made a request to be considered for an enhancement. The Administrator therefore properly denied enhancement awards to them.

The claimants each argue in their appeals that enhancements may be automatically awarded based on the hospital records they submitted in support of their claims.  While such a calculation may be possible, without a request on the claim form for an enhancement, the Administrator was under no obligation to review those records for that purpose.

The claimants also contend that they were eligible for an enhancement under the terms of the Settlement Agreement.  While a hospitalization made class members eligible for an enhancement, to receive consideration for the enhancement they were required to submit a claim and the required records.  The

six claimants forfeited their opportunity for enhanced benefits

when they failed to request consideration for those benefits in

their claim forms.  These appeals are denied.

II.  Objections to Category Five Matrix

Three claimants appeal from the Administrator's decision

regarding their enhancements.  Each of their appeals is denied.

A.    AA's Appeal

AA was awarded seven enhancement points[7] on November 12,

2025, and on January 8, 2026,[8] another six points[9] as a result of

her appeal to the Administrator.  The Administrator has

determined that she should be awarded $30,000 under category 3

and $5,763 for the seven enhancement points.  The value of the

six additional points has not been calculated by the

Administrator because of the pendency of the appeals.

In her appeal to this Court, AA seeks an award of $75,000,

or at least $7,410.42 for July 11, 2025 medical procedures.  AA

emphasizes that she was hospitalized twice and has a chronically

elevated liver function.  Her illness has resulted in large

---

[7] AA was awarded one point for emotional distress; one for an
emergency room visit; two for one day in a hospital; and three
for additional treatment/testing.

[8] The notice bears the date January 8, 2025, but is understood to
have been issued on January 8, 2026.

[9] The additional six points were for three additional days in a
hospital.

unreimbursed expenses and will continue to require future medical care.  AA explains that she did not spend as long in a hospital as someone in her condition ordinarily would because her medical team had a high degree of confidence in her to complete her testing as an outpatient.  As already noted, on appeal to the Administrator she was awarded an additional six points for the three additional days she spent in the hospital.

AA brings essentially three objections to the Administrator's determination.  She first identifies what she contends are deficiencies in the Enhancement Matrix.  Any limited settlement fund requires that awards be distributed as equitably as possible among those who were injured.  From his work with the claims, the Administrator became familiar with the range of injuries suffered by the claimants and developed a model for objectively distributing a finite set of funds among those who were most severely injured.  Following his interactive engagement with claimants, the Administrator revised his Enhancement Matrix and presented it to the Court for approval. Claimants were given an opportunity by the Court to object to the Enhancement Matrix and none did.  While the Enhancement Matrix will not be an ideal fit for every claimant's injuries, AA has not shown that it should be set aside or modified to address her individual circumstances.

15

AA next represents that she would have opted out of the settlement and sought arbitration but for her discussion (which had been arranged by her attorney) with the Administrator on August 9, 2024.  In her January 20, 2026 submission to the Court she states that the Administrator "told me with confidence that not only could I expect [$75,000], but 'potentially 2-3X.'"  AA does not ask to be allowed to withdraw from the settlement and explains that she is raising this issue "not to assign fault" but to inform the Court of the "misunderstanding."[10]  Through the Notice distributed to the settlement class, the claim form, and the posting of the Settlement Agreement and other relevant documents on the litigation website, every claimant was advised of the amount and terms of the settlement and the claim process. The Notice predicted that Category 3 claimants would receive $30,000 but warned that the amount may increase or decrease depending upon the response from Class Members.  As predicted, AA has been awarded $30,000 for her Category 3 claim.  These documents also made clear that enhancements would be awarded based on a matrix and that the amount of any enhancement would

---

[10] AA's appeal to the Court contains language suggesting a desire to be released from this settlement.  For instance, she adds that the "settlement does not reflect my informed and knowing agreement."  Read in context, however, her appeal to this Court is for a larger award.  She is represented by counsel and has not brought a motion for release from the settlement.

depend on the number of claimants and their injuries.  This publicly available information allowed AA and her attorney to assess her options.  AA has not shown that her understanding from the August 9 conversation with the Administrator, which occurred before the deadline to submit claims, entitles her to a larger enhancement award.

Finally, AA contends that she should receive an increased award because the Administrator told her on September 17, 2025, "that chronically elevated LFTs would be considered for my award" and that her colonoscopy and endoscopy on July 11, 2025 "would be included" in calculating enhancement points.  In the Administrator's publicly filed October 31, 2025 report, he explains that the "majority" of category 5 claimants have chronic, ongoing injuries, that the Settlement does not have the funds to address each claimant's ongoing injuries, and that, as a result, he determined that injuries experienced after September 2, 2024 cannot be compensated.  September 2, 2024, was the claim form deadline.  No claimant objected to the Report despite being given an opportunity to do so.  The Administrator's decision is entitled to deference.  The fund's inability to fully compensate each claimant's injuries is regrettable but it is a common feature of settlements.  In particular, the inability to compensate every serious ongoing

17

injury does not reflect a judgment on the legitimacy of the claim but rather the need to distribute limited funds equitably.

B.    JC's Appeal

JC objects to the use of a Matrix for enhancement awards. JC received a category 2 award of $15,000 and a category 5 award of $21,407.88 based on 26 points.  Her appeal to the Administrator did not result in any further enhancement.  In her appeal to this Court, JC requests an award of at least $100,000 due to the loss of her pregnancy.  Under the Enhancement Matrix, a causally-related miscarriage is awarded 15 points and pregnancy is awarded seven points; JC received those points as well as four more points under two other categories in the Matrix.

JC contends that a subjective evaluation of damages is preferable to the application of a matrix.  The Notice to the settlement class informed claimants that a matrix would be used for the enhancement awards.  For the reasons already explained, objective criteria are appropriate when dividing a finite amount of money among a pool of deserving victims.  JC's loss of a pregnancy was a tragic and severe injury and the Matrix acknowledged that severity by assigning it the largest number of points.  Principles of equity did not allow the Administrator

18

and do not allow this Court to enhance an individual's award based on a subjective evaluation of the injury.

C.    DT's Appeal

DT received an award of $130,000 under category 4 and $13,174 under category 5 based on an initial award of 16 enhancement points.  Through her appeal to the Administrator, she was given another 11 enhancement points.  DT requests an additional award of $200,000.

DT describes the profound impact of this incident on her life.  While she continues to work full-time, she is no longer able to pursue the intense physical activity in which she once engaged and she continues to have ongoing medical expenses.  She had additional medical expenses in 2025 and expects her need for medical care due to this injury to continue into the future.  Again, for the reasons already explained, the use of objective criteria and a cut-off date for injuries were appropriate here.

III. Late Submission

One claimant, VA, filed a late claim.  VA filed a claim on May 7, 2025.  On October 10, the Administrator informed VA that it could not accept his claim because it was filed 247 days after the September 2, 2024 deadline.  The Administrator also noted that it had been unable to locate a proof of purchase,

19

which was necessary for VA to be considered a qualifying claimant.

In his appeal to the Administrator, VA explained that medical incapacity had prevented a timely filing and that he had no proof of purchase since he consumed Crumbles at a party. VA does not identify who purchased the Crumbles or hosted the party at which it was served.

In his appeal to this Court, VA requests approval of the late-filed claim and an award under Category 3 since he received treatment in a hospital.[11] VA's appeal is denied. As the Administrator informed VA, a grace period of three months has already been extended for late-filed claims. VA's claim, which was filed five months after the extended deadline, is simply too late to be accepted. Given this deficiency, it is unnecessary to address VA's failure to provide proof of purchase.

### Conclusion

The ten claimants' appeals submitted to this Court on March

---

[11] It appears that VA would only qualify for an award under Category 2 since he was treated in an emergency room and not admitted to a hospital.

20

9, 2026 are denied.

Dated:    New York, New York
          May 8, 2026

                                     DENISE COTE
                      United States District Judge